IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                        )
CENTER FOR BIOLOGICAL DIVERSITY,        )
1333 North Oracle Road                  )
Tucson, AZ 85705,                       )
                                        )
PRESTON FORSYTHE,                       )     Civil Action No.
2309 Hwy 431 South,                     )
Browder, Kentucky 42326, and            )
                                        )
HILARY LAMBERT,                         )
720B Aurora Avenue,                     )
Lexington, Kentucky 40502,              )
                                        )
          Plaintiffs,                   )
                                        )
          v.                            )
                                        )
STEPHEN L. JOHNSON, in his official     )
Capacity as Administrator, United States )
Environmental Protection Agency,        )
Ariel Rios Building                     )
1200 Pennsylvania Avenue, N.W.          )
Washington, DC 20460, and              )
                                        )
UNITED STATES ENVIRONMENTAL             )
PROTECTION AGENCY                       )
Ariel Rios Building                     )
1200 Pennsylvania Avenue, N.W.          )
Washington, DC 20460,                   )
                                        )
          Defendants.                   )
_____)
```

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

**I.      INTRODUCTION**

1.

Plaintiffs Center for Biological Diversity, Preston Forsythe, and Hilary Lambert challenge the failure of Defendants Stephen L. Johnson, in his official capacity as Administrator of the Environmental Protection Agency ("EPA"), and the U.S. EPA to perform their non-discretionary duties under the Clean Air Act, 42 U.S.C. §§ 7401-7671q.

2.

Title V of the Clean Air Act establishes a mandatory 60-day deadline for the Administrator to grant or deny a citizen petition for an objection to a Clean Air Act Title V permit.  42 U.S.C. § 7661d(b)(2).  The Administrator has failed to meet this deadline with respect to a petition filed by Plaintiffs seeking EPA's objection to a Clean Air Act operating permit that the Commonwealth of Kentucky Division of Air Quality of the Environmental and Public Protection Cabinet ("Kentucky DAQ") issued to the coal-fired Tennessee Valley Authority's Paradise Fossil Plant ("TVA Paradise").   Plaintiffs originally filed their TVA Paradise petition on April 21, 2005.  Despite the passage of over 15 months, the Administrator has not responded to Plaintiffs' petition.

3.

Plaintiffs also challenge the Administrator's failure to perform his mandatory duty to modify, terminate or revoke the TVA Paradise Title V permit.  The Administrator objected to the permit even before Plaintiffs submitted their petition, though on grounds different, except for one issue, from those in Plaintiffs' petition, after the permit was issued by Kentucky DAQ. Therefore, the Administrator has a mandatory duty to modify, terminate or revoke the permit within 90 days because Kentucky DAQ did not re-propose a revised permit to address EPA's objection pursuant to  42 U.S.C. §§ 7661d(b)(3) and 7661d(c), and 40 C.F.R. § 71.4(e).  The

Administrator has failed to comply with these provisions. Moreover, the Administrator's delay in modifying, terminating or revoking TVA Paradise's Title V permit is unreasonable given the human health and welfare effects of TVA Paradise's pollution.

4.

In addition, Defendants failed to respond within a reasonable time to Plaintiffs' petition for agency rulemaking contained in their April 21, 2005 petition. Plaintiffs requested that Defendants compel Kentucky to submit a revised State Implementation Plan ("SIP") incorporating the "Credible Evidence Rule." The Credible Evidence Rule simply provides that any credible evidence can be used to establish whether a source of air pollution is in compliance with, or in violation of the Clean Air Act. Without the Credible Evidence Rule, potential defendants in Clean Air Act enforcement actions in Kentucky will argue that some evidence of violations, even if it is more reliable than other evidence, cannot be used to establish a violation of the Clean Air Act because the evidence is not based on a particular test method. The SIP revision is necessary to bring Kentucky's SIP into compliance with the Clean Air Act. Thus the Administrator has a non-discretionary duty to require the revision.   42 U.S.C. § 7410(k)(5).

## II.    JURISDICTION, VENUE AND NOTICE

5.

This is a citizen suit to enforce the Clean Air Act. Thus this Court has subject matter jurisdiction over the claims set forth in this complaint pursuant to 42 U.S.C. § 7604(a)(2), and has authority to award attorney fees pursuant to 42 U.S.C. § 7604(d). The Clean Air Act and the Administrative Procedure Act are federal statutes. The Defendants are agents of the United States' government. Thus this Court has subject matter jurisdiction over the claims set forth in this complaint pursuant to 28 U.S.C. §§ 1331 (federal question) and 1346 (United States as

defendant).  Defendant Stephen Johnson is an officer of the United States.  The Administrative

Procedure Act and the Clean Air Act impose a duty on Defendant Johnson to respond to

Plaintiffs' petition.  Thus, jurisdiction is proper in this Court under 28 U.S.C. § 1361

(mandamus).  An actual controversy exists between the parties.  This case does not concern

federal taxes, is not a proceeding under 11 U.S.C. §§ 505 or 1146, and does not involve the

Tariff Act of 1930.  Thus this Court has authority to order the declaratory relief requested under

28 U.S.C. §§ 2201.   If the Court orders such relief, 28 U.S.C. § 2202 authorizes this Court to

issue injunctive relief, and 28 U.S.C. § 2412 authorizes this Court to award Plaintiffs their costs

and attorney fees.    Finally, this Court can grant the requested relief pursuant to 28 U.S.C. §

1651 (writs) and 5 U.S.C. §§ 701-706 (Administrative Procedure Act).

6.

A substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in

the District of Columbia.   In addition, Defendant Steven Johnson and Defendant U.S. EPA

officially reside in the District of Columbia.  Thus, venue is proper in the District of Columbia

pursuant to 28 U.S.C. § 1391(e).

7.

On October 18, 2005, Plaintiffs mailed a letter to Defendant Stephen L. Johnson stating

that Plaintiffs intended to sue Defendants for (1) failure to respond to Plaintiffs' petition for an

objection to the TVA Paradise Title V permit; (2) failure to modify, terminate, or revoke that

permit after objecting to it; and (3) failure to require Kentucky to submit a revised SIP to include

the Credible Evidence Rule or respond to Plaintiffs' petition for agency rulemaking requiring

such a submission.

8.

More than 180 days have passed since Defendants received Plaintiffs' notice of intent to sue letter. Defendants have not acted to remedy the violations alleged in this complaint. Therefore, a present and actual controversy exists between the parties.

### III.    PARTIES

9.

Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("CBD") is a non-profit corporation with its headquarters in Tucson, Arizona. CBD is actively involved in environmental protection advocacy throughout the United States as part of its mission to secure a healthy environment for the physical and spiritual welfare of generations to come. As one method of achieving its organizational mission, CBD participates in permitting procedures for facilities that emit pollution into the environment. CBD often provides comments on permits, and takes legal action to enforce the Nation's pollution control laws. CBD's organizational interest in participating in and influencing the permit decision making process is injured by Defendants' failure to respond to CBD's TVA Paradise petition and Defendants' failure to take action on EPA's own objection. CBD also has an interest in obtaining a response to its petition and Defendants' failure to respond to CBD's petition for inclusion of the Credible Evidence Rule in the Kentucky SIP injures CBD's interest. Thus Defendants' failure to respond to CBD's petition works a concrete injury to CBD's organizational interests.

10.

Members and staff of CBD work and travel, and will continue to do so on a regular basis, in areas adversely impacted by TVA Paradise's pollution. CBD's members and staff have

aesthetic, recreational, scientific, spiritual and economic interests in the areas adversely impacted by TVA Paradise's pollution and will continue to have these interests on a regular basis in the future. Emissions from TVA Paradise are causing, and will continue to cause injury to CBD's members' and staff's aesthetic, recreational, scientific, spiritual and economic interests in the areas adversely impacted by TVA Paradise's pollution. In addition, pollution from other facilities in Kentucky for which credible evidence can show a violation of applicable standards are causing and will continue to cause injury to CBD's members' and staff's aesthetic, recreational, scientific, spiritual and economic interests in the areas adversely impacted by these other sources' pollution.

11.

Furthermore, because Defendants have not responded to their petition, have failed to take action on EPA's own objection, and have failed to ensure that the Kentucky SIP contains the Credible Evidence Rule, CBD's members and staff cannot be certain that the TVA Paradise Title V permits conforms with the Clean Air Act's requisite pollution limits and that TVA Paradise and other sources are complying with applicable requirements.

12.

Plaintiff PRESTON FORSYTHE is a resident of Muhlenberg County, Kentucky, which is the county in which TVA Paradise is located. Mr. Forsythe lives, recreates, and obtains spiritual and aesthetic pleasure from locations that are, and will continue to be, adversely affected by pollution from TVA Paradise. Mr. Forsythe will continue these activities on a regular basis in the future. Mr. Forsythe and his family encounter the pollutants emitted by TVA Paradise everyday in the air they breathe. Also, Mr. Forsythe observes, and will continue to observe on a regular basis, visible pollutants, in the form of a great plume of black or rust

colored smoke, rising from TVA Paradise in the air and falling to the ground and onto surface water near his home.  TVA Paradise releases tens of thousands of tons of hazardous air pollutants, particulate matter, nitrogen oxides, sulfur oxides, and other pollutants that EPA has identified as threats to human health and welfare.  TVA Paradise's pollution negatively impacts Mr. Forsythe's family's health, and the well being of the natural areas which he enjoys on a daily basis.  Mr. Forsythe's interest in protecting the air that he breaths and his community's natural heritage, and his interest in enjoying recreational, spiritual and aesthetic benefits from a healthy local environment, are adversely affected by EPA's failure to timely respond to his petitions and to take action on EPA's own objection to the TVA Paradise Title V permit.  Moreover, if the TVA Paradise Title V permit does not comply with the Clean Air Act, Mr. Forsythe will be exposed to pollutants from that facility in excess of the legal limits.  Defendants' failure to respond prevents Mr. Forsythe from being certain that the TVA Paradise Title V permit protects him from exposure to pollutants emitted by that facility that are in excess of the legal limits.

13.

In addition, Defendants' failure to ensure that the Kentucky SIP contains the Credible Evidence Rule works a concrete injury to Mr. Forsythe's interests because his ability, and the ability of others such as U.S. EPA and the Kentucky Division of Air Quality, to ensure compliance with TVA Paradise's permit limits, and the permit limits of other facilities, is compromised by the lack of a Credible Evidence Rule in the Kentucky SIP.

14.

Plaintiff HILARY LAMBERT is a resident of Fayette County, Kentucky.  She has hiked and participated in Mammoth Cave National Park tours, and plans to do so regularly in the future.  Pollution from TVA Paradise impacts Mammoth Cave National Park and will continue

to do so on a regular basis.  The deleterious effects of pollution from TVA Paradise on

Mammoth Cave National Park and the species that depend upon its unique habitat for survival

adversely impact Ms. Lambert's aesthetic, recreational and spiritual interests in enjoying

Mammoth Cave National Park.  While spending time at Mammoth Cave National Park, Ms.

Lambert is exposed to TVA Paradise's pollution.  TVA Paradise's pollution contains substances

that have serious human health effects.  Because Defendants have failed to respond to her

petition and have taken no action on EPA's own objection to TVA Paradise's Title V permit, Ms.

Lambert cannot be certain that the TVA Paradise's Title V permit protects her and Mammoth

Cave from exposure to pollutants emitted by that facility which are in excess of the limits set out

in the Clean Air Act.

15.

In addition, Defendants' failure to ensure that the Kentucky SIP contains a Credible

Evidence Rule works a concrete injury to Ms. Lambert's interests because her ability, and the

ability of others such as U.S. EPA and the Kentucky Division of Air Quality, to ensure

compliance with TVA Paradise's permit limits, and the permit limits of other facilities, is

compromised by the lack of a Credible Evidence Rule in the Kentucky SIP.

16.

For the foregoing reasons, Defendants' failure to respond to Plaintiffs' petition has

caused, is causing, and unless this Court grants the requested relief, will continue to cause

Plaintiffs' injuries for which they have no adequate remedy at law.

17.

Defendant STEPHEN L. JOHNSON is the Administrator of the Environmental

Protection Agency.  The Administrator is responsible for implementing the Clean Air Act,

including the requirement to act on Plaintiffs' petition within 60 days, to modify, terminate or

revoke TVA Paradise's Title V petition based on the lack of response to its objection, and to

require revision of Kentucky's SIP.

18.

Defendant UNITED STATES ENVIRONMENTAL PROTECTION AGENCY is the

agency of the United States' government responsible for implementing the Clean Air Act.


## IV.  LEGAL BACKROUND

### Title V

19.

The Clean Air Act aims "to protect and enhance the quality of the Nation's air

resources."  42 U.S.C. § 7401(b)(1).  To help meet this goal, the 1990 amendments to the Clean

Air Act created an operating permit program that applies to all major sources of air pollution –

the Title V permit program.  See 42 U.S.C. §§ 7661-7661f.  Major sources of air pollution cannot

discharge pollutants into the air unless they have a valid Title V operating permit.  42 U.S.C. §

7661a(a).

20.

A primary purpose of the Title V permitting program is to reduce violations of the Clean

Air Act and improve enforcement by recording in one document all of the air pollution control

requirements that apply to a source of emissions.  See New York Public Interest Research Group

v. Whitman, 321 F.3d 316, 320 (2d Cir. 2003).

21.

The Clean Air Act provides that the Administrator of EPA may approve states' programs to administer a Title V permit program with respect to sources within the states' borders. 42 U.S.C. § 7661a(d). The Administrator approved Kentucky's administration of the Title V permit program with respect to facilities in Kentucky. 66 Fed. Reg. 54,953 (Oct. 31, 2001). The Division of Air Quality of the Commonwealth of Kentucky Environmental and Public Protection Cabinet ("Kentucky DAQ") is the agency responsible for issuing Title V operating permits in Kentucky. 401 KAR 52:020.

22.

Title V permits generally do not add new emissions limitations. Rather, Title V permits are designed to consolidate all of the limitations on the types and quantities of air pollution that can be emitted from a major stationary source of air pollution, like a factory or power plant, into a single permit. The specific Title V permit limits come from State Implementation Plans (SIPs) as well as various other Clean Air Act programs. Title V permits must also provide for adequate pollution monitoring and require the source to report monitoring data and violations of permit limits to the permitting authority and thus to the public. If done right, Title V permits ensure the regulatory agencies and the public that the facility is complying with the Clean Air Act. See generally S. Rep. No. 101-228 at 346-47. In other words, a Title V permit "is a source-specific bible for Clean Air Act compliance." Virginia v. Browner, 80 F.3d 869, 873 (4th Cir. 1996).

23.

Before a Title V permit can be issued by a State, the State must forward the proposed Title V permit to EPA. 42 U.S.C. § 7661d(a)(1)(B). EPA then has 45 days to review the

proposed permit and must object to the issuance of the permit if it finds that the permit does not

comply with all applicable provisions of the Clean Air Act.  42 U.S.C. § 7661d(b)(1).

24.

If, at the time EPA objects to a permit pursuant to 42 U.S.C. § 7661d(b)(1), the state

permitting authority has already issued the subject permit, EPA must "modify, terminate, or

revoke such permit."  42 U.S.C. § 7661d(b)(3).

25.

If the state permitting authority fails to submit a revised permit to meet the EPA's

objection within 90 days of the objection, the Administrator must "issue or deny" the permit.  42

U.S.C. § 7661d(c).

26.

EPA's regulations provide that the:

Administrator <u>will</u> deny, terminate, revise, revoke or reissue a permit
which has been proposed or issued by a permitting authority or will issue a
[federally issued] permit when: (1) A permitting authority with an
approved … operating permits program fails to respond to a timely
objection to the issuance of a permit made by the Administrator pursuant
to [42 U.S.C. § 7661d(b)] and [40 C.F.R. § 70.8(c) and (d)].

40 C.F.R. § 71.4(e)(emphasis added).

27.

The Clean Air Act provides that "[i]f the Administrator does not object in writing to the

issuance of a permit pursuant to paragraph (1), any person may petition the Administrator within

60 days after the expiration of the 45-day review period specified in Paragraph (1) to take such

action."  42 U.S.C. § 7661d(b)(2).

28.

Once it receives a petition for objection to a proposed Title V permit, EPA must grant or deny that petition within 60 days.  Id.; New York Public Interest Research Group v. Whitman, 214 F. Supp. 2d 1, 2 (D.D.C. 2002).

**The Credible Evidence Rule and the Kentucky SIP**

29.

States are required to adopt plans to implement the federal Clean Air Act that are at least as stringent as the federal laws, though they can be more stringent.  42 U.S.C. § 7410(a).  These plans, called State Implementation Plans or "SIPs," contain enforceable regulations that are designed to achieve and maintain the primary and secondary National Ambient Air Quality Standards set by EPA pursuant to 42 U.S.C. §§ 7408 and 7409.

30.

States must submit their proposed SIPs to EPA, and if the proposed SIP satisfies the requirements of the Clean Air Act, EPA approves the SIP through federal notice and comment rule making.  42 U.S.C. § 7410(a).  Once a state's SIP is approved by EPA, it is published in the Code of Federal Regulations and can be enforced by the state, EPA, or citizens.  43 U.S.C. § 7413(a)(federally enforceable); General Motors Corp v. United States, 496 U.S. 530 (1990)(enforceable by citizens).  If a State fails to submit a SIP that meets the requirements of the Clean Air Act, EPA must itself promulgate a Federal Implementation Plan ("FIP") for that State.  42 U.S.C. § 7410(c).

31.

EPA is authorized pursuant to the Clean Air Act to initiate rulemaking proceedings and to call for SIP revisions when a SIP is inadequate or fails to meet the requirements of the Clean Air Act ("SIP Call"). See 42 U.S.C. § 7410. Specifically, EPA can require a state to revise its SIP as necessary to correct inadequacies. 42 U.S.C. § 7410(k)(5). Section 7410(k)(5) states:

> [w]henever the Administrator finds that the applicable implementation plan for any area is substantially inadequate to attain or maintain the relevant national ambient air quality standard … or to otherwise comply with any requirement of this chapter, the Administrator shall require the State to revise the plan as necessary to correct for such inadequacies.

42 U.S.C. § 7410(k)(5). According to EPA, "[i]f EPA makes such a finding [that a SIP is inadequate], it must require the state to submit, within a specified period, a SIP revision to correct the inadequacy." 62 Fed. Reg. 57,356, 57, 360 (Oct. 27, 1998)(emphasis added).

32.

Once EPA issues a SIP Call, the Administer may establish "reasonable deadlines" for the submission of plan revisions, but those deadlines are "not to exceed 18 months" after the SIP Call. 42 U.S.C. § 7410(k)(5).

33.

EPA promulgated the credible evidence rule to clarify that compliance, or non-compliance, of a source can be established using any credible evidence, and is not dependent on the use of a specific "reference tests" specified in the regulations. 62 Fed. Reg. 8314 (Feb. 24, 1997). The rule amended 40 C.F.R. Parts 51 and 52(relating to State Implementation Plans), 60(relating to New Source Performance Standards ("NSPS")) and 61(relating to Hazardous Air Pollutants ("HAPs")). 62 Fed. Reg. 8314 (Feb. 24, 1997).

34.

According to EPA, the purpose of the credible evidence rule is to clarify "EPA's, states' and citizens' enforcement authorities under the Act," and "eliminate any potential ambiguity regarding the use of nonreference test data as a basis for Title V compliance certifications" under section 114 and Title V of the Clean Air Act.  Id.

35.

EPA also issued "SIP calls" to various states as early as 1994 requiring states to submit revised SIPs, with the goal of clarifying that "non-reference test data can be used in enforcement actions, and to remove any potential ambiguity regarding this data's use for Title V compliance certifications." Id. at 8327[1]; See Clean Air Implementation Project v. Envt'l Protection Agency, 150 F.3d 1200, 1207 (D.C. Cir. 1998).

36.

After Plaintiffs sent their Notice of Intent to Sue letter in this case, the Kentucky DAQ proposed a credible evidence revision to its rules on December 15, 2005 by filing proposed regulation 401 KAR 50:057 with the Kentucky Legislative Research Commission. The proposed regulation was published in the January 1, 2006 Administrative Register of Kentucky.  32 Admin. Reg. Ky. 1348-49 (Jan. 1, 2006).  The proposed regulation provided:

> [A]ny credible evidence, including but not limited to testing and monitoring methods other than the reference test method, may be used for determining compliance and for establishing violations of the underlying emission limitation and standard.

---

[1] In October, 1993, EPA announced that it planned to issue a SIP call for the credible evidence revision.  58 Fed. Reg. 54660.  In December, 1993, and February, 1994, the Office of Air and Radiation's Stationary Source Compliance Division issued memoranda to EPA's Regional offices instructing them to conduct the SIP call.  EPA continued the SIP call in its February 1997 Federal Register notice of the credible evidence revisions.  62 Fed. Reg. 8314, 8327.

Id.  A public hearing was held on January 24, 2006.  Unfortunately, Kentucky DAQ withdrew the proposed regulation as of March 15, 2006.  32 Admin. Reg. Ky. Locator Supp. L-10 (June, 2006).

### The Administrative Procedure Act

37.

The Administrative Procedure Act ("APA") requires that each agency "shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule."  5 U.S.C. § 553(e).

38.

The APA requires that the EPA "within a reasonable time … proceed to conclude a matter presented to it."  5 U.S.C. § 555(b).

39.

Congress created section 553(e) to provide a substantive right to petition government agencies as an extension of the right to petition provided in the U.S. Constitution.  U.S. Const. amend I; Administrative Procedure Act, Legislative History, S. Doc. No. 248, 79th Cong. 2d Sess. 21 (Aug. 2, 1946).  The legislative history of the APA makes clear that Congress intended the agency to respond within a reasonable time to a petition made under section 553(e).  It provides that "[w]here such petitions are made, the agency must fully and promptly consider them, take such action as may be required, and pursuant to section 6(d) notify the petitioner in the case a request is denied."  Id. at 201.

40.

Congress further intended that a court reviewing agency inaction shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

## VI. STATEMENT OF FACTS

### BACKGROUND

41.

TVA Paradise is a dirty, old, coal-fired power plant located on the Green River in Muhlenberg County, in Western Kentucky. Western Kentucky's ecosystem includes the most intricate cave and underground stream system in the world, unique sloughs and swamps, and aquatic and terrestrial wildlife. This ecosystem, which is known as "karst" is particularly susceptible to air pollution because when the air pollution deposits on the ground, it is washed directly into the ground water through sink holes instead of going through the filtering process of moving through soil before entering ground water. The area is near the Mississippi Migratory Bird Flyway and provides habitat for a variety of bird species.

42.

In 1981, the United Nations Educational Scientific and Cultural Organization designated Mammoth Cave National Park ("Mammoth Cave"), near TVA Paradise, as a World Heritage Site for its exceptional natural features, its habitat for threatened and endangered species, and its association with events and persons of world historic and archeological significance. Home to more than sixty (60) miles of backcountry trails, one of only four old-growth forests areas left in Kentucky, and the longest recorded cave system in the world, Mammoth Cave hosted more than 1.8 million visitors in 2003. Mammoth Cave is also the home of several species that are

currently listed as endangered or threatened under the Endangered Species Act ("ESA"). These species include the Indiana bat (*Myotis sodalist*), Kentucky Cave Shrimp (*Palaemonias ganteri*), and a variety of freshwater mussels. Unfortunately, air pollution plagues Mammoth Cave. The National Parks Conservation Association has determined that Mammoth Cave has the third worst air pollution problem of all the National Parks in the Nation.

43.

TVA Paradise consists of three coal-fired boilers built between 1959 and 1970. TVA Paradise burns over seven million tons of coal each year.

44.

In 1984, as part of an extensive effort to extend the useful lives of its coal-fired power plants, TVA embarked on a series of significant improvement projects at TVA Paradise. In re Tennessee Valley Authority, CAA 2000-04-008, 9 E.A.D. 357 (Sept. 15, 2000), rev'd, Tennessee Valley Authority v. Whitman, 336 F.3d 1236 (11th Cir. 2003). These projects increased the amount of pollution emitted by TVA Paradise.

45.

TVA Paradise is one of the largest sources of air pollution in the nation. In 2005, TVA Paradise emitted 84,400 tons of Sulfur Dioxide (SO2) and 35,900 tons Nitrogen Dioxide (NO2) into the air. TVA Paradise also releases particulate matter ("PM") into the atmosphere. TVA Paradise releases toxic chemicals into the air, land and water surrounding the plant and off-site. The toxic chemical releases reported by TVA Paradise include Arsenic Compounds, Barium Compounds, Beryllium Compounds, Chromium Compounds, Lead Compounds, Mercury Compounds, Hydrogen Flouride, Hydrochloric Acid, Sulfuric Acid, Dioxin, Ammonia, and

Nitrate Compounds, among others.  Disturbingly, TVA Paradise released over 3 million more pounds of toxics in 2004 than in 2003.

46.

TVA Paradise is a significant source of PM pollution.  PM pollution causes a variety of adverse health effects, including premature death, heart attacks, strokes, birth defects, and asthma attacks.

47.

The PM emitted from TVA Paradise includes heavy metals such as mercury.  Particulate mercury can deposit onto land and waterways, either via precipitation or dry deposition, causing significant damage to human health and ecosystems.

48.

PM emissions also impair visibility and thus decrease residents' and tourists' ability to appreciate natural scenery.

49.

TVA Paradise is also a large source of sulfur dioxide.  Sulfur dioxide ("$SO_2$") is "a medically recognized threat to human health," particularly, but not exclusively, the health of elderly people, infants, and people with other health problems.  Ohio Power Co. v. US EPA, 729 F.2d 1096, 1096-98 (6th Cir. 1984).  Sulfur dioxide reacts with oxygen and other substances in the atmosphere to form sulfate aerosols, which are dangerous to human health.  When ambient levels of sulfate aerosols are high, people inhale aerosol particles and suffer increased rates of sickness and mortality from asthma, bronchitis, and other pulmonary conditions.  Sulfate pollution remains airborne for days and can have significant detrimental health effects at large distances downwind from where it was released.

50.

In addition, $SO_2$ emissions from coal-fired power plants contribute to acid deposition. Airborne $SO_2$ reacts with other atmospheric chemicals to form sulfuric acid, which falls to earth via acidic rain, snow, fog, and other precipitation, as well as through dry deposit processes. Forest ecosystems throughout the eastern United States are suffering extensive damage due to deposition of sulfuric acid resulting from $SO_2$ pollution. Acid deposition also accelerates the decay of building materials and paints, thus destroying buildings, statues, and other irreplaceable parts of our nation's cultural heritage and infrastructure. Sulfuric acid and other sulfate compounds in the atmosphere also contribute to visibility degradation.

51.

Nitrogen Dioxide ($NO_2$) from coal-fired power plants like TVA Paradise causes asthma attacks, respiratory tract symptoms, bronchitis, and decreased lung function. Committee on Environmental Health, American Academy of Pediatrics, "Ambient Air Pollution: Health Hazards to Children," Pediatrics 2004: 114: 1699-1707, at 1701. Recent studies suggest a link between NO2 exposure and Sudden Infant Death Syndrome. See Dales, Robert, et al., "Air Pollution and Sudden Infant Death Syndrome," Pediatrics, 2004: 113: 628-31, at 629.

52.

$NO_2$ emitted from coal-fired power plants also has deleterious effects on the ecosystem. $NO_2$ emissions result in nitrogen deposition in the aquatic and terrestrial ecosystem. See 70 Fed. Reg. 8892 (Feb. 23, 2005) (noting a study that found a linear relationship between $NO_x$ emissions and nitrogen deposition). Elevated soil nitrogen levels caused by deposition accelerate acidification of soils through the leaching of minerals which neutralize acid deposition. Id. at 8893. Soil acidification is known to inhibit tree growth and can also result in the dissolution of

harmful levels of aluminum into aquatic ecosystems.  Id. at 8892-93.  Recent studies have also raised awareness of the role of nitrogen deposition in the eutrophication of water bodies.  Thus, a 1998 survey estimated the percentage of the total nitrate load in the Chesapeake Bay attributable to nitrogen deposition to be between 10% and 45%.  Id. at 8894.

53.

Nitrogen oxide ("NO$_x$") emissions from coal-fired power plants also contribute to the formation of ground level ozone (O$_3$).  Ozone is the main ingredient in smog.  Ozone is a powerful lung irritant that can cause shortness of breath, coughing, burning eyes, chest pain, asthma attacks and other respiratory problems and a lessened ability to fight off disease and infection.  Ozone can also cause babies to be born with heart valve defects and children to develop asthma if they play outside.  It may also permanently reduce lung function.  Sadly, active children are one of the groups at the highest risk from ozone exposure.

54.

Ozone also can cause damage to vegetation and wildlife, including threatened and endangered species.

55.

Courts have recognized the dangers of ozone.  See e.g. 1000 Friends of Maryland v. Browner, 265 F.3d 216, 220, n.2 (4th Cir. 2001)(ground level ozone is very harmful to human health).

56.

Millions of Americans live in areas where the air pollution exceeds the "safe" level of air pollution set by EPA in the National Ambient Air Quality Standards, and Kentucky air pollution sources contribute pollution to these unsafe levels.

## TVA PARADISE'S TITLE V OPERATING PERMIT

57.

The regulatory history of TVA Paradise is both long and complex.  Although Title V was passed as part of the 1990 Amendments to the Clean Air Act, it was not until February 7, 1997, that TVA applied for its Title V permit.

58.

Over **six** years later, Kentucky DAQ issued a draft Title V operating permit for TVA Paradise on August 18, 2004, and granted the public thirty days to comment.  On September 14, 2004, Plaintiffs submitted comments to Kentucky DAQ on the TVA Paradise draft permit. Kentucky DAQ issued the final permit on December 29, 2004.  On January 7, 2005, Kentucky DAQ proposed the final permit to EPA in an effort to comply with 40 C.F.R. § 70.7(a)(v).  Over two weeks after issuing the final permit, Kentucky DAQ responded to Plaintiffs' comments on January 13, 2005.

59.

On its own initiative, EPA objected to the permit on February 18, 2005.  EPA's objection rested on two grounds: (1) that a heat input limit contained in a State Operating Permit that was incorporated into the Kentucky SIP was not included in the TVA Paradise Title V permit; and (2) that the permit did not include adequate monitoring requirements for the two lime storage silos and the Unit 3 limestone handling system.  EPA did not publicly disclose this objection, and did not provide notice of the objection to Plaintiffs.  EPA did not even place its objection letter to the TVA Paradise Title V permit on its webpage where EPA had placed its other objection letters.

60.

Despite the fact that Kentucky DAQ issued the permit on December 29, 2004, EPA has taken no subsequent action to modify, terminate or revoke the permit. EPA's 45-day review period expired on February 21, 2005.

61.

The Plaintiffs petitioned EPA to object to the permit pursuant to 42 U.S.C. § 7661d(b)(2). EPA received this petition on April 21, 2005. EPA acknowledged its receipt by a letter to Plaintiffs' counsel dated April 28, 2005. The Petition raised the following issues:

(1)    The permit fails to include the Clean Air Act's New Source Review Prevention of Significant Deterioration (PSD) provisions, 40 CFR 52.21, as an applicable requirement with regard to nitrogen oxides (NOx) emissions from TVA Paradise Boiler Units 1, 2, and 3. The PSD provisions apply because TVA modified those three units after 40 CFR 52.21 became effective but before Kentucky had an approved PSD program in its SIP.

(2)    The permit fails to include the PSD provisions as an applicable requirement for emission units GACT7 (limestone handling process), GACT8 (limestone handling fugitives), GACT10 (Unit 3 limestone handling), and GACT11 (Unit 3 limestone handling fugitives). Briefly, the synthetic minor cap employed to avoid PSD requirements at GACT7 and GACT8 does not limit emissions of particulate matter (PM) to within applicable synthetic minor levels, and the permit fails to treat the installation of GACT10 and GACT 11 as part of the same major modification that included the installation of GACT7 and GACT8.

(3)    The permit does not require sufficient opacity monitoring.

(4)     Many of the other emission units at TVA Paradise do not have limits or standards
        that are enforceable as a practical matter and do not require monitoring and
        reporting to assure compliance.  This included failure to include monitoring for
        the hourly process rate limit for the two lime storage silos know as EQPT 15.

(5)     The GACT5 (coal washing plant) synthetic minor cap is not sufficient and there is
        not sufficient monitoring.  There is no monitoring to assure compliance with the
        opacity and PM limits in GACT5. Also, the PM limit is not enforceable as a
        practical matter.

(6)     The permit does not require the reporting of all monitoring results.  The permit
        currently excuses the permittee from reporting COMS and Continuous Emission
        Monitoring System (CEMS) data.

(7)     The permit does not contain language that allows for the use of any credible
        evidence to show noncompliance with applicable requirements.  The petitioners
        also specifically requested that if EPA were to determine that Kentucky's SIP
        does not fully include the Credible Evidence Rule that EPA treat the petition as
        also being a petition pursuant to the Administrative Procedures Act to promulgate
        a rule to correct the Kentucky SIP to fully incorporate the Credible Evidence Rule
        into the Kentucky SIP.

62.

Each of Plaintiffs' seven arguments were raised with reasonable specificity in Plaintiffs'
comments to Kentucky DAQ during the initial public comment period.

63.

EPA had a nondiscretionary duty to grant or deny Plaintiffs' petition on or before June

20, 2005.  42 U.S.C. § 7661(b)(2).  EPA has never granted nor denied the petition.


## VII.  CLAIMS FOR RELIEF


FIRST CLAIM FOR RELIEF

FAILURE TO RESPOND TO PLAINTIFFS' TVA PARADISE PETITION FOR OBJECTION

(42 U.S.C. § 7604(a)(2), 42 U.S.C. § 7661d(b)(2))

64.

Each allegation set forth in the Complaint is incorporated herein by reference.

65.

EPA has a mandatory duty to respond within 60 days to Plaintiffs' petition requesting

that EPA object to the TVA Paradise Title V Operating Permit pursuant to 42 U.S.C. §

7661d(b)(2).

66.

The 60 day deadline expired on June 20, 2005, more than one year ago.

67.

Defendant has not taken final action on the petition.

68.

Therefore, EPA has violated, and remains in violation of, its non-discretionary duty to

grant or deny Plaintiffs' petition within 60 days, as required by 42 U.S.C. § 7661d(b)(2).

SECOND CLAIM FOR RELIEF

FAILURE TO MODIFY, TERMINATE OR REVOKE THE TVA PARADISE TITLE V

PERMIT

(42 U.S.C. § 7604(a)(2); 42 U.S.C. § 7661d(b)(3); 42 U.S.C. § 7661d(c); 40 C.F.R. § 71.4(e))

69.

Each allegation set forth in the complaint is incorporated herein by reference.

70.

EPA objected to the TVA Paradise Title V Operating Permit on February 18, 2005.

71.

EPA has taken no subsequent action to modify, terminate, or revoke the TVA Paradise

Title V Operating Permit.

72.

EPA has a mandatory duty to "modify, terminate, or revoke" the TVA Paradise Title V

Operating Permit pursuant to 42 U.S.C. § 7661d(b)(3) because the permit was already issued by

Kentucky and because 42 U.S.C. § 7661d(c) requires EPA to issue or deny the permit if the state

does not reissue a revised permit to meet EPA's objection within 90 days of the EPA objection.

73.

EPA's own regulations require the Administrator to deny, terminate, revise, revoke or

reissue a permit where an approved State permitting authority fails to respond to EPA's objection

to the Permit.  40 C.F.R. § 71.4(e).

74.

Therefore, Defendant has failed to perform his non-discretionary duty under the Clean

Air Act to modify, terminate or revoke the TVA Paradise Title V Operating Permit within 90

days of its objection as required by 42 U.S.C. §§ 7661d(b)(3) and (c) and 40 C.F.R. § 71.4(e).


(ALTERNATIVE) THIRD CLAIM FOR RELIEF

UNREASONABLE DELAY IN MODIFYING, TERMINATING OR REVOKING THE TVA

PARADISE TITLE V OPERATING PERMIT

(5 U.S.C. §§ 555(b) and 706(1); 42 U.S.C. §§ 7604(a) and 7661d(b)(3); 40 C.F.R. § 71.4(e))

75.

Each allegation set forth in the complaint is incorporated herein by reference.

76.

Kentucky issued the TVA Paradise Title V Operating Permit on December 29, 2004.

77.

On January 7, 2005, Kentucky DAQ proposed the permit to EPA.

78.

EPA objected to the TVA Paradise Title V Operating Permit on February 18, 2005.

79.

The Clean Air Act requires EPA to "modify, terminate, or revoke" the TVA Paradise

Title V Operating Permit pursuant to 42 U.S.C. § 7661d(b)(3) because the permit was already

issued by the approved State before EPA's objection.

80.

EPA's own regulations require the Administrator to deny, terminate, revise, revoke or reissue a permit where an approved State permitting authority fails to respond to EPA's objection to the Permit.  40 C.F.R. § 71.4(e).

81.

EPA has taken no action to deny, terminate, revise, revoke or reissue the permit since objecting in February 2005.

82.

EPA's delay in modifying, terminating or revoking the TVA Paradise Title V Operating Permit as issued by Kentucky DAQ, and in issuing a revised permit pursuant to 40 C.F.R. Part 71 is unreasonable because EPA's delay exposes Plaintiffs and the public and the ecosystem they use to excess pollution from the massive coal-fired TVA Paradise.  It has been over <u>15 years</u> since Congress passed the Title V provisions of the Clean Air Act and TVA Paradise still does not have a Title V permit that is final, in the sense of having gone through the complete Title V permitting process and containing all applicable requirements.

83.

Therefore, EPA's delay in modifying, terminating or revoking the TVA Paradise Title V Operating Permit is unreasonable, and in violation of the Clean Air Act and EPA's implementing regulations.

FOURTH CLAIM FOR RELIEF

FAILURE TO RESPOND TO PLAINTIFFS' PETITION FOR AGENCY RULMAKING

(APA, 5 U.S.C. §§ 553(e), 555(b) and 706(1); 42 U.S.C. §§ 7604(a) and 7410(k)(5))

84.

Each allegation set forth in the complaint is incorporated herein by reference.

85.

Plaintiffs' petition of April 21, 2005, requesting that EPA object to TVA Paradise's Title V Operating Permit also included a request, pursuant to 5 U.S.C. 553(e), that EPA promulgate a rule to correct the Kentucky SIP so that it fully incorporates the credible evidence rule.

86.

EPA has not responded to this petition.

87.

The SIP Call for the credible evidence revision began in 1994.  70 Fed. Reg. 8314, 8327; *See* Clean Air Implementation Project v. Envt'l Protection Agency, 150 F.3d 1200, 1207 (D.C. Cir. 1998).

88.

Kentucky proposed a revision to its rules to satisfy the Credible Evidence Rule in December, 2005, but subsequently Kentucky withdrew its proposed revision.  Currently there is no proposed change to the Kentucky rules or Kentucky SIP which would move Kentucky forward with bringing the Kentucky SIP into compliance with the Credible Evidence Rule.

89.

TVA Paradise's Title V permit does not include Credible Evidence Rule conditions, which would provide that compliance and non-compliance can be established through any credible evidence.

90.

Kentucky DAQ claims that the credible evidence revision is inapplicable to TVA Paradise's Title V permit because Kentucky's SIP does not include a Credible Evidence Rule.

91.

The Kentucky SIP is not as stringent as the federal program, and this problem has existed since EPA promulgated the credible evidence rule in 1997.

92.

EPA's failure to respond to Plaintiffs' APA petition is unreasonable delay.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

A)     Declare that Defendant's failure to grant or deny Plaintiffs' petition for an objection to the Paradise Title V permit constitutes a failure to perform an act or duty that is not discretionary with the Defendant within the meaning of 42 U.S.C. 7604(a)(2), or in the alternative that it constitutes agency action unlawfully withheld or unreasonably delayed within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(1);

B)     Declare that Defendant's failure to perform his non-discretionary duty to grant or deny Plaintiffs' petition within sixty days is a violation of 42 U.S.C. § 7661d(b);

C)     Order the Defendant to grant or deny Plaintiffs' petition for an objection to the TVA Paradise's Title V permit in accordance with an expeditious schedule prescribed by the Court;

D)     Declare that Defendant has a non-discretionary duty to modify, terminate or revoke the TVA Paradise Title V Operating Permit within 90 days of its objection as required by 42 U.S.C. §§ 7661d(b)(3) and (c), and 40 C.F.R. 71.4(e). In the alternative, declare that Defendant has a non-discretionary duty to modify, terminate or revoke the TVA Paradise

Title V Operating Permit and that such action has been unreasonably delayed within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(1);

E)      Order Defendant to modify, terminate or revoke the TVA Paradise Title V Operating Permit in accordance with an expeditious schedule prescribed by the Court;

F)      Declare that Defendant has unreasonably delayed responding to Plaintiffs' petition for agency rulemaking to address the fact that Kentucky's SIP lacks a credible evidence rule;

G)      Order Defendant to respond to Plaintiffs' petition for agency rulemaking in accordance with an expeditious schedule prescribed by the Court;

H)      Retain jurisdiction over this action to ensure compliance with the Court's Order;

I)      Award Plaintiffs their costs of litigation, including reasonable attorney fees; and

J)      Grant such other relief as the Court deems just and proper.

Respectfully submitted,

_____
Robert Ukeiley (MD14062)
Law Office of Robert Ukeiley
433 Chestnut Street
Berea, KY 40403
Tel: (859) 986-5402
Fax: (859) 986-1299
E-mail: rukeiley@igc.org

Counsel for Plaintiffs

DATED:  July 31, 2006