IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Civil Action NO. 06-CV-1350 (GK) |
| STEPHEN L. JOHNSON *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

**DECLARATION OF ROBERT UKEILEY IN SUPPORT OF PLAINTIFFS'**

**MOTION FOR ATTORNEYS' FEES AND COSTS**

I, Robert Ukeiley, do declare and if called as a witness would testify as follows:

1.      I am an attorney licensed to practice before the courts of the States of Maryland (Inactive status), Colorado, Georgia and Kentucky.  I am an attorney of record in this case.  I am and have been an attorney of record for the Plaintiffs since the filing of this action.  I agreed to represent Plaintiff in this suit against the Administrator of the U.S. Environmental Protection Agency for violations of the Clean Air Act in regards to the Clean Air Act Title V petition filed by Bill MacClarence, P.E.  I am submitting this declaration in support of Plaintiff's motion for reasonable attorneys' fees and costs for work conducted in the District Court.   I have personal knowledge of the facts set forth herein and am competent to testify as to them if called.

2.      I am a member in good standing with the State Bars of Maryland (inactive status), Colorado, Georgia, and Kentucky.  I am admitted to practice in this Court as well as the United States District Courts for the Districts of Maryland (inactive) and Colorado and the Northern, Middle and Southern Districts of Georgia and the Eastern District of Kentucky. Although admitted to the Eastern District of Kentucky, I have never filed or participated in a case in that court.  I have also been admitted *pro hac vice* to: U.S. District Court for the Southern District of Ohio and U.S. District Court for the Middle District of Pennsylvania.  I am also admitted to the Supreme Court of the United States as well as the United States Courts of Appeals for the District of Columbia, the Second, the Tenth, the Eleventh and the Ninth Circuits.  I am not admitted to the Sixth Circuit.

3.      In 1995 I graduated from George Washington University Law School, with honors, in Washington, D.C.  During law school, I was a member of the Environmental Lawyer, a law journal that focuses exclusively on environmental law issues.  During law school I interned for the United States Department of Justice's Environmental Crimes Section and participated in a clinic in which I worked part-time at the Office of the Federal Public Defender's in Washington, D.C.  I also worked for two years as the research assistant to Professor Jennifer Lyman.

4.      Upon graduation I began working on international environmental law issues on behalf of conservation and animal welfare organizations as a law clerk at the Law Offices of Leesteffy Jenkins in Washington, D.C.  Upon being admitted to the bar in Maryland, I worked for one year for a non-profit public interest environmental law firm called Greenlaw.  I then spent approximately three and a half years in solo practice or with one partner in a private, public interest environmental law firm.  During this time, I

also did a limited amount of court-appointed criminal defense work and court-appointed

civil rights work.  I then spent approximately three years working for another non-profit

public interest environmental law firm called the Georgia Center for Law in the Public

Interest.  At the Georgia Center for Law in the Public Interest, I was the Director and

Staff Attorney for the Georgia Clean Air Project.

     5.    Since, October of 2003, I have been in my own private, public interest

environmental law firm.  Although I am located in Berea, Kentucky, I do not have any

cases in courts in Berea or Madison County, Kentucky.  In fact, I only have one case in a

Kentucky court.  I live and work in Berea, Kentucky for personal reasons.

     6.    My practice is 100% public interest environmental law with a focus on

Endangered Species Act and Clean Air Act litigation.  I mainly represent clients at no

charge in the hopes of recovering fees under the environmental statutes' fee shifting

provisions.  However, I do represent some clients while charging them a public interest

rate which is substantially below my market rate.  I describe my billing practices in more

detail below.

     7.    My work in this Court began while I was in law school at George

Washington University.  In 1993, when I began working for Prof. Lyman, the Clinic that

Prof. Lyman ran had two civil rights cases in this Court in front of Judge Jackson.  These

cases were left over from the previous Clinical Director and Prof. Lyman chose not to

assign the cases to Clinic students.  Therefore, one of my primary tasks was assisting

Prof. Lyman in litigating these cases.  In addition, as mentioned above, I also worked part

time in the Federal Public Defender's office in Washington, D.C as part of a law school

clinic.  While in private practice in Colorado, I represented numerous clients in several

cases in this Court.  Representative cases included <u>San Juan Audubon Society v. Wildlife Services</u>, 00-cv-785(RMU)(Endangered Species Act case); <u>Fund for Animals v. Reno</u>, 99-cv-3316(EGS)(case challenging federal government's killing of black tailed prairie dogs); <u>Animal Protection Institute v. Wildlife Services</u>, 99-cv-3149(PLF).

8.     While working for the Georgia Center for Law in the Public Interest, I represented several clients in several cases in this Court.  Representative cases included <u>Sierra Club v. Whitman</u>, 01-cv-1991(ESH); <u>NYPIRG v. Whitman</u>, 02-cv-337(ESH) consolidated with <u>Sierra Club v. Whitman</u>, 02-cv-338(ESH).

9.     Overall, I have successfully represented conservation and environmental non-profit organizations in approximately 20 "deadline" suits against the federal government.

10.     In this case I represent the Plaintiffs in the role of lead counsel.  The Plaintiffs are not paying me for my time working on this case.  Rather, I took this case based on an expectation of the likelihood of recovering fees under the Clean Air Act's fee shifting provision.

11.     I am requesting an hourly rate of $390 for 2008-2007, $375 for 2007-2006, $290 for 2006-2005 and $280 for 2005-2004 per billable hour based on the United States Attorney's Office Laffey Matrix which is attached as Exhibit 1.  I graduated law school in the summer of 1995.  This places me in the 8-10 year row for 2004 – 2006 and the 11-19 year row for 2006 - 2008.

12.     My associate Aubrey Baldwin and I maintain contemporaneous records of the time spent and expenses incurred on this case, and I have set forth our billing record in Exhibit 2.   In Exhibit 2, entries that start with "RU" are for my time and entries that

start with "AB" are for Aubrey Baldwin's time.  Throughout the course of this litigation, my staff and I kept careful time records, knowing from the initiation of the action that any compensation would be based on attorneys' fees recovered as part of the judgment or settlement.  However, my billing records actually underestimate the amount of time I have spent on this case because sometime I do not record short tasks like certain telephone calls and e-mails.  I have carefully inspected the time records in this case and have exercised billing judgment to claim hours that were legitimate, non-duplicative and necessary for this case.

13.    My records establish that I am entitled to 1.5 hours at $280 per hour, 7.3 hours at $290 per hour, 36.8 hours at $375 per hour and 17.1 hours at $390 per hour.  See Ex. 2, pp. 1-8.  Aubrey Baldwin is entitled to 91.6 hours at $205 per hour.  See Ex. 2, pp. 8-9.

14.    The lodestar for my work on this case comes to $23,006.   I calculated the loadstar as follows: [(280* 1.5) + (290 * 7.3) + (375 * 36.8) + (390 * 17.1)]

15.    The loadstar for Ms. Baldwin's work on this case comes to $18,778.   I calculated the loadstar as follows: (91.6 * 205).

16.    I am requesting $453.07 in costs.  See Ex. 2, p. 9.

17.    Together with Timothy Ballo's and Ashley Wilmes' time, which are supported by separate affidavits, the costs of litigation, including reasonable attorneys' fees, for this case is $49,086.07.  This is a reasonable amount considering the work we have done on this case and our experience.

18.  A reasonable rate for my time in this case is $390 for 2008-2007, $375 for 2007-2006, $290 for 2006-2005 and $280 for 2005-2004 per billable hour which is the

rate provided for a lawyer with my level of experience in the U.S. Attorney's Office for

the District of Columbia's adjusted Laffey Matrix attached as Exhibit 1.

19.     Turning first to my firm's billing practices; my firm has a 100%

environmental public interest for-profit practice.  We only represent groups or individuals

in enforcing federal environmental laws or state laws or regulations implementing federal

environmental laws.  Our practice only seeks injunctive or declaratory relief or civil

penalties that go to the federal treasury rather than the plaintiffs.[1]

20.     Our practice focuses predominately on the Clean Air Act with a lesser

focus on the Endangered Species Act.  Our practice predominately involves representing

non-profit organizations, with the occasional individual named as a co-plaintiff although

on rare occasions, the practice does involve representing public interest minded

individuals.

21.     My practice involves charging "variable rates (both at and below the

market, with the latter attributable to public-spirited goals" of maximizing environmental

and public health protection.  See Covington, 57 F.3d at 1108.

22.     For example, we represent labor unions and individual members of labor

unions regarding Clean Air Act permits issued by the Indiana Department of

Environmental Management.   In these matters, we charged and were paid a rate based on

the U.S. Attorney's Office Laffey Matrix although sometimes, we have charged rates

which reflect last year's Laffey Matrix rate.  This was mainly inadvertent.

---

[1] This is not to imply that monetary damages cannot serve the public interest.

23.     I charge my market rates to these clients because I believe charging this rate will not affect the degree of environmental protection, considering the relative resources available to the labor unions.

24.     Between incorporating my present law firm in December of 2003 and July 2007, my law firm has worked on 14 of these matters.  We has billed and collected over $66,000 at rates equal to the U.S. Attorney's Office Laffey Matrix rates for this work.  These are not fee shifting matters so the client is paying our market rate with no ability to recoup these fees.  This represents a substantial portion of the firm's total income because of the firm's public interest nature.

25.     These matters do not represent a "lucky" case.  Rather, 100% of the time that I have charged market rates for my work, I have charged and received rates based on the U.S. Attorney's Office Laffey Matrix.  I could have done more market rate based work during the December 2003 to July 2007 time frame but I chose not to so that I would have more time to do *pro bono* work.

26.     I have chose to set my market rate at a rate equal to the U.S. Attorney's Office Laffey Matrix because, in reality, my firm has a nationwide practice but the majority of its work is in D.C. courts.  For example, in July 2007, my firm had 16 cases in active litigation.  Of these 16 cases, nine were in the U.S. District Court for the District of Columbia, one in the U.S. Court of Appeals for the District of Columbia Circuit, one in the U.S. District Court for the Northern District of Georgia, one in the U.S. District Court for the Southern District of Ohio, one in front of an Administrative Law Judge on the Kentucky Environment and Public Protection Cabinet, one in the Pennsylvania Supreme Court, one in the United States Court of Appeals for the Eleventh Circuit, and

one in the Franklin County, Kentucky Circuit Court.  However, in the Franklin County

Circuit Court, there was a Kentucky lawyer who serves the role of local counsel in this

case.  We were involved in this last case, as well as the case in front of the Kentucky

Administrative Law Judge because the cases involve Clean Air Act challenges to coal

fired power plants, which is my specialty.  I represented the Sierra Club in these two

cases.  The Sierra Club is a nation-wide environmental organization based in San

Francisco, California.

    27.    I live in Kentucky for personal reasons.  My practice is issue-based rather

than place-based.

    28.    My bar membership also reflects the nation wide scope of my practice.  I

am admitted to the Maryland, Colorado, Georgia and Kentucky state bars as well as to:

U.S. Court of Appeals for the 10th Circuit, U.S. District Court for the District of

Colorado, U.S. Court of Appeals for the D.C. Circuit, U.S. District Court for the District

of Arizona, U.S. District Court for the District of Maryland, Supreme Court of the United

States, U.S. District Court for the District of Columbia, U.S. Court of Appeals for the

11th Circuit, U.S. District Courts for the Southern, Middle and Northern Districts of

Georgia, U.S. Court of Appeals for the 2d Circuit, U.S. District Court for the Eastern

District of Kentucky, and the U.S. Court of Appeals for the 9th Circuit.  Although

admitted to the Eastern District of Kentucky, I have never filed or participated in a case

in that court.  I have also been admitted *pro hac vice* to: U.S. District Court for the

Southern District of Ohio and U.S. District Court for the Middle District of Pennsylvania.

    29.    My work in the D.C. District Court stretches back to my law school days.

While attending George Washington University (GW) Law School in D.C., I worked for

Professor Jennifer Lyman at the GW Law School Clinic from 1993 to 1995.  One of my

principle responsibilities as Prof. Lyman's research assistant was to help litigate two civil

rights cases in the D.C. District Court which Prof. Lyman had inherited from the previous

clinical professor.

30.     I also interned at the Federal Public Defender's Office in D.C. during law

school, thus increasing my early experience with the D.C. District Court.[2]

31.     Over the course of my career, I have practiced far more cases in the D.C.

District Court than in any other court.

32.     My law practice-related connection to Kentucky is very limited.  For

example, I have never had a client physically in my office in Kentucky.  I do a

considerable amount of my work outside of my office and outside Kentucky.  I spend

much of the summer in Colorado and California.

33.     I have no cases in which I only represent Kentucky clients.  I have never

filed a case in federal court in Kentucky.  For the one and only case I filed in state court

in Kentucky, I had a co-counsel from Kentucky who serves as local counsel as well as

co-counsel from California.   I spend two to four weeks per year in Berkeley, California

each year.  I work during this entire time. As my personal situation allows, I will spend

less and less time in Berea and more and more time doing my work while physically

located in other locations such as Berkeley or Colorado.

34.     Besides for the labor unions, the rest of my firm's work is all on a *pro*

*bono* basis.  This *pro bono* work can be divided into three categories in terms of billing.

---

[2] During law school, I also interned for a semester with the U.S. Department of Justice's
Environmental Crimes Section.  While this office was in D.C., none of my work involved
cases in D.C. courts.

The first category is *pro bono* work in which the firm receives no income at all and has no possibility of receiving any income. This includes work presenting clients as well as work consulting with other public interest lawyers on Clean Air Act work when the other public interest lawyers are seeking my opinions.

35.    For example, during the week of June 11 – 15, 2007, I received an e-mail from a public interest lawyer working for a non-profit in D.C. (who is a former high ranking EPA official) seeking my opinion on a Clean Air Act question, an e-mail from a public interest lawyer working for a non-profit environmental law firm in Alaska seeking my opinion on a Clean Air Act question, an e-mail from a public interest lawyer working for a non-profit environmental law firm in Colorado seeking my opinion on a Clean Air Act question, and an e-mail from my former associate, who is now a public interest lawyer working for EarthJustice in D.C., seeking my opinion on a Clean Air Act question. This is a typical level for me of *pro bono* consultation with the public interest environmental bar on Clean Air Act issues.

36.    The second type of *pro bono* arrangement is where my firm does not charge the client anything for their time but hopes to recovery under a statutory fee shifting provision. This case is an example of this type of *pro bono* arraignment. Full recovery at market rates in these cases is critical for the financial viability of my public interest firm.

37.    The third type of *pro bono* is what public interest lawyers often refer to as "low bono" or a reduced rate case. My firm offers these reduced rates because, simply put, the work would not otherwise get done. I almost always strongly encourages and often facilitate the clients seeking free representation from a non-profit public interest law

firm and only takes the case on a "low bono" basis when there is no adequate representation available for free.

38.    We currently charges approximately $90 per hour for these low bono cases.  This is not a market rate but rather a rate chosen to allow the public interest environmental work to get done.  My firm charges the same $90 for myself and for my first year associates in these cases.  In addition, my firm almost always agrees to a cap on the total amount that we will charge for lawyer time in these low bono cases.  These caps results in the effective rate often ending up in the $45 range because the firm ends up putting in almost as much unbillable time into the case as billable time.

39.    As to experience, reputation and skill as it relates to this case, I have spent my entire career working for non-profit public interest environmental law firms or for-profit public interest law firms.  My practice has been almost all public interest environmental litigation although early on in his career, I accepted some court appointed civil rights cases and served as a court appointed alternative criminal defense counsel.  In addition, my initial position after law school was in the nature of a public interest, international environmental lobbyist, working on such treaties as the Inter-America Tropical Tuna Convention that governs the take of dolphins when tuna fishing.

40.    Currently, I am one of the most experienced Title V litigators on the public interest side in the country.[3]  In a Title V case I litigated, the 11th Circuit noted that: "Navigating through the intricacies of the Clean Air Act is no task for the

---

[3] This may seek like quite a boast, considering that I only graduated law school in 1995.  However, it is important to recall that Title V was only passed in 1990 and was not really implemented much before 1995 as the EPA delayed in promulgating the Title V regulations.  In addition, it is not a very frequently litigated provision, in the relative sense.

uninformed or the short-winded." <u>Sierra Club v. Johnson</u>, 436 F.3d 1269, 1272 (11th Cir. 2006).

41.     Specifically, I have drafted comments, or supervised others writing comments on dozens of Title V permits.  I have drafted or supervised others writing approximately 16 Title V petitions for objections.  I haves litigated or am currently litigating approximately ten Title V petition deadline suits similar to this case.  This included one Title V petition deadline case in which I unsuccessfully tried to end EPA's pattern and practice of failing to comply with the mandatory 60-day deadline to respond to Title V petitions.  <u>See</u> <u>New York Public Interest Research Group v. Whitman</u>, 214 F.Supp. 2d 1 (D.D.C. 2002).  Had EPA's vigorous defense not succeeded in that case, the present case would have never existed and thus Plaintiff would not be seeking fees.

42.     I handled, from drafting the comments on the State-issued Title V permit all the way through outlining the reply brief in the appellate courts two substantive challenges to EPA's response to Title V petitions, <u>Sierra Club v. Leavitt</u>, 368 F.3d 1300 (11th Cir. 2004) and <u>Sierra Club v. Johnson</u>, 436 F.3d 1269 (11th Cir. 2006).[4]  I litigated <u>Sierra Club v. Johnson</u>, 496 F.3d 1182 (11th Cir. 2007) which is another challenge to EPA's response to a Title V petition.  I have also spent close to 100 days in trials of state issued Title V permits in front of Administrative Law Judges.  I litigated one case against the State of Georgia for systemic delays in issuing Title V permits and one case against EPA for systemic problems with the Georgia Title V program as a whole.

---

[4] My name does not appear on the published decisions because I did not participate in the oral argument, as I left my employment with the Georgia Center for Law in the Public Interest prior to those oral arguments.

43.    As to enforcement, I litigated for almost five years a federal Clean Air Act citizen suit that involved, in part, enforcing a Title V permit against a coal-fired power plant and resulted in several published opinions.  See e.g. Sierra Club v. Georgia Power Company, 365 F.Supp.2d 1287 (N.D. Ga. 2004); Sierra Club v. Georgia Power Company, 365 F.Supp.2d 1297 (N.D. Ga. 2004) rev'd 443 F.3d 1346 (11th Cir. 2006).  I have also been litigating since 2004 an on-going Clean Air Act citizen suit involving, in part, enforcement of a Title V permit against a coal fired power plant as well as violations of the Clean Air Act's Prevention of Significant Deterioration program.  See Sierra Club v. Dayton Power & Light, 04-905 (S.D. Ohio).

44.    EPA appears to recognize my Clean Air Act experience, skill and reputation for they have had me teach at least one of EPA's Clean Air Act Prevention of Significant Deterioration (PSD) and Non-Attainment New Source Review citizen trainings.[5]  PSD and NA NSR are other parts of the Clean Air Act which are applicable requirements which must be included in Title V permits.  See 40 CFR § 70.2 Applicable requirements (2).    EPA and EPA's contractor also asked me to edit EPA's citizen's guide to PSD and NA NSR.  Finally, EPA's Title V Performance Task Force chose me as one of the people to interview to gain a better understanding of how the Title V program was actually working.

45.    My other teaching experience includes teaching Continuing Legal Education (CLE) courses on the Clean Air Act and power plants at the Public Interest Environmental Law Conference in Eugene, Oregon for at least the past three years.  I

---

[5] I may have taught at two of these trainings but I cannot recall for certain.

have also been a presenter on Clean Air Act issues at several Sierra Club events in the last few years.

46.    Over the years, I have done more work for the Sierra Club than for any other client.  Last year, the Sierra Club named me as one of their "Legal Heroes."  See http://www.sierraclub.org/environmentallaw/heroes/robert_ukeiley.asp (last visited 6/16/07).

47.    The above information is generally based on my situation in June 2007, which is when I first had to submit a declaration after the Department of Justice reversed its previous position of agreeing to rates for my staff and I based on the U.S. Attorney's Office Laffey Matrix.  However, to be completely accurate, on December 10, 2007, I started as a staff attorney and director of the Climate and Energy program at Forest Guardians, a non-profit conservation organization.  Forest Guardians' main office is in Santa Fe, New Mexico.  I work remotely out of Forest Guardians' Denver office.  However, I continue to live in Kentucky for personal reasons.  My position with Forest Guardians is full time but allows me to wrap up my existing cases from his public interest environmental law private practice.  In January, Forest Guardians changed its name to WildEarth Guardians.

48.    $205 per hour is a reasonable rate for a first year associate in the Law Office of Robert Ukeiley, Aubrey Baldwin.  The facts above with regard to my firm and I generally apply to Ms. Baldwin.

49.    Ms. Baldwin is a 2005 graduate of Northwestern School of Law of Lewis and Clark College in Portland, Oregon.  She received a certificate in environmental and natural resources law.  She also received the environmental alumni association's

14

Williamson Award which is awarded to one graduate per year who has demonstrated an outstanding commitment to public interest environmental work.  During law school, she had a summer position at a non-profit public interest environmental law firm and during the school year, she worked at the law school's environmental clinic.

50.    Ms. Baldwin is actually paid at the U.S. Attorney's Office adjusted Laffey Matrix for Clean Air Act work for various labor unions or individual labor union members, although as of May 2007, she was still billing at last year's rate ($195 per hour).  The rest of her work is done on a *pro bono* basis as described above with regard to myself.

51.    My firm represented Mr. MacClarence in this case on a *pro bono* basis, with only the filing fee and other case costs covered by Mr. MacClarence, and payment of fees contingent upon success.

53.    This Court has previously granted rates for my time based on the U.S. Attorney's Office's adjusted Laffey Matrix in <u>Center for Biological Diversity v. Norton</u>, 04-0156 (JDB)(DDC Jan. 26, 2005) at 5.  Attached as Exhibit 3.

54.    EPA's record of compliance with the mandatory 60-day deadline in 42 U.S.C. § 7661d(b)(2) is abysmal.  In almost every single case, EPA does not respond to a Title V petition until after a citizen suit has been filed to force compliance with this mandatory duty.

55.    EPA does not review most proposed Title V permits forwarded to it by state permitting agencies.

56.    Attached as Exhibit 4 to this declaration is a firm by firm sampling of billing rates from the National Law Journal.  Eileen McDonough, an attorney with the

U.S. Department of Justice's Environmental Defense Section provided this document to Aubrey Baldwin of my firm via a May 10, 2007 e-mail in connection with a fee dispute regarding another Title V petition deadline suit. The highlighted entries were on the document when we received it. I assume Ms. McDonough or someone else in her Section highlighted these entries.

57.    The United States Environmental Protection Agency ("EPA") has a clear pattern and practice of not complying with the mandatory 60-day deadline in 42 U.S.C. § 7661d(b)(2) to respond to petitions for objections to Title V permits. As far as I am aware, EPA has claimed that they have responded to only one Title V petition without action by the petitioner. As far as I am aware, EPA has only responded to one Title V petition after a 60-day notice of intent to sue for violation of the mandatory duty in 42 U.S.C. § 7661d(b)(2) was sent. For every other Title V petition, EPA has either not responded or EPA only responded after the petitioner filed a complaint alleging a violation of EPA's mandatory duty in 42 U.S.C. § 7661d(b)(2).

58.    EPA typically responds or reaches an agreement to respond to the petition shortly before EPA's answer to the complaint in the mandatory duty citizen suit is due. Thus, EPA is in effect using litigation in which it knows that it has no defense as a means of gaining at least a 120 day extension to comply with its mandatory duty in 42 U.S.C. § 7661d(b)(2).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_2/13/08_
Date

_Robert Ukeiley_
Robert Ukeiley

16

# EXHIBIT 1



**UNITED STATES ATTORNEY'S OFFICE**
**FOR THE DISTRICT OF COLUMBIA**

555 4TH STREET, NW
WASHINGTON, DC 20530
(202) 514-7566

SEARCH

HOME

U.S. ATTORNEY

ABOUT US

DIVISIONS

COMMUNITY
PROSECUTION

PROGRAMS
FOR YOUTH

VICTIM WITNESS
ASSISTANCE

PARTNERSHIPS

PRESS RELEASES

EMPLOYMENT

ESPAÑOL

CONTACT US

LINKS

SITE MAP

## LAFFEY MATRIX 2003-2008

| Experience | 03-04 | 04-05 | 05-06 | 06-07 | 07-08 |
|---|---|---|---|---|---|
| 20+ years | 380 | 390 | 405 | 425 | 440 |
| 11-19 years | 335 | 345 | 360 | 375 | 390 |
| 8-10 years | 270 | 280 | 290 | 305 | 315 |
| 4-7 years | 220 | 225 | 235 | 245 | 255 |
| 1-3 years | 180 | 185 | 195 | 205 | 215 |
| Paralegals & Law Clerks | 105 | 110 | 115 | 120 | 125 |

Years (Rate for June 1 - May 31, based on prior year's CPI-U)

**Explanatory Notes**

1. This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia. The matrix is intended to be used in cases in which a "fee-shifting" statute permits the prevailing party to recover "reasonable" attorney's fees. *See, e.g.,* 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 2 U.S.C. § 2412 (b) (Equal Access to Justice Act). The matrix does not apply in cases in which the hourly rate is limited by statute. See 28 U.S.C. § 2412(d).

2. This matrix is based on the hourly rates allowed by the District Court in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985). It is commonly referred to by attorneys and federal judges in the District of Columbia as the "Laffey Matrix" or the "United States Attorney's Office Matrix." The column headed "Experience" refers to the years following the attorney's graduation from law school. The various "brackets" are intended to correspond to "junior associates" (1-3 years after law school graduation), "senior associates" (4-7 years), "experienced federal court litigators" (8-10 and 11-19 years), and "very experienced federal court litigators" (20 years or more). *See Laffey*, 572 F. Supp. at 371.

3. The hourly rates approved by the District Court in *Laffey* were for work done principally in 1981-82. The Matrix begins with those rates. *See Laffey*, 572 F. Supp. at 371 (attorney rates) & 386 n.74 (paralegal and law clerk rate). The rates for subsequent yearly periods were determined by adding the change in the cost of living for the Washington, D.C. area to the applicable rate for the prior year, and then rounding to the nearest multiple of $5 (up if within $ of the next multiple of $5). The result is subject to adjustment if appropriate to ensure that the relationship between the highest rate and the lower rates remains reasonably constant. Changes in the cost of living are measured by the Consumer Price Index for All Urban Consumers (CPI-U) for Washington-Baltimore, DC-MD-VA-WV, as announced by the Bureau of Labor Statistics for May of each year.

4. Use of an updated *Laffey* Matrix was implicitly endorsed by the Court of Appeals in *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (en banc). The Court of Appeals subsequently stated that parties may rely on the updated *Laffey* Matrix prepared by the United States Attorney's Office as evidence of prevailing market rates for litigation counsel in the Washington, D.C. area. See *Covington v. District of Columbia*, 57 F.3d 1101, 1105 & n.



14, 1109 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1115 (1996). Lower federal courts in the District of Columbia have used this updated *Laffey* Matrix when determining whether fee awards under fee-shifting statutes are reasonable. *See, e.g.*, *Blackman v. District of Columbia* 59 F. Supp. 2d 37, 43 (D.D.C. 1999); *Jefferson v. Milvets System Technology, Inc.*, 986 F. Supp. 6, 11 (D.D.C. 1997); *Ralph Hoar & Associates v. Nat'l Highway Transportation Safety Admin.*, 985 F. Supp. 1, 9-10 n.3 (D.D.C. 1997); *Martini v. Fed. Nat'l Mtg Ass'n*, 977 F. Supp. 482, 485 n.2 (D.D.C. 1997); *Park v. Howard University*, 881 F. Supp. 653, 654 (D.D.C. 1995).

**Last Updated on 07/06/2007**

# EXHIBIT 2

Robert Ukeiley, P.S.C

435R Chestnut Street
Suite 1
Berea, KY 40403

# Invoice

| DATE | INVOICE # |
|---|---|
| 2/12/2008 | 199 |

BILL TO

| DUE DATE | PROJECT |
|---|---|
| 3/24/2007 | Paradise Deadline Suit |

| DATE | TIME | ACTION | DESCRIPTION | RATE | AMOUNT |
|---|---|---|---|---|---|
| 5/25/2005 | 1.3 | E-mail | RU: E-mail to Art Hofmeiser re: status of objection. Research Part 71 issuance process. E-mail to other TV lawyers re: what happens. E-mail to Florence Telp-Johnson re: FOIA request, forward to Randy Domini. | 280.00 | 364.00 |
| 5/26/2005 | 0.2 | E-mail | E-mail w/Art Hofmeiser re: Part 71 permit proceedings. | 280.00 | 56.00 |
| 9/15/2005 | 2.6 | E-mail | RU: Check on status of Huntly/Durkerd in 2nd circuit. E-mail to Keri Powell re: same. Research cause of action for EPA delay. E-mail to Tim Ballo re: NOI for same. E-mail to clients on how to proceed. | 290.00 | 754.00 |
| 9/16/2005 | 0.3 | E-mail | RU: E-mails from Hilary Lambert and Preston Forsythe saying they want to proceed. Sent contracts to them. | 290.00 | 87.00 |
| 9/27/2005 | 0.1 | E-mail | RU: E-mail w/Preston Forsythe re: representation. | 290.00 | 29.00 |
| 9/29/2005 | 0.4 | Doc Review | RU: Reviewed Tim Ballo's draft of notice ltr. E-mail w/Tim re: same. T/C w/Peter Galvin, CBD. | 290.00 | 116.00 |
| 9/30/2005 | 0.1 | E-mail | RU: E-mails w/Tim Ballo re: drafting notice ltr. | 290.00 | 29.00 |
| | 0.3 | T/C & Meeting | RU: T/c w/Peter Galvin re: deadline suit. | 290.00 | 87.00 |
| 10/4/2005 | 1.4 | Doc Review | RU: Review and edit Tim's NOI. E-mail to Tim re: same. E-mail to Keri Powell and Kelly Haragan, EIP, re: their opinion on the NOI. Confirmation e-mail to Peter Galvin re: CBD. | 290.00 | 406.00 |
| 12/16/2005 | 0.8 | Doc Review | RU: Got and reviewed public notice of credible evidence rule. T/C v/m to Perrin DeJong to find out contact for new KY Heartwood person. E-mail to clients re: proposed rule. E-mail to Fitz re: confidential. | 290.00 | 232.00 |
| 1/30/2006 | 1.2 | Doc Review | RU: Review NC's case against TVA. E-mail to clients re: same. | 290.00 | 348.00 |
| | | | | **Total** | |

Robert Ukeiley, P.S.C

435R Chestnut Street
Suite 1
Berea, KY 40403

# Invoice

| DATE | INVOICE # |
|------|-----------|
| 2/12/2008 | 199 |

| BILL TO |
|---------|
|         |

| DUE DATE | PROJECT |
|----------|---------|
| 3/24/2007 | Paradise Deadline Suit |

| DATE | TIME | ACTION | DESCRIPTION | RATE | AMOUNT |
|------|------|--------|-------------|------|--------|
| 2/10/2006 | 0.1 | E-mail | RU: E-mail from George saying he'll get back to me next week.  E-mails w/Hilary Lambert and other clients re: status and next steps. | 290.00 | 29.00 |
| 7/18/2006 | 1.3 | T/C & Meeting | RU: Meeting w/Aubrey Baldwin re: drafting complaint and next steps.  E-mail to Chris Hall, KY DAQ re: credible evidence rule status. E-mail to Art Hofmeiser re: status of Title V and Part 71 permits.  E-mail to Todd Gleason and Apple Chapman re: status of EPA action and our intent to file suit by end of month. | 375.00 | 487.50 |
|  | 0.4 | E-mail | RU: E-mail to Peter Galvin and Kassie Siegel, CBD re: TVA paradise Title V petition.  E-mail to Hilary Lambert and Preston Forsythe re: timing of filing. | 375.00 | 150.00 |
| 7/19/2006 | 0.3 | E-mail | RU: E-mail w/Kassie Siegel, CBD, re: strength of case. | 375.00 | 112.50 |
| 7/20/2006 | 0.2 | E-mail | E-mail from Kassie approving filing complaint and asking question re: legal strategy. | 375.00 | 75.00 |
| 7/24/2006 | 0.4 | T/C & Meeting | RU: T/c w/Todd Gleason re: EPA.  T/c w/Aubrey Baldwin re: same and complaint.  E-mail from Todd re: same. | 375.00 | 150.00 |
|  | 1.1 | Legal Writing | RU: Edit complaint. | 375.00 | 412.50 |
| 7/25/2006 | 2.6 | Legal Writing | RU: Edit complaint. | 375.00 | 975.00 |
|  | 0.3 | E-mail | RU: E-mails w/Hilary Lambert and Julie re: media. | 375.00 | 112.50 |
| 8/29/2006 | 0.1 | E-mail | RU: E-mails from and to KY DAQ  re: copy of TVA withdrawal ltr. | 375.00 | 37.50 |
|  | 1.9 | Doc Review | RU: Review executed summons.  Forward to Apple Chapman, Todd Gleason and clients.  Review Paradise 2005 NOx emissions.  Review TVA ltr to KY DAQ asking for permit withdrawal.  Draft FOIA request to DAQ for docs.  Meeting with Aubrey Baldwin re: researching DAQ or EPA obligations to respond. | 375.00 | 712.50 |

| | Total |
|--|-------|
|  |  |

Robert Ukeiley, P.S.C

435R Chestnut Street
Suite 1
Berea, KY 40403

# Invoice

| DATE | INVOICE # |
|------|-----------|
| 2/12/2008 | 199 |

| BILL TO |
|---------|
|         |

| DUE DATE | PROJECT |
|----------|---------|
| 3/24/2007 | Paradise Deadline Suit |

| DATE | TIME | ACTION | DESCRIPTION | RATE | AMOUNT |
|------|------|--------|-------------|------|--------|
| 8/31/2006 | 1.5 | Doc Review | RU: Review docs from KY DAQ. E-mail to clients re: same. Draft FOIA to US EPA R4. | 375.00 | 562.50 |
| 9/7/2006 | 1.2 | T/C & Meeting | RU: T/c w/Eric Hostetler, re: Count 1. Meeting w/Aubrey Baldwin re: strategy and research assignments. E-mail to clients re: same. | 375.00 | 450.00 |
| 9/8/2006 | 0.6 | E-mail | RU: E-mails w/Hilary Lambert and Julie re: strategy and settlement. | 375.00 | 225.00 |
| 9/11/2006 | 0.6 | T/C & Meeting | RU: T/c w/Eric Hostetler re: settlement an litigation position. E-mail relevant docs to Eric. | 375.00 | 225.00 |
| 10/3/2006 | 0.2 | E-mail | RU: E-mail w/Aubrey Baldwin re: venue research. | 375.00 | 75.00 |
| 10/6/2006 | 0.5 | T/C & Meeting | RU: Meeting w/Aubrey re: venue. T/c w/Eric H. re: venue and settlement. E-mail settlement offer to Eric. Review Mass v DC for law on review of denial. | 375.00 | 187.50 |
|  | 0.5 | Doc Review | RU: Review venue cases Texas municipal and others. | 375.00 | 187.50 |
| 10/12/2006 | 1 | Doc Review | RU: Review motion to dismiss. Outline response and reply to Aubrey. | 375.00 | 375.00 |
| 10/18/2006 | 0.2 | T/C & Meeting | RU: Meeting w/Aubrey re: venue motion. | 375.00 | 75.00 |
| 10/19/2006 | 0.4 | Doc Review | RU: Review EPA ltr asking for Part 71 application. E-mail to clients re: same. Meeting w/Aubrey re: same. | 375.00 | 150.00 |
| 10/21/2006 | 1 | Legal Writing | RU: Edit Aubrey's brief re: venue. | 375.00 | 375.00 |
| 10/22/2006 | 4.1 | Legal Writing | RU: Edit Aubrey's brief re: venue. | 375.00 | 1,537.50 |
| 10/23/2006 | 1.3 | Legal Writing | RU: Edit Aubrey's brief re: venue. Meeting w/Aubrey re: same. | 375.00 | 487.50 |
| 10/31/2006 | 0.6 | Doc Review | RU: Review settlement offer. E-mail to clients re: same. | 375.00 | 225.00 |
| 11/6/2006 | 0.3 | E-mail | RU: E-mail w/David Bender re: Onyx Part 71 permitting. | 375.00 | 112.50 |
|  | 0.2 | E-mail | RU: E-mail w/Hilary Lambert re: settlement. | 375.00 | 75.00 |
| 11/8/2006 | 0.2 | E-mail | RU: E-mail w/Kassie Siegel re: settlement. | 375.00 | 75.00 |
| 11/9/2006 | 0.3 | Doc Review | RU: Review reply on transfer. | 375.00 | 112.50 |

## Total

Robert Ukeiley, P.S.C

435R Chestnut Street
Suite 1
Berea, KY 40403

# Invoice

| DATE | INVOICE # |
|------|-----------|
| 2/12/2008 | 199 |

| BILL TO |
|---------|
|         |

| DUE DATE | PROJECT |
|----------|---------|
| 3/24/2007 | Paradise Deadline Suit |

| DATE | TIME | ACTION | DESCRIPTION | RATE | AMOUNT |
|------|------|--------|-------------|------|--------|
| 11/15/2006 | 0.6 | Legal Writing | RU: Draft settlement response ltr. | 375.00 | 225.00 |
| 12/6/2006 | 1.2 | Doc Review | RU: Review settlement offer response from Eric Hostetler.  T/c w/Eric  re: consent decree.  Meeting w/Aubrey B. re: same.  E-mail to clients re: same. | 375.00 | 450.00 |
| 12/9/2006 | 1.5 | Doc Review | RU: Review client e-mails on settlement.  Draft joint motion to stay.  E-mail to Eric H. re: settlement. | 375.00 | 562.50 |
| 12/11/2006 | 0.1 | E-mail | RU: E-mail to Eric H. re: settlement. | 375.00 | 37.50 |
| 12/19/2006 | 0.3 | Doc Review | RU: Review Fed Reg notice re: response to petition.  E-mail to Eric H. and Art Hofmeiser re: same.  E-mail to clients re:same. | 375.00 | 112.50 |
| 12/22/2006 | 1.4 | Doc Review | RU: Review EPA's response to petition.  E-mail to clients re: same.  E-mail from Eric and Art Re: response to petition.  review settlement agreement from Eric.  E-mail to clients re: same.  E-mail edits to Eric. | 375.00 | 525.00 |
| 12/29/2006 | 0.2 | E-mail | RU: E-mail from Hilary L. re: settlement agreement. | 375.00 | 75.00 |
|  | 0.2 | E-mail | RU: E-mail w/Perrin DeJong, KY Heartwood re: EPA FR notice on petition. | 375.00 | 75.00 |
| 1/4/2007 | 0.5 | Doc Review | RU: Review and Edit settlement agreement.  E-mail to Eric re: same. | 375.00 | 187.50 |
| 1/5/2007 | 0.2 | Doc Review | RU: Review and Edit settlement agreement.  E-mail to Eric re: same | 375.00 | 75.00 |
| 1/8/2007 | 0.1 | E-mail | RU: E-mail w/Eric re: settlement agreement language. | 375.00 | 37.50 |
| 1/9/2007 | 0.2 | Doc Review | RU: Review Eric H's joint motion to stay.  E-mail to Eric re: filing. | 375.00 | 75.00 |
| 1/11/2007 | 0.1 | Doc Review | RU: Review filed joint motion to stay, sent to clients.  Reviewed order re: same, sent to clients. | 375.00 | 37.50 |
| 1/23/2007 | 0.1 | E-mail | RU: E-mail w/Eric re: typos in settlement agreement. | 375.00 | 37.50 |

| Total |
|-------|

Robert Ukeiley, P.S.C

435R Chestnut Street
Suite 1
Berea, KY 40403

# Invoice

| DATE | INVOICE # |
|------|-----------|
| 2/12/2008 | 199 |

| BILL TO |
|---------|
|         |

| DUE DATE | PROJECT |
|----------|---------|
| 3/24/2007 | Paradise Deadline Suit |

| DATE | TIME | ACTION | DESCRIPTION | RATE | AMOUNT |
|------|------|--------|-------------|------|--------|
| 2/13/2007 | 0.3 | Doc Review | RU: Review settlement agreement. Sign and e-mail. E-mail to Eric re: giving copy to NC AG. | 375.00 | 112.50 |
| 2/14/2007 | 1.2 | Doc Review | RU: Review signed SA. Sent to clients and Mark Bernstein at NC DOJ. Draft joint motion to govern further proceedings. E-mail same to Eric. | 375.00 | 450.00 |
| 2/18/2007 | 0.3 | Legal Writing | RU: Edit Eric's motion to stay. E-mail to him re: same. | 375.00 | 112.50 |
| 2/20/2007 | 0.1 | Doc Review | RU: Reviewed Aubrey's proposed order. | 375.00 | 37.50 |
|  | 0.1 | E-mail | RU: E-mail to Tim Ballo, Aubrey B., and Beth Perkins, assistant, re: billable hours for fees offer. | 375.00 | 37.50 |
| 3/5/2007 | 0.3 | Doc Review | RU: Edit billing statement to exercise billing discription | 375.00 | 112.50 |
| 3/8/2007 | 0.2 | Doc Review | RU: Review FR notice re: 113 (g) Email same to clients | 375.00 | 75.00 |
| 3/11/2007 | 1 | Legal Writing | RU: Draft and Send offer on fees to Defense Counsel | 375.00 | 375.00 |
| 3/13/2007 | 0.1 | E-mail | RU: E-mail from Defense Counsel saying that he got the fees offer but won't be able to look at it until early April | 375.00 | 37.50 |
| 4/11/2007 | 0.5 | E-mail | RU: E-mail to Defense Counsel re: final consent to settlement agreement and fees offer after reviewing SA and e-docket | 375.00 | 187.50 |
|  | 0.3 | Legal Writing | RU: Prepare FOIA to EPA R4 re: Part 71 application and proposed permits | 375.00 | 112.50 |
|  | 0.2 | E-mail | RU: E-mail open records acct. request to Mary Hawkins, KY DAQ | 375.00 | 75.00 |
| 4/13/2007 | 0.1 | E-mail | RU: E-mail from Defense Counsel saying he'll check with EPA on consent and fees | 375.00 | 37.50 |
| 4/18/2007 | 0.3 | Doc Review | RU: Review TVA April 2007 application to DAQ | 375.00 | 112.50 |
|  | 0.1 | T/C & Meeting | RU: T/C with Defense Counsel. | 375.00 | 37.50 |
|  | 0.2 | E-mail | RU: E-mail to clients re: New permit application | 375.00 | 75.00 |

| | **Total** |
|-|-----------|

Robert Ukeiley, P.S.C

435R Chestnut Street
Suite 1
Berea, KY 40403

# Invoice

| DATE | INVOICE # |
|---|---|
| 2/12/2008 | 199 |

| BILL TO |
|---|
|  |

| DUE DATE | PROJECT |
|---|---|
| 3/24/2007 | Paradise Deadline Suit |

| DATE | TIME | ACTION | DESCRIPTION | RATE | AMOUNT |
|---|---|---|---|---|---|
|  |  | T/C & Meeting | RU: T/C with defense counsel and Carol Homedey, EPA OGC, They want extension until June 29th to respond to credible evidence peitition. I said o.k. | 375.00 | 375.00 |
| 4/19/2007 | 0.2 | E-mail | RU: E-mails from clients to re: status of case | 375.00 | 75.00 |
| 4/23/2007 | 0.3 | E-mail | RU: Review e-mail from Defense Counsel saying SA is final and stipulation Re: moving date for response to credible evidence rule petition. Email to clients re: same | 375.00 | 112.50 |
| 5/2/2007 | 0.2 | Doc Review | RU: Reveiwed Defense Counsel signed stipulation re: extenstion to respond to petition Email to clients re: same | 375.00 | 75.00 |
| 5/11/2007 | 0.7 | E-mail | RU: Email to Eric w/ cc to Eileen McDonough, David Gunther and other DOJ attorney's re: rates | 375.00 | 262.50 |
| 6/6/2007 | 0.3 | Doc Review | RU: Review ONYX case re: mandoatory duty to issue part 71 permit. Email same to Eric | 390.00 | 117.00 |
| 6/7/2007 | 0.3 | Doc Review | RU: Reviewed Eric's counter offer. Email w/ Eric re: various issues Email to Tim re: taking offer | 390.00 | 117.00 |
| 6/11/2007 | 0.2 | E-mail | RU: Email w/ Eric re: Tim Ballo rates and hours to exclude | 390.00 | 78.00 |
| 6/16/2007 | 0.2 | E-mail | RU: Email w/ Eric re: basis for opposition to Tim's fees and timing of motion. | 390.00 | 78.00 |
| 7/4/2007 | 0.5 | Doc Review | RU: Review public notice and narrative re: KY DAQ's proposal to charge Paradise source specific SIP limit. Email to clients re: same | 390.00 | 195.00 |
|  | 0.8 | Legal Writing | RU: Draft comments of SIP revision send to clients | 390.00 | 312.00 |
|  | 0.3 | Doc Review | RU: Review EPA's response to our creditable evidence peitition. Email to clients re: same | 390.00 | 117.00 |
| 7/5/2007 | 0.2 | Doc Review | RU: Reveiwed public notice of new draft TV permit from KY DAQ. Email to clients re: same | 390.00 | 78.00 |
|  | 0.2 | E-mail | RU: E-mail to KY DAQ requesting applicaton material | 390.00 | 78.00 |

| | Total |
|---|---|
|  |  |

Robert Ukeiley, P.S.C

435R Chestnut Street
Suite 1
Berea, KY 40403

# Invoice

| DATE | INVOICE # |
|------|-----------|
| 2/12/2008 | 199 |

| BILL TO |
|---------|
|         |

| DUE DATE | PROJECT |
|----------|---------|
| 3/24/2007 | Paradise Deadline Suit |

| DATE | TIME | ACTION | DESCRIPTION | RATE | AMOUNT |
|------|------|--------|-------------|------|--------|
| | 0.1 | E-mail | RU: E-mail to Eric asking EPA's position on draft permit | 390.00 | 39.00 |
| | 0.1 | E-mail | RU: E-mails from Hillary re: SIP position on draft permit | 390.00 | 39.00 |
| 7/11/2007 | 0.1 | E-mail | RU: E-mail to Kassie asking for approval to submit comments on Paradise site specific SIP change. E-mail from Kassie giving approval. E-mail final version to clients E-mailed to KY DAQ (Cheslie) and EPA R4 (Beverly Banister) mailed same Mailed same to Leslie at KY DAQ | 390.00 | 39.00 |
| 8/23/2007 | 0.2 | E-mail | RU: Emails to Eric re: TVA Paradise's draft permit and EPA's position on it. | 390.00 | 78.00 |
| 10/2/2007 | 0.2 | E-mail | RU: Email with Ashley Wilmes re: venue arguments in fees brief. | 390.00 | 78.00 |
| 10/9/2007 | 0.1 | E-mail | RU: Email to Art Hofmeister, EPA R4, to see if EPA objected to Paradise permit | 390.00 | 39.00 |
| | 0.1 | T/C & Meeting | RU: T/C from Vera Kornylak, R4, she said R4 asked KY DAQ to fix some of the SIP revision and so asked for a 21 day extension of objection period on TV permit to allow that to happen. | 390.00 | 39.00 |
| 10/12/2007 | 0.2 | Doc Review | RU: Review R4 webpage which now says EPA's 45 days runs Oct. 25 and our petition is due Dec. 24 2007. | 390.00 | 78.00 |
| 1/21/2008 | 0.3 | E-mail | RU: Reveiw Vera Kornylak's e-mail re: EPA being satisfied with KY's New TV permit Forward to clients | 390.00 | 117.00 |
| | 1.7 | E-mail | RU: E-mail counter offer to Eric | 390.00 | 663.00 |
| | 1.6 | Legal Writing | RU: Edit motion for fees | 390.00 | 624.00 |
| 1/22/2008 | 2.8 | Legal Writing | RU: Edit motion for fees | 390.00 | 1,092.00 |
| 1/23/2008 | 3.8 | Legal Writing | RU: Edit motion for fees. Sent to University of Denver Clinic to cite check. | 390.00 | 1,482.00 |

| | Total |
|--|-------|

Robert Ukeiley, P.S.C

# Invoice

435R Chestnut Street
Suite 1
Berea, KY 40403

| DATE | INVOICE # |
| --- | --- |
| 2/12/2008 | 199 |

BILL TO

| DUE DATE | PROJECT |
| --- | --- |
| 3/24/2007 | Paradise Deadline Suit |

| DATE | TIME | ACTION | DESCRIPTION | RATE | AMOUNT |
| --- | --- | --- | --- | --- | --- |
| 1/25/2008 | 0.2 | E-mail | RU: E-mail to Eric re: fee settlement offer | 390.00 | 78.00 |
| 2/1/2008 | 0.2 | Doc Review | RU: Reviewed Ashley's affidavit. Email w/ her re: same | 390.00 | 78.00 |
| 2/8/2008 | 0.3 | Legal Writing | RU: Draft motion to dismiss Email to Eric for his non-opposition. | 390.00 | 117.00 |
| 2/11/2008 | 0.3 | Legal Writing | RU: Edit motion for fees | 390.00 | 117.00 |
|  | 0.3 | Legal Writing | RU: Draft section of fee motion on Wilmes | 390.00 | 117.00 |
|  | 0.4 | Legal Writing | RU: Draft section of fee motion on RMCAA case | 390.00 | 156.00 |
|  | 1.1 | Legal Writing | RU: Edit motion for fees | 390.00 | 429.00 |
| 6/15/2006 | 6.7 | Legal Writing | Aubrey Baldwin ("AB"): Prepare complaint. | 205.00 | 1,373.50 |
| 6/16/2006 | 0.7 | Legal Writing | AB: Prepare compliant. | 205.00 | 143.50 |
| 6/21/2006 | 1.2 | Doc Review | AB: Review complaint. | 205.00 | 246.00 |
| 7/10/2006 | 0.6 | Legal Writing | AB: Revise complaint. | 205.00 | 123.00 |
| 7/11/2006 | 2.1 | Research | AB: Research statue and regulations governing mandatory duties. | 205.00 | 430.50 |
|  | 3.4 | Legal Writing | AB: Revise complaint re: legal background. | 205.00 | 697.00 |
| 7/17/2006 | 3.3 | Legal Writing | AB: Revise complaint re: factual background. | 205.00 | 676.50 |
| 7/17/2006 | 2.2 | Research | AB: Research re: complaint, health effects, SIP call. | 205.00 | 451.00 |
| 7/18/2006 | 0.6 | Legal Writing | AB: Revise complaint for clarity. | 205.00 | 123.00 |
|  | 0.5 | Research | AB: Research status and history of KY SIP revision. | 205.00 | 102.50 |
|  | 0.3 | T/C & Meeting | AB: Meeting w/Robert Ukeiley re: causes of action. | 205.00 | 61.50 |
|  | 1.7 | Legal Writing | AB: Revise causes of action. | 205.00 | 348.50 |
|  | 1.8 | Legal Writing | AB: Edit draft complaint. | 205.00 | 369.00 |
| 7/19/2006 | 0.3 | Research | AB: History of the credible evidence SIP call. | 205.00 | 61.50 |
|  | 0.6 | Research | AB: Kentucky specific credible evidence SIP call. | 205.00 | 123.00 |
| 7/24/2006 | 0.3 | Doc Review | AB: Preparation for filing complaint, review rules, etc. Meeting w/Robert Ukeiley. | 205.00 | 61.50 |
| 7/25/2006 | 4.6 | Legal Writing | AB: Integrate Robert Ukeiley's revisions, add citations to authority. | 205.00 | 943.00 |
| 7/26/2006 | 3.4 | Legal Writing | AB: Revise complaint, edit, proofread. | 205.00 | 697.00 |

| | **Total** | |
| --- | --- | --- |

Robert Ukeiley, P.S.C

435R Chestnut Street
Suite 1
Berea, KY 40403

# Invoice

| DATE | INVOICE # |
|------|-----------|
| 2/12/2008 | 199 |

| BILL TO |
|---------|
|         |

| DUE DATE | PROJECT |
|----------|---------|
| 3/24/2007 | Paradise Deadline Suit |

| DATE | TIME | ACTION | DESCRIPTION | RATE | AMOUNT |
|------|------|--------|-------------|------|--------|
| | 1.8 | Doc Review | AB: Prepare complaint for filing, sent to client representative for filing. | 205.00 | 369.00 |
| 8/29/2006 | 1.2 | Research | AB: Withdrawal of Title V permit. | 205.00 | 246.00 |
| 8/31/2006 | 1.2 | Research | AB: Withdrawal of Title V permit. | 205.00 | 246.00 |
| 9/7/2006 | 1 | T/C & Meeting | AB: Meeting w/Robert Ukeiley re: case strategy. | 205.00 | 205.00 |
| 9/29/2006 | 5.1 | Legal Writing | AB: Case status memo. | 205.00 | 1,045.50 |
| 10/6/2006 | 0.4 | Research | AB: Venue/Jurisdiction. Meeting with Robert re: same. | 205.00 | 82.00 |
| 10/16/2006 | 6.7 | Research | AB: Response to motion to dismiss. | 205.00 | 1,373.50 |
| 10/17/2006 | 8.6 | Research | AB: 11th Circuit TVA case, pendent venue, factual back ground, response to motion to dismiss. | 205.00 | 1,763.00 |
| 10/18/2006 | 3.2 | Research | AB: Standard for transfer of venue; writing response to motion to dismiss. Meeting w/Robert Ukeiley re: same. | 205.00 | 656.00 |
| 10/19/2006 | 11.7 | Research | AB: Transfer of venue. Write response to motion to dismiss. Meeting w/Robert U. re: Part 71. | 205.00 | 2,398.50 |
| 10/20/2006 | 4.6 | Legal Writing | AB: Opposition to motion to dismiss. | 205.00 | 943.00 |
| 10/23/2006 | 9.9 | Legal Writing | AB: Opposition to motion to dismiss. | 205.00 | 2,029.50 |
| | 0.4 | Legal Writing | AB: Finalize and file opposition to motion to dismiss. | 205.00 | 82.00 |
| 11/9/2006 | 1.2 | Research | AB: Evaluating EPA's reply memorandum. | 205.00 | 246.00 |
| 12/6/2006 | 0.1 | T/C & Meeting | AB: Meeting w/Robert Ukeiley re: consent decree. | 0.00 | 0.00 |
| 2/20/2007 | 0.3 | Legal Writing | AB: Prepare proposed order. | 205.00 | 61.50 |
| | | Reimb Group | | | |
| 7/27/2006 | | | US District Court for DC filing fee | 350.00 | 350.00 |
| 7/30/2006 | | | Postage and delivery to Melissa Waage | 69.95 | 69.95 |
| 8/3/2006 | | | Postage and delivery: filing | 24.32 | 24.32 |
| 8/23/2006 | | | Postage and delivery: filing | 6.08 | 6.08 |
| 11/6/2006 | | | Printing and Reproduction | 2.72 | 2.72 |
| | | | Total Reimbursable Expenses | | 453.07 |

| **Total** | | | | | $42,574.57 |

# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**CENTER FOR BIOLOGICAL
DIVERSITY, et al.,**

       **Plaintiffs,**

       **v.**

**GALE NORTON,**

       **Defendant.**

**Civil Action No.  04-0156 (JDB)**

---

## ORDER

      Following the successful outcome of this "deadline" case under Section 4 of the

Endangered Species Act ("ESA"), and an unsuccessful attempt to resolve the issue of fees and

costs, plaintiffs have moved for an award of $38,108.88 in attorneys' fees and costs.[1]  Defendant

has opposed the motion, arguing instead that the fee award should be reduced by over 75% to

$8,726.22, which defendant maintains is at the "high end" of fee awards in Section 4 cases.  The

Court agrees that some reduction is appropriate, but rejects the bulk of defendant's objections.

      Plaintiffs prevailed on their claims that defendant violated the ESA by failing to designate

critical habitat for the Hine's emerald dragonfly, and obtained a settlement agreement requiring

defendant to designate critical habitat for the species by a date certain.  The agreement provided

plaintiffs with what effectively was full substantive relief, recognized that plaintiffs are prevailing

parties and that defendant would pay plaintiffs reasonable attorneys' fees and costs, but reserved

---

[1]  That total includes plaintiffs' "fees on fees":  that is, fees and costs that are attributable to
plaintiffs' work on the motion for fees and costs.

the amount of fees and cost.  When discussions did not resolve that issue, plaintiffs' motion followed.

Plaintiffs are entitled to reasonable attorneys' fees and costs under the settlement agreement and the law.  See 16 U.S.C. § 1540(g)(4); Ruckelshaus v. Sierra Club, 463 U.S. 680, 689, 694 (1983).  The parties agree that the appropriate fee award is to be determined under the lodestar method of multiplying the number of hours reasonably expended by a reasonable hourly rate.  See Blanchard v. Bergeron, 489 U.S. 87, 94 (1989); Nat'l Ass'n of Concerned Veterans v. Sec'y of Defense, 675 F.2d 1319, 1323 (D.C. Cir. 1982); see also Role Models America, Inc. v. Brownlee, 353 F.3d 962, 968 (D.C. Cir. 2004); Save Our Cumberland Mountains v. Hodel, 857 F.2d 1516, 1522-24 (D.C. Cir. 1988).  Fee applicants bear the burden of presenting well-documented claims justifying the reasonableness of the hourly rate claimed and the hours worked. See Role Models, 353 F.3d at 970; Covington v. District of Columbia, 57 F.3d 1101, 1105-10 (D.C. Cir. 1995); Concerned Veterans, 675 F.2d at 1323-27.  Courts must review fee applications carefully to ensure that taxpayers only reimburse prevailing parties for reasonable fees and expenses that contributed to the results achieved, see Role Models, 353 F.3d at 970; Am. Petroleum Inst. v. EPA, 72 F.3d 907, 912 (D.C. Cir. 1996), and that appropriate deductions are made for excessive or duplicative hours, see, e.g., In re Mullins, 84 F.3d 459, 467-68 (D.C. Cir. 1996); In re North, 59 F.3d 184, 189 (D.C. Cir. 1995).

The Court notes that plaintiffs have exercised billing judgment by reducing their fee application by 10% and by not seeking fees for certain tasks (e.g., the first 60-day notice). Nonetheless, the Court concludes under the legal standards referenced above that additional modest deductions are appropriate to delete certain hours, to reduce the hourly rate for one

attorney, and to increase the across-the-board percentage reduction.  The explanation, in brief, of the Court's conclusions is as follows:

1.    Although the parties appear to disagree on the number of hours expended on preparing plaintiffs' second 60-day notice, the Court concludes that the duplication of effort in the two 60-day notices, and particularly the fact that plaintiffs probably should have realized the need for a more expanded second notice <u>before</u> the complaint and first notice were filed, warrants a deduction of five hours of Mr. Plater's time.

2.    The compilation of regional listing data on other species through 16 hours of attorney time was, the Court concludes, of only marginal relevance to this action, and six hours of Mr. Plater's time on that effort will be deducted.

3.    Such inefficiencies, together with several other objections raised by defendant, warrant an additional 5% across-the-board reduction in the fee award (on top of the 10% reduction reflecting plaintiffs' sound billing judgment).  The Court's concerns include the relative simplicity and early settlement of this case; the time (12.4 hours) spent reviewing what was identified by plaintiffs' counsel as the administrative record but was apparently materials received

-3-

under FOIA; the inefficiency caused by having two separate
out-of-town counsel (although the Court is not convinced
that any greater or more specific reduction is appropriate for
this fact); and the generality (and hence lack of required
specificity) of several billing entries (although, again, no
further reduction is warranted).  An across-the-board
percentage reduction is justified when a court determines
that the total claim is unreasonable.  See Democratic Cent.
Comm. v. Washington Metro. Area Transit Comm'n, 12
F.3d 269, 272 (D.C. Cir. 1994).

4.    On the other hand, the Court concludes that no deduction on
the fee application is warranted for defendant's objections
based on the travel to and research at several dragonfly
habitats, which was a reasonable expenditure of attorney
time; the time spent drafting the complaint, which also was
reasonable; or the time spent working on the case after
defendant's offer of judgment, which appears to be largely
reasonable settlement and fee litigation time that is not
precluded by an offer of judgment pursuant to Fed.R.Civ.P.
68.[2]

---

[2] Defendant has made no effort to differentiate between fees that might be precluded and
those that clearly are not.

5.      Finally, defendants object to the $220 hourly rate claimed by
Mr. Plater.  The Court concludes that the objection is well-
taken, and that the materials submitted by plaintiffs only
support a $180 hourly rate for Mr. Plater under the 2003
Laffey matrix[3] because he had three (rather than four) years
experience during the relevant period.  The Court declines
plaintiffs' undeveloped last-minute requests to "adjust all
hours upward based on the consumer price index" and then
"consider further upward adjustments based on Mr. Plater's
expertise and the cost of living in San Francisco, CA."  Pls.'
Reply Mem. at 15.  The hourly rate for Mr. Plater will be
adjusted to $180 before the across-the-board 5% reduction
discussed above.

Accordingly, based on the entire record, the Court will award $28,850.63 in attorney's fees
and costs.  That award consists of 132.8 hours[4] for Mr. Plater at $180/hour ($23,904.00) and 18.3
hours[5] for Mr. Ukeiley at $270/hour ($4941.00), reduced by 5% to $27,402.75, plus costs of
$1447.88.

---

[3]  Both parties have relied on the Laffey matrix to determine the reasonable hourly rate.

[4]  This figure includes 131.2 hours for work performed prior to the reply to the fee petition,
plus 12.6 hours for work on the reply (both of these numbers already incorporate the initial 10%
reduction), minus the 11.0 hours excluded by this Order.

[5]  This figure includes 16.7 hours for work performed prior to the reply to the fee petition,
plus 1.6 hours for work on the reply (both of these numbers already incorporate the initial 10%
deduction).

SO ORDERED.

_____/s/ John D. Bates_____
JOHN D. BATES
United States District Judge

Dated:  ___January 26, 2005___

Copies to:

Robert Steven Ukeiley
507 Center Street
Berea, KY 40403
(859) 986-5402
Fax : (859) 986-2695
Email: rukeiley@igc.org

Brent Plater
Center for Biological Diversity
370 Grand Avenue
Suite 5
Oakland, CA 94610
(510) 663-0616
Fax : (510) 663-0272
E-mail: bplater@biologicaldiversity.org

Coby Howell
AARP Foundation Litigation
601 E Street, NW
Washington, DC 20049
(202) 305-0201
Fax : (202) 305-0275
Email: coby.howell@usdoj.gov

# EXHIBIT 4

12/11/2006 Nat'l L.J. S2, (Col. 1)

The National Law Journal
Vol. 29, No. 15
Copyright 2006 by American Lawyer Media, ALM, LLC

December 11, 2006

In Focus: Billing

FIRM-BY-FIRM SAMPLING OF **BILLING RATES** NATIONWIDE

The National Law Journal asked the respondents to its 2006 **survey** of the nation's 250 largest law firms to provide a range of hourly **billing rates** for partners and associates. The firms that supplied this information--including some firms that are not in the NLJ 250--are listed below in alphabetical order. We also asked firms to provide average and median **billing rates**; several firms provided this information as well. The number after a firm's name indicates the total number of attorneys at the firm. The city listed below the name of a firm is the location of its principal or largest office.

ABC
Adams and Reese (301)
(New Orleans)
Partners $215-$470 (average $287) (median $270)
Associates $165-$250 (average $191) (median $190)
Firmwide (average $267) (median $235)
Andrews Kurth (404)
(Houston)
Partners $380-$745
Associates $180-$400
Arent Fox (288)
(Washington)
Partners $375-$610
Associates $215-$405
Armstrong Teasdale (266)
(St. Louis)
Partners $255-$425 (average $347) (median $342)
Associates $135-$275 (average $227) (median $225)
Firmwide (average $278) (median $270)
Baker, Donelson, Bearman, Caldwell & Berkowitz (454)
(Memphis, Tenn.)
Partners $220-$500
Associates $135-$310
Ballard Spahr Andrews & Ingersoll (486)
(Philadelphia)
Partners $320-$680
Associates $190-$390
Barnes & Thornburg (421)
(Indianapolis)
Partners $245-$455 (average $333)
Associates $170-$285 (average $212)
Firmwide (average $260)
Bass, Berry & Sims (214)
(Nashville, Tenn.)
Partners $230-$495
Associates $150-$245
Bell, Boyd & Lloyd (256)
(Chicago)
Partners $310-$690
Associates $215-$300

Best Best & Krieger (196)
(Riverside, Calif.)
Partners $275-$450 (median $375)
Associates $145-$335 (average $186) (median $225)
Firmwide (average $211) (median $240)
Blackwell Sanders Peper Martin (310)
(Kansas City, Mo.)
Partners $265-$395 (average $302) (median $320)
Associates $155-$255 (average $200) (median $195)
Firmwide (average $241) (median $270)
Blank Rome (460)
(Philadelphia)
Partners $325-$735
Associates $220-$495
Bond, Schoeneck & King (160)
(Syracuse, N.Y.)
Partners $200-$425 (average $252)(median $285)
Associates $140-$305 (average $177) (median $175)
Firmwide (average $231) (median $275)
Briggs and Morgan (165)
(Minneapolis)
Partners $250-475 (average $357) (median $360)
Associates $185-$275 (average $214) (median $205)
Firmwide (average $319) (median $325)
Brinks Hofer Gilson & Lione (151)
(Chicago)
Partners $275-$625 (average $465)(median $460)
Associates $200-$390 (average $280) (median$285)
Firmwide (average $381) (median $390)
Broad and Cassell (173)
(Orlando, Fla.)
Partners $235-$425 (average $339)(median $325)
Associates $155-$295 (average $217) (median $210)
Firmwide (average $272) (median $265)
Brown Raysman Millstein Felder & Steiner (246)
(New York)
Partners $450-$740 (average $495) (median $550)
Associates $250-$400 (average $325) (median $370)
Firmwide (average $385) (median $465)
Brown Rudnick Berlack Israels (208)
(Boston)
Partners $505-$870
Associates $275-$495
Bryan Cave (763)
(St. Louis)
Partners $315-$665 (average $476)
Associates $150-$460 (average $289)
Firmwide (average $331)
Buchalter Nemer (139)
(Los Angeles)
Partners $325-$550 (average $432) (median $445)
Associates $215-$450 (average $256) (median $275)
Firmwide (average $344) (median $350)
Buchanan Ingersoll & Rooney (573)
(Pittsburgh)
Partners $210-$750
Associates $140-$375
Buckingham, Doolittle & Burroughs (171)

(Akron, Ohio)
Partners $230-$425 (average $296) (median $295)
Associates $185-$290 (average $220) (median $215)
Firmwide (average $240) (median $240)
Bullivant Houser Bailey (191)
(Portland, Ore.)
Partners $225-$450 (average $288)(median $285)
Associates $175-$300 (average $204) (median $195)
Firmwide (average $254) (median $230)
Burr & Forman (188)
(Birmingham, Ala.)
Partners $250-$400 (average $324) (median $325)
Associates $160-$315 (average $218) (median $215)
Firmwide (average $234) (median $245)
Butzel Long (217)
(Detroit)
Partners $220-$490 (average $290)
Associates $165-$270 (average $202)
Firmwide (average $243)
Carlton Fields (242)
(Tampa, Fla.)
Partners $285-$545 (average $383) (median $390)
Associates $190-$375 (average $233) (median $233)
Firmwide (average $293) (median $290)
Cooley Godward Kronish (541)
(Palo Alto, Calif.)
Partners $425-$795 (average $539)
Associates $240-$585 (average $371)
Firmwide (average $431)
Covington & Burling (645)
(Washington)
Partners $470-$760
Associates $210-$490
Cozen O'Connor (501)
(Philadelphia)
Partners $185-$750 (average $325) (median $310)
Associates $130-$495 (average $218) (median $210)
Firmwide (average $245) (median $235)
Curtis, Mallet-Prevost, Colt & Mosle (196)
(New York)
Partners $570-$700 (average $625) (median $652)
Associates $250-$510 (average $390) (median $380)
Firmwide (average $508) (median $465)
DEF
Davis Wright Tremaine (405)
(Seattle)
Partners $285-$655 (average $399.34)
(median $395)
Associates $140-$370 (average $251.72) (median $250)
Firmwide (average $350.51) (median $350)
Day, Berry & Howard (251)
(Hartford, Conn.)
Partners $335-$620
Associates $200-$440
Dickinson Wright (226)
(Detroit)
Partners $250-$520
Associates $155-$260

Dickstein Shapiro (360)
(Washington)
Partners $400-$700 (average $530) (median $535)
Associates $210-$415 (average $315) (median $340)
Firmwide (average $300) (median $300)
Dinsmore & Shohl (306)
(Cincinnati)
Partners $220-$440 (average $323) (median $320)
Associates $145-$240 (average $185) (median $180)
Firmwide (average $252) (median $233)
Dorsey & Whitney (600)
(Minneapolis)
Partners $300-$650 (average $431)
Associates $180-$430 (average $273)
Firmwide (average $360)
Duane Morris (581)
(Philadelphia)
Partners $300-$705 (average $436) (median $435)
Associates $200-$425 (average $283) (median $279)
Firmwide (average $379) (median $374)
Dykema Gossett (341)
(Detroit)
Partners $235-$580
Associates $170-$330
Eckert Seamans Cherin & Mellott (227)
(Pittsburgh)
Partners $195-$525 (average $343) (median $340)
Associates $145-$250 (average $190) (median $190)
Firmwide (average $287)
Edwards Angell Palmer & Dodge (516)
(Boston)
Partners $300-$675
Associates $150-$440
Firmwide (average $466)
Epstein Becker & Green (378)
(New York)
Partners $300-$650 (average $468.29)
Associates $160-$395 (average $270.32) (median $260)
Firmwide (average $346.34)
Fenwick & West (234)
(Mountain View, Calif.)
Partners $465-$750 (average $570) (median $575)
Associates $245-$475 (average $355) (median $395)
Firmwide (average $430) (median $450)
Fisher & Phillips (187)
(Atlanta)
Partners $300-$440
Associates $175-$320
Foley & Lardner (981)
(Milwaukee)
Partners (average $517) (median $513)
Associates (average $356) (median $360)
Firmwide $240-$810 (average $446) (median $440)
Ford & Harrison (171)
(Atlanta)
Partners $290-$445
Associates $210-$370
Fowler White Boggs Banker (227)

(Tampa, Fla.)
Partners $280-$500 (average $350) (median $335)
Associates $190-$275 (average $225) (median $220)
Firmwide (average $315) (median $315)
Fox Rothschild (381)
(Philadelphia)
Partners $265-$525
Associates $195-$335
Fredrikson & Byron (209) (Minneapolis)
Partners $250-$525
Associates $175-$275
Frost Brown Todd (376) (Cincinnati)
Partners $205-$435 (average $287) (median $280)
Associates $140-$280 (average $181) (median $180)
Firmwide (average $220) (median $240)
GHI
Gardere Wynne Sewell (282)
(Dallas)
Partners $345-$665 (average $446) (median $450)
Associates $205-$400 (average $273) (median $270)
Firmwide (average $381) (median $345)
Gardner Carton & Douglas (195)
(Chicago)
Partners $275-$650 (average $433) (median $425)
Associates $200-$350 (average $278) (median $250)
Firmwide (average $376) (median $395)
Gordon & Rees (309)
(San Francisco)
Partners $325-$450
Associates $200-$325
GrayRobinson (190)
(Orlando, Fla.)
Partners $200-$500
Associates $140-$200
Greenberg Traurig (1,667) (Miami)
Partners $270-$850 (average $460) (median $475)
Associates $160-$450 (average $289) (median $290)
Firmwide (average $381) (median $395)
Harris Beach (182) (Rochester, N.Y.)
Partners $250-$425
Associates $140-$275
Hiscock & Barclay (160) (Syracuse, N.Y.)
Partners $220-$375 (average $269) (median $250)
Associates $160-$250 (average $183) (median $180)
Firmwide (average $243) (median $250)
Hodgson Russ (229)
(Buffalo, N.Y.)
Partners $220-$625 (average $310) (median $315)
Associates $150-$300 (average $201) (median $195)
Firmwide (average $272) (median $275)
Hogan & Hartson (1,043)
(Washington)
Partners $300-$775 (average $550) (median $550)
Associates $150-$485 (average $350) (median $350)
Firmwide (average $450) (median $475)
Holland & Knight (1,102)
(New York)
Partners $250-$710 (average $396) (median $390)

Associates $165-$400 (average $232) (median $225)
Firmwide (average $344) (median $350)
Holme Roberts & Owen (206)
(Denver)
Partners $260-$575
Associates $185-$390
Howard Rice Nemerovski Canady, Falk & Rabkin (102)
(San Francisco)
Partners $440-$750
Associates $250-$420
Husch & Eppenberger (331)
(St. Louis)
Partners $200-$410 (average $285.35) (median $275)
Associates $130-$250 (average $170.27) (median $165)
Firmwide (average $235.18) (median $230)
Ice Miller (249)
(Indianapolis)
Partners $275-$425 (average $352) (median $345)
Associates $185-$310 (average $218) (median $220)
Firmwide (average $293) (median $220)
JKL
Jackson Lewis (375)
(White Plains, N.Y.)
Partners $290-$525
Associates $190-$395
Jenkens & Gilchrist (268) (Dallas)
Partners $340-$610 (average $420)
Associates $220-$390 (average $270)
Jenner & Block (467) (Chicago)
Partners $410-$800 (average $513) (median $495)
Associates $230-$395 (average $292) (median $285)
Jones, Walker, Waechter, Poitevent, Carrère & Denègre (208) (New Orleans)
Partners $200-$425
Associates $135-$210
Kelley Drye & Warren (375) (New York)
Partners $375-$750
Associates $230-$475
Knobbe Martens, Olson & Bear (193)
(Irvine, Calif.)
Partners $335-$625
Associates $205-$340
Lane Powell (167) (Seattle)
Partners $275-$490 (average $328) (median $330)
Associates $205-$295 (average $236) (median $237)
Firmwide (average $273) (median $270)
Lathrop & Gage (264)
(Kansas City, Mo.)
Partners $220-$375
Associates $140-$220
Lewis, Rice & Fingersh (165)
(St. Louis)
Partners $225-$410
Associates $135-$290
Littler Mendelson (527)
(San Francisco)
Partners $205-$605
Associates $160-$400
Locke Liddell & Sapp (370)

(Houston)
Partners $360-$850 (average $471) (median $460)
Associates $190-$390 (average $244) (median $260)
Firmwide (average $373) (median $410)
Loeb & Loeb (240)
(Los Angeles)
Partners $425-$825
Associates $215-$475
Lord, Bissell & Brook (328)
(Chicago)
Partners $305-$665 (average $448) (median $450)
Associates $200-$375 (average $272) (median $260)
Firmwide (average $368) (median $355)
Lowenstein Sandler (250)
(Roseland, N.J.)
Partners $335-$645
Associates $185-$375
Luce, Forward, Hamilton & Scripps (178)
(San Diego)
Partners $320-$725 (average $440)
Associates $205-$425 (average $265)
MNO
Manatt, Phelps & Phillips (299)
(Los Angeles)
Partners $460-$750 (average $574) (median $560)
Associates $250-$460 (average $359) (median $360)
Firmwide (average $490) (median $520)
Marshall, Dennehey, Warner, Coleman & Goggin (368)
(Philadelphia)
Partners $145-$350
Associates $130-$275
McAndrews, Held & Malloy (89)
(Chicago)
Partners $260-$600
Associates $195-$240
McCarter & English (407)
(Newark, N.J.)
Partners $310-$625
Associates $190-$330
McElroy, Deutsch, Mulvaney & Carpenter (230)
(Morristown, N.J.)
Partners $225-$450 (average $250) (median $235)
Associates $135-$295 (average $180) (median $165)
Firmwide (average $195) (median $200)
McKee Nelson (172)
(Washington)
Partners $595-$875 (average $725) (median $720)
Associates $355-$575 (average $436) (median $430)
McKenna Long & Aldridge (400)
(Atlanta)
Partners $330-$700
Associates $175-$410
Michael Best & Friedrich (255)
(Milwaukee)
Partners $245-$530 (average $341) (median $335)
Associates $175-$325 (average $225) (median $225)
Firmwide (average $305) (median $300)
Miles & Stockbridge (210)

(Baltimore)
Partners $300-$475
Associates $200-$375
Miller, Canfield, Paddock and Stone (355)
(Detroit)
Partners $245-$540 (average $398) (median $405)
Associates $150-$300 (average $215) (median $210)
Firmwide (average $305) (median $310)
Miller & Martin (175)
(Chattanooga, Tenn.)
Partners $210-$430 (average $313) (median $320)
Associates $140-$280 (average $185) (median $180)
Firmwide (average $281) (median $300)
Montgomery, McCracken, Walker & Rhoads (133)
(Philadelphia)
Partners $300-$550 (average $402)
Associates $195-$315 (average $248)
Firmwide (average $338)
Morgan, Lewis & Bockius (1,315)
(Philadelphia)
Partners $375-$800
Associates $200-$550
Morris, Manning & Martin (174)
(Atlanta)
Partners $320-$530 (average $412) (median $403)
Associates $170-$390 (average $246) (median $290)
Firmwide (average $322) (median $350)
Neal, Gerber & Eisenberg (170)
(Chicago)
Partners $350-$695 (average $463) (median $450)
Associates $230-$400 (average $300) (median $300)
Firmwide (average $413) (median $400)
Nelson Mullins Riley & Scarborough (379)
(Columbia, S.C.)
Partners $215-$600
Associates $175-$300
Ogletree, Deakins, Nash, Smoak & Stewart (331)
(Greenville, S.C.)
Partners $250-$550 (average $328)
Associates $165-$330 (average $234)
Firmwide (average $289)
PQR
Patton Boggs (431)
(Washington)
Partners $295-$850 (average $480) (median $570)
Associates $170-$405 (average $305) (median $325)
Firmwide (average $403) (median $510)
Pepper Hamilton (445)
(Philadelphia)
Partners $305-$695
Associates $190-$385
Perkins Coie (576)
(Seattle)
Partners $175-$650
Associates $130-$480
Phelps Dunbar (260)
(New Orleans)
Partners $175-$400 (average $224) (median $323)

Associates $125-$190 (average $165) (median $158)
Firmwide (average $191) (median $263)
Phillips Lytle (173)
(Buffalo, N.Y.)
Partners $225-$410 (average $298) (median $290)
Associates $130-$285 (average $197) (median $185)
Firmwide (average $251) (median $260)
Pitney Hardin (170)
(Florham Park, N.J.)
Partners $365-$625 (average $447) (median $445)
Associates $210-$360 (average $269) (median $270)
Firmwide (average $353) (median $355)
Polsinelli Shalton Welte Suelthaus (276)
(Kansas City, Mo.)
Partners $225-$575
Associates $160-$225
Powell Goldstein (282)
(Atlanta)
Partners $300-$575 (average $435.10) (median $435)
Associates $150-$360 (average $254.44) (median $245)
Firmwide (average $357.88) (median $360)
Preston Gates & Ellis (419)
(Seattle)
Partners $190-$635 (average $399.41) (median $395)
Associates $100-$385 (average $236.39) (median $230)
Firmwide (average $329) (median $325)
Quarles & Brady (442)
(Milwaukee)
Partners $240-$550 (average $360) (median $310)
Associates $185-$310 (average $228) (median $225)
Firmwide (average $306) (median $285)
Reed Smith (1,038)
(Pittsburgh)
Partners $305-$725 (average $492) (median $480)
Associates $170-$630 (average $309) (median $295)
Firmwide (average $322) (median $310)
Robinson & Cole (217)
(Hartford, Conn.)
Partners $270-$550 (average $400) (median $400)
Associates $175-$400 (average $235) (median $240)
Firmwide (average $316) (median $320)
Roetzel & Andress (208)
(Akron, Ohio)
Partners $200-$425 (average $255) (median $275)
Associates $150-$275 (average $180) (median $190)
Firmwide (average $225) (median $235)
Rutan & Tucker (140)
(Costa Mesa, Calif.)
Partners $310-$515
Associates $200-$335
STU
Saul Ewing (238)
(Philadelphia)
Partners $290-$700 (average $402) (median $395)
Associates $185-$440 (average $258) (median $235)
Firmwide (average $336) (median $345)
Schnader Harrison Segal & Lewis (174)
(Philadelphia)

Partners $305-$650
Associates $155-$295
Schulte Roth & Zabel (449)
(New York)
Partners $580-$800 (average $672) (median $675)
Associates $225-$550 (average $410) (median $393)
Seward & Kissell (142)
(New York)
Partners $460-$695 (average $589) (median $590)
Associates $190-$460 (average $300) (median $290)
Sheppard, Mullin, Richter & Hampton (424)
(Los Angeles)
Partners $415-$650 (average $504)(median $495)
Associates 250-410 (average $342) (median $330)
Firmwide (average $419) (median $420)
Shook, Hardy & Bacon (476)
(Kansas City, Mo.)
Partners $240-$720 (average $374) (median $358)
Associates $190-$405 (average $238) (median $225)
Firmwide (average $291) (median $250)
Shughart Thomson & Kilroy (170)
(Kansas City, Mo.)
Partners $210-$410
Associates $165-$225
Shumaker, Loop & Kendrick (162)
(Toledo, Ohio)
Partners $185-$450 (average $290) (median $290)
Associates $165-$345 (average $205) (median $200)
Firmwide (average $270)
Sills Cummis Epstein & Gross (180)
(Newark, N.J.)
Partners $300-$595
Associates $185-$360
Smith, Gambrell & Russell (191)
(Atlanta)
Partners $275-$550
Associates $150-$330
Snell & Wilmer (448)
(Phoenix)
Partners $265-$625 (average $356)
Associates $160-$360 (average $205)
Firmwide (average $277)
Steptoe & Johnson PLLC (168)
(Clarksburg, W.Va.)
Partners $220-$300
Associates $165-220
Stinson Morrison Hecker (313)
(Kansas City, Mo.)
Partners $230-$495 (average $310) (median $310)
Associates $155-$230 (average $185) (median $180)
Firmwide (average $274) (median $280)
Stoel Rives (345)
(Portland, Ore.)
Partners $270-$475 (average $361) (median $360)
Associates $160-$400 (average $242) (median $230)
Firmwide (average $309) (median $320)
Strasburger & Price (182)
(Dallas)

Partners $295-$525
Associates $195-$310
Sullivan & Worcester (192)
(Boston)
Partners $400-$650
Associates $220-$450
Sutherland Asbill & Brennan (477)
(Atlanta)
Partners $350-$845 (average $477) (median $475)
Associates $200-$530 (average $265) (median $265)
Firmwide (average $373) (median $375)
Thacher Proffitt & Wood (313)
(New York)
Partners $525-$775 (average $603) (median $575)
Associates $265-$485 (average $372) (median $355)
Firmwide (average $430) (median $420)
Thompson Coburn (279)
(St. Louis)
Partners $255-$525 (average $346) (median $345)
Associates $150-$345 (average $208) (median $215)
Firmwide (average $252) (median $255)
Thompson & Knight (388)
(Dallas)
Partners $330-$695 (average $428) (median $450)
Associates $190-$330 (average $265) (median $260)
Firmwide (average $360) (median $380)
Ulmer & Berne (179)
(Cleveland)
Partners $230-$430 (average $303)
Associates $150-$280 (average $202)
Firmwide (average $250)
VW
Vedder, Price, Kaufman & Kammholz (233)
(Chicago)
Partners $315-$560 (average $406) (median $400)
Associates $190-$410 (average $258) (median $255)
Firmwide (average $339) (median $340)
Whiteford, Taylor & Preston (155)
(Baltimore)
Partners $330-$480 (average $401) (median $400)
Associates $295-$345 (average $278) (median $295)
Firmwide (average $364) (median $370)
Wiggin & Dana (144)
(New Haven, Conn.)
Partners $276-$510
Associates $185-$355
Wiley Rein & Fielding (268)
(Washington)
Partners $375-$700 (average $475) (median $465)
Associates $225-$395 (average $300) (median $300)
Firmwide (average $395) (median $395)
Williams Mullen (244)
(Richmond, Va.)
Partners $225-$550
Associates $160-$290
Winstead Sechrest & Minick (286)
(Dallas)
Partners $325-$595

Associates $195-$370
Winston & Strawn (879)
(Chicago)
Partners $365-$800 (average $513.17) (median $510)
Associates $190-$605 (average $328.57) (median $325)
Firmwide (average $357.65) (median $360)
Womble Carlyle Sandridge & Rice (520)
(Winston-Salem, N.C.)
Partners $250-$550 (average $370) (median $400)
Associates $180-$340 (average $254) (median $250)
Firmwide (average $350) (median $350)
Wyatt, Tarrant & Combs (224)
(Louisville, Ky.)
Partners $225-$400 (average $322) (median $320)
Associates $170-$275 (average $207) (median $190)
Firmwide (average $285) (median $290)
12/11/2006 NLJ S2, (Col. 1)
END OF DOCUMENT

Copyright (C) 2007 The New York Law Pub. Co.