IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ )<br>CENTER FOR BIOLOGICAL )<br>DIVERSITY, et al., )<br> )<br>Plaintiffs, )<br> )<br>v. )<br> )<br>STEPHEN L. JOHNSON, et al., )<br> )<br>Defendants. )<br>_____) | Civ. Action No. 06-CV-1350 (GK) |

## EPA'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES

### INTRODUCTION

Plaintiffs Center for Biological Diversity, Preston Forsythe, and Hilary Lambert, filed this action against Defendants Stephen L. Johnson, Administrator of the United States Environmental Protection Agency and the United States Environmental Protection Agency (collectively "EPA"). Plaintiffs brought claims under the citizen suit provision of the Clean Air Act, 42 U.S.C. § 7604, related to EPA's review of a Title V permit issued by Kentucky to a coal-fired power plant operated by the Tennessee Valley Authority in Muhlenberg County, Kentucky ("the Paradise Plant").

After the Complaint was filed, EPA filed a motion to dismiss or transfer to the Western District of Kentucky based on improper venue. While Defendants' venue motion was still pending, the parties entered into a settlement agreement. The case was held in abeyance pending satisfaction of the settlement agreement, and Plaintiffs dismissed the case in February 2008, without prejudice to Plaintiffs right to move for attorneys' fees and costs. Thus, the only remaining issue for the Court to resolve is the amount of attorneys' fees to be awarded to

Plaintiffs consistent with the CAA and relevant case law.

Plaintiffs have requested an award of $49,086.07 in attorneys' fees and costs. EPA does not contest entitlement to fees and costs, but contests the amount requested as excessive. Most significantly, Plaintiffs' attorneys should not receive compensation based on market rates for the District of Columbia. First, District of Columbia rates should not be applied because the District of Columbia is not a proper venue pursuant to the applicable Clean Air Act venue provision, 42 U.S.C. § 7604. *Cf. Polk v. New York State Dep't of Correctional Services*, 722 F.2d 23, 25 (2d Cir. 1983) (holding that if a suit is not maintainable in the district of filing because of improper venue, the rates prevailing in the proper forum should normally apply; "otherwise, counsel has an incentive to file in a high-rate district in the hope of obtaining a high fee, even though the case must be litigated elsewhere"). Second, even if this were a proper venue, District of Columbia market rates should still not be applied under the principles established by the D.C. Circuit in *Davis County Solid Waste Management v. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999) (establishing an exception to the forum rule where the bulk of the work is done outside the jurisdiction of the court and where there is a very significant difference in compensation favoring D.C.). Plaintiffs' counsel, Mr. Robert Ukeiley, is located in the Eastern District of Kentucky and none of the work performed in this case was performed in the District of Columbia. Rates in the Eastern District of Kentucky are substantially lower than District of Columbia rates. Accordingly, under *Davis County,* Kentucky rates should be applied to avoid a windfall.

The instant motion marks the third contested fee dispute to be decided this year in this Court involving Mr. Ukeiley and the United States. In the previous two cases, this Court has issued two inconsistent decisions involving the application of *Davis County* to Mr. Ukeiley's firm. *See Rocky Mountain Clean Air Action v. Johnson* ("*Rocky Mountain*"), case no. 06-1092,

slip op. at 7 (D.D.C. Jan. 28, 2008) (J. Robertson) (attached hereto as Exhibit 1) (applying *Davis County* exception and awarding Mr. Ukeiley an hourly rate of $225); *MacClarence v. Johnson*, Case No. 07-755 (M.J. Facciola) (D.D.C. March 17, 2008) (attached hereto as Exhibit 2) (rejecting application of *Davis County* exception and awarding Mr. Ukeiley an hourly rate of $375).  As discussed below, the Court in *Rocky Mountain* correctly applied the exception to the forum rule set forth in *Davis County*.

Beyond the issue of the appropriate hourly rate, Plaintiffs' fee request is excessive because it includes substantial unnecessary time spent opposing EPA's motion to transfer to a proper venue.  Plaintiffs' opposition to transfer of this case to a proper venue did not advance Plaintiffs' interests and resulted in needless litigation.  Finally, because all of the Government's objections to Plaintiffs' fee request are well-founded, Plaintiffs should not be compensated for unnecessary time incurred preparing a 45-page memorandum in support of their request for fees. As set forth in section IV below, with appropriate adjustments, Plaintiffs should be awarded $15,016.07 in fees and costs.

## BACKGROUND

### I.    STATUTORY BACKGROUND

#### A.    The Clean Air Act Citizen Suit Provision

The Clean Air Act, 42 U.S.C. §§ 7401-7671q, enacted in 1970 and extensively amended in 1977 and 1990, is intended to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare."  42 U.S.C. § 7401(b)(1).  The Clean Air Act establishes a comprehensive and extraordinarily detailed program for control of air pollution through a system of shared federal and state responsibility.

The Clean Air Act contains a citizen suit provision pursuant to which a person may bring

an action against the EPA Administrator in district court "where there is alleged a failure of the Administrator to perform any act or duty under [the Clean Air Act] which is not discretionary with the Administrator."  42 U.S.C. § 7604(a)(2).  In addition, under this citizen suit provision, a person may bring an action against the EPA Administrator to compel performance of any discretionary duty under the Act which is "unreasonably delayed."  42 U.S.C. § 7604(a).  However, "an action to compel agency action referred to in [42 U.S.C. § 7607(b)] which is unreasonably delayed may only be filed in a United States District Court within the circuit in which such action would be reviewable under [42 U.S.C. § 7607(b)]." *Id.*  Section 307 of the Act in turn provides in relevant part that a petition for review of  "any . . . final action of the Administrator [under the Act] . . . *which is locally or regionally applicable* may be filed only in the United States Court of Appeals for the appropriate circuit."  42 U.S.C. § 7607(b) (emphasis added).  Thus, a lawsuit seeking to compel agency action that is locally or regionally applicable and that is allegedly unreasonably delayed may be filed only in a district court within the appropriate regional judicial circuit.

## B.    The Clean Air Act Title V Program

The Clean Air Act directs the Administrator to promulgate regulations establishing the minimum requirements for operating permit programs to be administered by states and other permitting authorities pursuant to title V of the Clean Air Act ("Title V").  42 U.S.C. § 7661a(b).  The regulations establishing such requirements are set forth in 40 C.F.R. pt. 70 ("Part 70").  The Clean Air Act calls upon each state to develop and submit to the Administrator an operating permit program intended to meet the requirements of Title V and Part 70.  42 U.S.C. § 7661a(d)(1).  The Commonwealth of Kentucky has received full approval of its operating permit program from EPA.  66 Fed. Reg. 54,953 (Oct. 31, 2001).  The Kentucky Division of Air

Quality ("KDAQ") is the permitting authority in the Commonwealth of Kentucky.

Under Title V, all major stationary sources of air pollution and certain other sources are required to have Title V operating permits which, among other things, include enforceable emission limitations and other conditions necessary to assure compliance with applicable requirements of the Clean Air Act.  42 U.S.C. §§ 7661a(a), 7661c(a).  Title V and Part 70 prescribe requirements for the processing of permit applications and the issuance of permits.  42 U.S.C. § 7661d(a) and 40 C.F.R. § 70.8(a) require that state permitting authorities submit each proposed permit to the Administrator of EPA for review.

Upon receipt of a proposed permit, the Administrator has 45 days to object to final issuance of the permit if he determines the permit does not comply with the requirements of Part 70 and applicable Clean Air Act requirements.  42 U.S.C. § 7661d(b)(1); 40 C.F.R. § 70.8(c) (providing for an objection within 45 days of the Administrator's receipt of the proposed permit and all necessary supporting information).  If the Administrator does not object to a permit during its 45-day review period, then any person may petition the Administrator, within 60 days of the expiration of the 45-day review period, to object to the permit.  *See* 42 U.S.C. § 7661d(b)(2); 40 C.F.R. § 70.8(d).  The Administrator must grant or deny such petition within 60 days after the petition has been filed.  42 U.S.C. § 7661d(b)(2).

Upon receipt of an objection by the Administrator, a state permitting authority may not issue the permit unless it is revised to meet the Administrator's objection and resubmitted to the Administrator for approval.  CAA§ 505(b)(3), 42 U.S.C. § 7661d(b)(3).  If the state permitting authority fails, within 90 days after EPA objection, to submit a permit revised to meet the objection, the Administrator must himself issue or deny the permit.  CAA § 505(c), 42 U.S.C. § 7661d(c).

## II.    THIS LAWSUIT

### A.    Factual Background and Plaintiffs' Complaint

On January 7, 2005, Kentucky proposed a Clean Air Act Title V Operating Permit for the Paradise Plant.  Pursuant to its authority under section 505(b) of the Clean Air Act, 42 U.S.C. § 7661d(b), on February 18, 2005, EPA formally objected to issuance of Kentucky's proposed Title V permit.  Subsequently, on April 21, 2005, Plaintiffs filed a Clean Air Act section 505(b) administrative petition with EPA requesting that EPA object to the permit on largely different grounds than those on which the Administrator based his objection.  Plaintiffs' administrative petition also included a separate request for EPA to promulgate a rule to require Kentucky to amend its State Implementation Plan[1] to incorporate the Credible Evidence Rule.[2]

Plaintiffs filed the instant suit on July 31, 2006.  Plaintiffs brought four claims for relief under the Clean Air Act citizen suit provision of the Clean Air Act, 42 U.S.C. § 7604(a).  First, Plaintiffs brought a claim contending that EPA had failed to comply with an alleged nondiscretionary duty under Clean Air Act section 505(b)(2), 42 U.S.C. § 7661d(b)(2), to respond to Plaintiffs' administrative petition for EPA to object to an operating permit for the Paradise Plant.  Complaint ¶¶ 64-68.  Second, Plaintiffs brought a claim contending that EPA

---

[1] The States have primary responsibility, subject to EPA oversight, for ensuring that ambient air meets national ambient air quality standards ("NAAQS").  42 U.S.C. § 7407(a).  For each applicable pollutant, States must draft State Implementation Plans ("SIPs"), which are subject to EPA approval, specifying emission limitations applicable to pollution sources and other measures necessary to provide for "implementation, maintenance, and enforcement" of the relevant NAAQS.  *Id.* § 7410(a).

[2] In 1997 EPA promulgated "the Credible Evidence Rule."  62 Fed. Reg. 8314 (Feb. 24, 1997).  This rule amended EPA regulations implementing the Clean Air Act at 40 C.F.R. Parts 51, 52, 60 and 61, to clarify that nothing in those regulations precludes the use of any credible evidence or information to show compliance or noncompliance by sources of air pollution with applicable emission limitations and standards.

had failed to comply with an alleged nondiscretionary duty under Clean Air Act section

505(b)(3), 42 U.S.C. § 7661d(b)(3), to "modify, terminate or revoke" the Title V Operating

Permit for the Paradise Plant.  *Id.* ¶¶ 69-74.  Third, Plaintiffs brought a claim alleging, in the

alternative, that EPA had unreasonably delayed performing the alleged duty under section

505(b)(3) to "modify, terminate, or revoke" the Title V Operating Permit.  *Id.* ¶¶ 75-83.  Fourth,

Plaintiffs brought a claim alleging that EPA had unreasonably delayed responding to Plaintiffs'

petition for EPA to promulgate a rule requiring Kentucky to amend its State Implementation Plan

to explicitly incorporate the credible evidence rule.  *Id.* ¶¶ 84-92.

 **B**  **EPA's Venue Motion**

 On October 10, 2006, EPA filed a motion to dismiss or transfer based on improper venue.

*See* Docket No. 9.  EPA contended that pursuant to the applicable Clean Air Act venue

provision, 42 U.S.C. § 7604(a), Plaintiffs unreasonable delay claims could only be filed in a

district court within the Sixth Circuit.  Because the Paradise Plant that was the principal focus of

Plaintiffs' claims is located within the Western District of Kentucky, EPA argued that transfer to

that judicial district would be most appropriate should the Court elect to exercise its discretion to

transfer instead of dismiss.

 **C.**  **The Resolution of Plaintiffs' Claims**

 Plaintiffs' first cause of action (contending that EPA had failed to comply with an alleged

nondiscretionary duty under Clean Air Act section 505(b)(2), 42 U.S.C. § 7661d(b)(2), to

respond to Plaintiffs' administrative petition for EPA to object to Kentucky's proposed operating

permit for the Paradise Plant) became moot when Kentucky took action on August 18, 2006 to

withdraw its proposed permit for the Paradise Plant.[3/]  The parties entered into a settlement

agreement in February 2007 resolving Plaintiffs remaining causes of action.  *See* Plfs' Mem. at

17-18 (describing settlement agreement).  At the time of the settlement agreement, EPA's venue

motion was still pending.

## III.    FEE AWARDS UNDER CAA SECTION 304(d)

CAA section 304(d), 42 U.S.C. § 7604(d), provides that "[t]he court, in issuing any final

order in any action brought pursuant to subsection (a) of this section, may award costs of

litigation (including reasonable attorney and expert witness fees) to any party, whenever the court

determines such award is appropriate."  In *Pennsylvania v. Delaware Valley Citizens' Council*

*for Clean Air*,  483 U.S. 711, 714 (1987) ("*Delaware Valley II*"), the Supreme Court recognized

that the size of an award under this provision is to be determined by the district courts in the

exercise of their equitable discretion.  *See Hensley v. Eckerhart*,  461 U.S. 424, 433 (1983) ("It

remains for the district court to determine what fee is 'reasonable.'").

The Supreme Court has also explained that Congress' goal in enacting section 304(d) was

the same as the goal of 28 U.S.C. § 1988, which authorizes fee awards in civil rights cases:  to

promote citizen enforcement of important federal policies.  *Pennsylvania v. Delaware Valley*

*Citizens' Council for Clean Air*, 478 U.S. 546, 559 (1986) ("*Delaware Valley I*").  The Supreme

Court cautioned, however, that

> [t]hese statutes were not designed as a form of economic relief to improve the
> financial lot of attorneys, nor were they intended to replicate exactly the fee an
> attorney could earn through a private fee arrangement with his client.  Instead, the
> aim of such statutes was to enable private parties to obtain legal help in seeking
> redress for injuries resulting from the actual or threatened violation of specific

---

[3/]  Following Kentucky's withdrawal of the proposed permit, EPA took action on October 20,
2006, denying Plaintiffs' petition requesting that EPA object to the proposed permit as moot.

federal laws.  Hence, if plaintiffs . . . find it possible to engage a lawyer based on the statutory assurance that he will be paid a 'reasonable fee,' the purpose behind the fee-shifting statute has been satisfied.

*Id*. at 565 (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).

In *Blum*, the Supreme Court determined that fees should be based on the "prevailing market rates in the relevant community."  465 U.S. at 895.  The Supreme Court has adopted this same standard to determine rates in CAA cases.  *Delaware Valley I*, 478 U.S. at 559.  The Supreme Court, however, has not defined "the relevant community."  *See Davis County*, 169 F.3d at 757-58 (noting that § 7607(f) of the Clean Air Act does not specify whether to use "the situs of the law firm or the situs of the legal proceeding" to set hourly rates).  In most cases, federal courts typically set attorney fee awards according to the market rates in the litigation forum, a practice informally known as the "forum rule."  *Donnell v. United States*, 682 F.2d 240, 251–52 (D.C. Cir. 1982).[4]

In *Davis County*, the D.C. Circuit recognized an exception to the forum rule, applicable where "the bulk of the work is done outside the jurisdiction of the court *and* where there is a *very significant* difference in compensation favoring D.C."  169 F.3d at 758.  The Court determined that the forum rule produces just awards for most attorneys, "except those few who practice in far less expensive legal markets and perform the bulk of their work on the case at home in those markets."  *Id.* at 759.  Thus, the presumption in favor of awarding forum rates does not apply when "the work done [in the forum] is minimal and the difference in rates [is] substantial."  *Id*.

---

[4] *Donnell* recognized two widely-recognized exceptions to the forum rule.  Courts may award attorney fees set according to a lawyer's "home town" rates rather than the forum's rates: (1) where a party demonstrates a need for an out-of-town attorney's special expertise, or (2) where a party shows that local counsel were unwilling to take the case.  *Id.* at 252.  These exceptions depend on a "compelling" showing as to why the services performed by the out-of-town attorney were "unavailable within the court's jurisdiction."  *Id*.

The Court concluded that this exception to the forum rule would avoid windfalls, while still ensuring that the plaintiffs would be able to find appropriate counsel. *Id*. at 760. The Court ruled that petitioner would not be awarded fees based on D.C. rates for Utah counsel, whose market billing rates were substantially lower, where the work was largely performed in Utah. *See also Palmer v. Rice*, No. Civ. A. 76-1439 HHK/JMF, 2005 WL 1662130, at * 5,7, 20 (D.D.C. July 11, 2005) (Massachusetts counsel would be limited to home forum billing rate of $140, rather than claimed D.C. rate of $370, where most of her time on case was spent in Massachusetts).[5]

Plaintiffs bear the burden of showing that their proposed rates are appropriate. *See Hensley v. Eckerhart*, 461 U.S. at 437 ("the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates"); *In re North (Bush Fee Application)*, 59 F.3d 184, 189 (D.C. Cir. 1995) (petitioners bear the burden of demonstrating the reasonableness of each element of their fee request); *Adolph Coors Co. v. Truck Ins. Exchange*, 383 F. Supp. 2d 93, 95 (D.D.C. 2005) ("'While the [c]ourt is empowered to exercise its discretion in determining the fee amount, the plaintiff still bears the burden of establishing all elements of the requested fee award, including entitlement to an award,

---

[5] The Court of Federal Claims has also adopted the rule of *Davis County*:

> The applicable market rate is the community where the attorney maintains an office and practices law. As the Court emphasized during oral argument, a Cheyenne, Wyoming attorney would receive a significant windfall if compensated at Washington, D.C. hourly rates. In Cheyenne, a practicing lawyer does not have anywhere near the operational costs, such as office space, clerical support, and associate lawyers, as in Washington, D.C. The Court cannot justify the payment of $574 to $598 per hour to a Cheyenne lawyer who normally charges $200 per hour.

*Avera v. Secretary of HHS,* 75 Fed. Cl. 400, 405 (Fed. Cl. 2007) (citations omitted), *aff'd*, 515 F.3d 1343 (Fed. Cir. 2008).

documentation of appropriate hours, and justifications of the reasonableness of the billing.'")
(citation omitted).

Finally, judicial review of any fee claim against the government must be consistent with
the principles summarized in *American Petroleum Institute v. EPA*, 72 F.3d 907 (D.C. Cir.
1996).  "[I]n evaluating the reasonableness of all the elements of billing, items of expense or fees
that may not be 'unreasonable between a first class law firm and a solvent client, are not [always]
supported by indicia of reasonableness sufficient to allow us justly to tax the same against the
United States.'").  *Id*. at 912 (citation omitted).  Thus, the Court must carefully scrutinize such
claims for reasonableness.

## ARGUMENT

## I.    PLAINTIFFS' PROPOSED HOURLY RATES ARE EXCESSIVE

Plaintiffs claim that they are entitled to recover fees based on District of Columbia
market rates as set forth in the update to the "*Laffey* Matrix" prepared by the United States
Attorney's Office.[6/]  *See* Plfs. Mem. at 20.  For Mr. Ukeiley, the rates claimed are $280 for time
between June 1, 2004 and June 1, 2005, $290 per hour for time between June 1, 2005 and June 1,
2006, $375 per hour for time between June 1, 2006 and June 1, 2007, and $390 per hour for time
after that date.  *See id*. at 45.  Plaintiffs also seek $245 per hour for time spent by Ashley Wilmes,
an attorney with five years experience, $205 per hour for the services of Aubrey Baldwin, an
attorney with one year of experience, and $115 per hour for time spent by Tim Ballo, a law clerk.

---

[6/] The *Laffey* Matrix was originally based on 1981-1982 D.C. market rates as recognized by the
District Court in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in
part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984).  The *Laffey* Matrix has been
updated regularly by the U.S. Attorney's Office for the District of Columbia so as to reflect
changes in the cost of living for the D.C. metropolitan-area as measured by the Consumer Price
Index.  *Rocky Mountain*, slip op. at 5.

*Id*.

Plaintiffs' proposed hourly rates are excessive.  First, the District of Columbia is not the correct market for purposes of determining legal rates because this is not a proper venue pursuant to the applicable Clean Air Act venue provision, 42 U.S.C. § 7604.  Second, even if this were a proper venue, District of Columbia market rates should not be applied under the principles established by the D.C. Circuit in *Davis County*.  Plaintiffs lead counsel resides in the Eastern District of Kentucky and no work in this matter was performed in the District of Columbia.  Rates in the Eastern District of Kentucky are substantially lower than District of Columbia rates, reflecting the fact that the cost of living is substantially lower in Kentucky than in the District of Columbia.  Consequently, Kentucky rates should be applied to avoid a windfall.

### A.    The District of Columbia is Not the Correct Market for Purposes of Determining Attorney Rates Because This is an Improper Venue

A plaintiff must establish venue for each cause of action.  *Modaressi v. Vedadi*, 441 F. Supp. 2d 51, 53 (D.D.C. 2006).  In this suit, two of Plaintiffs' four claims sought to compel EPA action allegedly unreasonably delayed concerning a coal-fired power plant in Muhlenberg, Kentucky and concerning EPA's oversight of the Commonwealth of Kentucky's air emission regulatory program.  Pursuant to the plain language of the applicable Clean Air Act venue provision, 42 U.S.C. § 7604, these unreasonable delay claims could be filed and pursued only in a district court within the Sixth Circuit.  Accordingly, after the Complaint was filed, EPA moved to dismiss, or in the alternative, to transfer Plaintiffs' Complaint to the Western District of Kentucky, based on improper venue.  *See* EPA Mem. in Supp. of Mot. to Dismiss or Transfer (Docket No. 9); EPA Reply in Supp. of Mot. to Dismiss or Transfer (Docket No. 13).  The case was resolved through a settlement agreement while EPA's venue motion was still pending.

12

If a suit is not maintainable in the district of filing, the proper forum for purposes of fees and application of the "forum rule" should be deemed the district in which the case should have been filed, not the improper venue in which the case was filed. *Cf. Polk v. New York State Dep't of Correctional Services*, 722 F.2d at 25 (holding that if a suit is not maintainable in the district of filing because of improper venue, the rates prevailing in the proper forum should normally apply). It hardly serves the public interest to allow plaintiffs to recover substantially greater fees than they would otherwise be entitled to because they have settled improperly venued claims prior to the Court's transferring the case to a proper venue. As the Second Circuit stated in *Polk*, such a result would inappropriately provide counsel with "an incentive to file in a high-rate district in the hope of obtaining a high fee, even though the case must be litigated elsewhere." *Id*. Such a result would also provide a disincentive to defendants to settle claims prior to resolution of a venue motion.

Plaintiffs, in an effort to support their position that the District of Columbia is the proper forum for determining market rates, restate arguments they have made in previous briefing concerning whether the District of Columbia is, in fact, a proper venue. *See* Plfs' Mem. at 33-41. As EPA has already fully briefed the issue of proper venue and responded to Plaintiffs' arguments regarding venue, EPA will not repeat those arguments in full here, but will instead refer the Court to its previous briefs and incorporate the arguments set forth therein by reference. *See* EPA Memorandum in Support of Motion to Dismiss or Transfer (Docket No. 9); EPA Reply in Support of Motion to Dismiss or Transfer (Docket No. 13). In brief, Plaintiffs' venue argument is premised in large part on Plaintiffs' position that even if venue is not proper for Plaintiffs' two unreasonable delay claims (Plaintiffs Third and Fourth Causes of Action), these unreasonable delay claims could still be heard in this Court under the doctrine of pendent venue.

13

*See* Plfs. Mem. at 35-39.  As EPA pointed out in its reply in support of its motion to dismiss,

however, the doctrine of pendent venue does not apply in this case because: (1) a clear limitation

on venue in a special venue statute should be given effect (*see* EPA Reply, Docket No. 13, at 2-5,

citing, *inter alia*, *Jyachosky v. Winter*, No. Civ. A. 04-01733, 2006 WL 1805607, at *4 .3

(D.D.C. June 29, 2006) (holding that Court "is compelled" to abide by restrictions in Title VII

special venue statute and could not find pendent venue based on presence of other claims with

venue available under the general venue statute)); (2) Plaintiffs unreasonable delay and

nondiscretionary duty claims were not based on a common nucleus of operative facts or proof

(*see* EPA Reply, Docket No. 13, at 6-8), (3) alternative venues were available in which Plaintiffs

could properly bring all of their claims (*see* EPA Reply, Docket No. 13, at 9),[7] and (4) resolution

of all of Plaintiffs' claims in Kentucky promoted the public interest, as all of Plaintiffs' claims

related to control of air emissions in Kentucky, and such emissions directly affected residents of

Kentucky (*see* EPA Reply, Docket No. 13, at 8).[8]

### B.    Even if the District of Columbia Were a Proper Venue, Plaintiffs Would not be Entitled to District of Columbia Market Rates Applying the *Davis County* Exception

Even assuming, for the sake of argument, that the District of Columbia were a proper

venue, Plaintiffs would still not be entitled to District of Columbia market rates, applying the

exception to the forum rule set forth in *Davis County* (establishing an exception to the forum rule

where the bulk of the work is done outside the jurisdiction of the court and where there is a very

---

[7] Because all of Plaintiffs claims could have been brought in Kentucky, Plaintiffs assertion that "[r]esolution of all of [Plaintiffs'] claims was proper to avoid the piecemeal litigation of those claims for which EPA challenged venue" (*see* Plfs. Mem. at 40) is incorrect.

[8] Plaintiffs' assertion that Kentucky lacks any "practical connection" to this case (*see* Opp. at 17), when *all* of Plaintiffs' claims related to air emissions in Kentucky, is absurd.

significant difference in compensation favoring D.C)  Mr. Ukeiley's firm does not maintain an office in the District of Columbia.  Nor was any of the work in this case performed in the District of Columbia.  *See* Plfs. Mem. at 30.  Most of the work was performed in Berea, Kentucky, where Mr. Ukeiley maintains an office.

Under *Davis County*, in order to establish an entitlement for District of Columbia rates, Plaintiffs must demonstrate that market rates in the Eastern District of Kentucky are not substantially lower than District of Columbia rates.  The overriding concern of the Court of Appeals in *Davis County* was to avoid the situation in which the successful plaintiff would be "vastly overcompensated," 169 F.3d at 758, by virtue of "practic[ing] in a far less expensive legal market [] and perform[ing] the bulk of [his] work on the case at home" in that market.  *Id*. at 759.

1.    **Market Rates in the Eastern District of Kentucky are Substantially Lower Than District of Columbia Rates**

Plaintiffs have neither asserted nor shown that lawyers practicing in Berea Kentucky have "anywhere near the operational costs, such as office space, clerical support, and associate lawyers, as in Washington, D.C."  *Avera v. Secretary of HHS*, 75 Fed. Cl. at 405.  Nor have Plaintiffs submitted any evidence of market rates for work performed in Kentucky relating to cases brought in Kentucky.  The *Laffey* Matrix relied upon by Plaintiffs reflects changes in the cost of living in the Washington, D.C. metropolitan area.  It is not premised on any analysis or data related to the cost of living in the Eastern District of Kentucky.

As Judge Robertson concluded in *Rocky Mountain*, in the absence of evidence submitted by Plaintiffs regarding appropriate market rates in Kentucky, the most convincing indicator of the appropriate market rates for counsel are recent decisions from the United States District Court for the Eastern District of Kentucky.  *Rocky Mountain*, slip op. at 7.  A canvas of ten decisions

issued by the Eastern District of Kentucky in the last three years reflects that market rates in the

Eastern District range from $125 to $275 for experienced partners or senior associates, and $75

to $150 per hour for low to mid level associates.  *See Couch v. Continental Casualty Co.*, Civ.

No. 06-80, 2008 WL 131198, at *4 (E.D. Ky. Jan. 11, 2008) (awarding attorney $175 per hour in

ERISA action); *Elliott v. Metropolitan Life Ins. Co*, Civ. No. 04-174, 2007 WL 4192001, at *5

(E.D. Ky. Nov. 13, 2007) (awarding $150 to $250 per hour to attorneys with varying rates of

experience in ERISA action for wrongful denial of benefits, with $250 per hour rate awarded to

attorney with more than forty years' experience); *Marcum v. State Farm Mut. Autom. Ins. Co.*,

Civ. No. 6:07-269, 2007 WL 2461623, at *4 (E.D. Ky. Aug. 22, 2007) (awarding $150 per hour

to attorney for time spent preparing motion for remand to state court); *K.L. v. Scott County

Schools*, Civ. No. 5:07-62, 2007 WL 1875663, at *2 (E.D. Ky. June 28, 2007) (awarding $200

per hour to experienced attorney in hearing under Individuals with Disabilities Education Act);

*Branham v. May*, Civ. No. 04-214, 2007 WL 1287945, at *4 (E.D. Ky. Apr. 30, 2007) (awarding

$125 per hour to partner and $75 per hour to associates in civil rights action);  *Flynn v. Borders*,

Civ. No. 5:06-323, 2007 WL 862548, at *3 (E.D. Ky. Mar. 20, 2007) (awarding $275 per hour to

partner, $230 per hour for senior counsel and $205 per hour for senior associate in case under

International Child Abduction Remedies Act); *Brooking v. Hartford Life & Accident Ins. Co*.,

Civ. No. 04-95, 2007 WL 781333, at *9 (E.D. Ky. Mar. 12, 2007) (awarding $250 per hour to

partner and $110 per hour to associates in ERISA action); *Anderson v. Wilson,* 357 F. Supp. 2d

991, 998 (E.D. Ky. 2005) (awarding $175 per hour for attorney with more than 26 years of

experience and who had "extraordinary experience" in campaign finance law, in case challenging

constitutionality of state campaign finance laws); *McCoy ex rel. Estate of Roberts v. Federal

Bureau of Prisons*, Civ. No. 03-383, 2005 WL 1972600 at *4 (E.D. Ky. Aug. 16, 2005)

(awarding $200 per hour to counsel in FOIA litigation); *Bryant v. Nighbert*, Civ. No. 03-183, 2005 WL 2234636, at *3 (E.D. Ky. Sept. 14, 2005) (awarding $195-225 per hour to partners in civil rights litigation and $150 per hour to seventh year associate).[9]

It cannot be seriously disputed, based upon this case law, that prevailing market rates in the Eastern District of Kentucky are substantially lower than market rates in the District of Columbia. Thus, "an award of attorneys fees based on D.C. rates as reflected by the *Laffey* Matrix would indeed constitute the kind of windfall payment that *Davis County* was meant to avoid." *Rocky Mountain*, slip op. at 4.

Based on the case law discussed above, and consistent with Judge Robertson's opinion in *Rocky Mountain*, a reasonable rate for an attorney of Mr. Ukeiley's skill and twelve years of experience would be $225 per hour; $55-$165 less than claimed. *See Rocky Mountain,* slip op. at 7. For Ms. Wilmes, an associate with five years of experience an appropriate rate would be $150 per hour, a reduction of $95 per hour from the claimed rate of $245 per hour.[10] For his first-year associate, Ms. Baldwin, an appropriate rate would be $100 per hour, a reduction of $105 per hour from the claimed rate of $205 per hour. *Id*. at 7. For the law clerk Tim Ballo, an appropriate rate would be $75, a reduction of $40 from the claimed rate of $115.[11]

_____

[9] Plaintiffs suggest that a rate survey from the National Law Journal supports his rate by showing that "$375 rate for Ukeiley is within the range of rates charges by partners in and around Kentucky." Plfs. Mem. at 30 n.9; Decl. ¶ 56 & Ex. 4. This survey, which is based on the 100 largest firms in the country does not include any firms in the Eastern District of Kentucky. The survey does show that the rate claimed by Mr. Ukeiley would place him among the most expensive partners among the largest firms in cities such as Louisville, Nashville, Cincinnati, and Toledo.

[10] The United States also objects to reimbursement of any Ms. Wilmes' time on separate grounds. *See, infra*, Section III.

[11] The defendant is not required to submit any evidence regarding rates unless the plaintiff has
(continued...)

Recalculating Plaintiffs' fee claim using these appropriate Kentucky rates shows that the use of D.C. rates produces a fee that is almost eighty percent higher, even assuming for the sake of argument that the number of hours claimed by plaintiffs is reasonable.

|         | Hours | D.C. Rates[12] | Ky. Rates              |
|---------|-------|----------------|------------------------|
| Ukeiley | 62.7  | $23,006        | $14,108 ($225 per hour)|
| Baldwin | 91.6  | $18,778        | $9,160 ($100 per hour) |
| Wilmes  | 24.2  | $5,929         | $3,630 ($150 per hour) |
| Ballo   | 8.0   | $920           | $600 ($75 per hour)    |
| Totals  | 186.5 | $48,633        | $27,498                |

### 2. That One Set of Clients Paid Counsel *Laffey* Rates for Permitting Matters in Indiana Does Not Establish That Such Rates Constitute Market Rates for the Eastern District of Kentucky

The D.C. Circuit has held that "the actual rate that applicant's counsel can command in the market is itself highly relevant proof of the prevailing community rate." *National Ass'n of Concerned Veterans*, 675 F.2d at 1326. This is not the same, however, as saying that the highest rate that counsel has ever charged in any community should be treated as the appropriate market rate in the relevant community. The market rate does not reflect "what the client paid in a single fortunate case, but what on average counsel has in fact received." *Id.*

Here, Plaintiffs have not submitted any evidence reflecting the market rate for legal

---

[11]/(...continued)
submitted sufficient evidence to meet its burden of proof. *See National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1326 (D.C. Cir. 1982). Here, Plaintiffs have failed to meet their burden of proof, and EPA is not required to prove that any specific rate is appropriate. While an appropriate remedy would be to deny the fee claim outright where Plaintiffs have failed to meet their burden of proof, EPA is willing to accept rates drawn from Kentucky cases as the basis for an award.

[12]/ *See* Pfs. Mem. at 45.

services in the relevant community of the Eastern District of Kentucky. Plaintiffs point to the fact that between December 2003 and July 2007 Mr. Ukeiley's firm charged *Laffey* Matrix rates to labor unions in matters related to Clean Air Act permits issued by the Indiana Department of Environmental Management. *See* Plfs. Mem. at 22-23; Ukeiley Decl. ¶ 22. Mr. Ukeiley states that he has billed $66,000 using *Laffey* Matrix rates for these Indiana permitting matters. Ukeiley Decl. ¶ 24. The rates, however, that Mr. Ukeiley's firm charged for work related to permits in Indiana does not establish the market rate in the relevant community – the Eastern District of Kentucky. Indeed, Mr. Ukeiley admits that his work in the relevant community has been limited. Mr. Ukeiley avers that he has filed only one case in state or federal court in Kentucky, that he has "never had a client physically in [his] office in Kentucky," and that he has never had a case representing only Kentucky clients. Ukeiley Decl. ¶¶ 32-33.[13]

Furthermore, the relatively limited amount of work performed by Mr. Ukeiley's firm for the Indiana permitting matters is insufficient to establish any market rate. Mr. Ukeiley avers that $66,000 was billed to labor union clients for the Indiana permitting work over a three and half year period. Assuming that Mr. Ukeiley means he billed these clients approximately $325 per hour when referring to billing the labor union clients at *Laffey* Matrix rates,[14] he worked approximately 200 hours (approximately 5 weeks) over a period of 43 months to earn the

---

[13] Curiously, Mr. Ukeiley states that his declaration, executed in February 2008, is based on facts "as of 7/13/07," when he submitted a similar declaration in a previous case. *See* Plfs. Mem. at 21, n.4 (stating "this motion and supporting affidavit are based on facts largely as of 7/13/07"). *See also* Ukeiley Decl. ¶14. Mr. Ukeiley does not explain why his declaration is not based on facts as of the date the declaration was executed.

[14] *See* Plfs. Mem. at 45 (requesting that Mr. Ukeiley be awarded *Laffey* Matrix rates between $280-375 per hour for work between 2004-2007).

$66,000 billed to labor union clients for the Indiana permitting work.[15] A few weeks of work over a 43-month period for work outside of the jurisdiction at issue is insufficient to establish a market rate in Kentucky.[16]

In short, the fact that Mr. Ukeiley has, "in 'fortunate case[s],' recovered higher fees does not speak to the dispositive issue here, the market rates charged" in the relevant home community of Kentucky.  *Rocky Mountain,* slip op. at 5.

> **3.    Plaintiffs' Counsel is Not Entitled to *Laffey* Rates Because He Has an "Issue-Based" Practice**

Plaintiffs argue that the nature of Mr. Ukeiley's practice and of the underlying action here – a Clean Air Act Title V suit – weigh in favor of reimbursement at District of Columbia/*Laffey* Matrix rates.  Plaintiffs characterize Mr. Ukeiley's practice as a "nationwide, issue-based" practice.  *See* Plfs. Mem. at 23.  Nothing in *Davis County*, however, suggests that out-of-town counsel with an "issue-based," as opposed to a "location-based," practice should be compensated at the District's rates when those rates happen to be higher.  *Rocky Mountain*, slip op. at 6. Indeed, *Davis County* itself involved a successful action under the same statute involved in this case, the Clean Air Act.

As noted by Judge Robertson in *Rocky Mountain*, "fee-shifting statutes were 'not designed as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client.'"  *Rocky Mountain*, slip op. at 6 (quoting *Delaware Valley I*, 478 U.S. at 565).

---

[15]  These numbers change somewhat depending on how much time was billed on these matters by associates charging lower rates.

[16]  Plaintiffs submit no evidence regarding the billing practices of two of their attorneys: Ms. Wilmes and Mr. Ballo, and do not allege that these attorneys have ever billed anyone at *Laffey* Matrix rates.

"Instead, these statutes 'enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws,' a purpose that can be fulfilled by having the fee award here determined by rates prevailing in the Eastern District of Kentucky." *Id.*

### 4.    The Court Erred in *MacClarence*

In *Davis County*, the D.C. Circuit plainly created an exception to the forum rule where the bulk of the work is done outside the jurisdiction and where there is a very significant difference in compensation favoring D.C.  In his opinion in *MacClarence*, however, Magistrate Judge Facciola suggests that the *Davis County* exception should not be applied to Mr. Ukeiley's practice based in part on perceived "differentiation" between the practice of the Civil Division of the United States Attorney's Office and other components of the Department of Justice.

*See MacClarence*, slip op. at 7.[17]  He explains:

> The Civil Division of the United States Attorney's Office, which
> created the *Laffey* Matrix, agrees to pay counsel who prevail in fee
> shifting cases the *Laffey* rates, and I . . . am not aware of any policy
> that differentiates between counsel in the District of Columbia and
> elsewhere . . . . Indeed, . . . the question of the proper hourly rates
> for counsel never arises in litigation involving the United States
> and its agencies when the Civil Division of the United States
> represents them.

*MacClarence* slip op. at 6-7.   Magistrate Judge Facciola's assumption that the Civil Division of the United States Attorney's Office would never contest *Laffey* rates is mistaken.  For example, a challenge to *Laffey* rates was raised by the Civil Division of the United States Attorney's Office in *Palmer v. Rice* – a case in which Magistrate Judge Facciola limited Massachusetts counsel to a

---

[17] To the extent Magistrate Judge Facciola concluded that Ukeiley's work on Indiana permitting's matters establishes the market rate for the Eastern District of Kentucky (*see MacClarence* slip op. at 4-5), this conclusion is misplaced for the reasons set forth in I.B.2, *supra* at 18-20.

home forum billing rate of $140 based on the *Davis County* exception. *Palmer v. Rice*, 2005 WL 1662130 at *20).  In any event, the governing law of this Court with respect to out-of-town counsel and windfalls, as set forth in *Davis County,* is clear, and cannot be waived through application of prior fee settlements.

## II.    PLAINTIFFS SHOULD NOT BE REIMBURSED FOR UNNECESSARY TIME SPENT OPPOSING EPA'S MOTION TO TRANSFER THIS CASE TO A PROPER VENUE

Approximately 56.8 hours for which reimbursement is sought (approximately 30 percent of the total hours sought) relates to time spent opposing EPA's venue motion.[18]  This time did not advance any interest of Plaintiffs, except perhaps to bolster counsel's hopes of securing a high hourly rate, and these hours should be deducted from Plaintiffs claims.

The touchstone inquiry is whether the time expended on particular tasks is reasonable. *Martini v. Federal National Mortgage Ass'n*, 977 F. Supp. 482, 487 (D.D.C. 1997).  In general, time spent researching, drafting, and preparing unsuccessful motions is not compensable.  *Id*. at 488.  Here, for the reasons set forth in EPA's previous briefs relating to venue, Plaintiffs brought this case in an improper forum, and Plaintiffs' opposition to this motion would not have been successful if a decision had been reached.

Furthermore, Plaintiffs' opposition to EPA's venue motion did not promote in any respect Plaintiffs' clients interests in securing prompt relief with respect to alleged unreasonable delay. Indeed, Plaintiffs' refusal to refile in a proper venue, or stipulate to transfer of the case to a

---

[18] Review of counsel's billing entries reflects that the following time was spent by counsel on the venue issue: 10.1 hours of Robert Ukeiley (.2 hours on 10/3/06; 1.0 hours on 10/6/06, 1.0 hour on 10/12/06, 0.2 hour on 10/18/06, 0.4 hours on 10/19/06, 1 hour on 10/21/06, 4.1 hours on 10/22/06, 1.3 hours on 10/23/06, 0.6 hours on 10/31/06, 0.3 hours on 11/9/06); and 46.7 hours of Aubrey Baldwin (0.4 hours on 10/6/06, 6.7 hours on 10/16/06, 8.6 hours on 10/17/06, 3.2 hours on 10/18/06, 11.7 hours on 10/19/06, 4.6 hours on 10/20/06, 10.3 hours on 10/23/06, and 1.2 hours on 11/9/06).

proper venue, served just to postpone resolution of the merits of Plaintiffs' unreasonable delay claims.  As of the time the parties entered into a settlement in February 2007, EPA's venue motion had been pending for four months, without any other proceedings having occurred in the case.  If there had been no settlement, additional time could well have elapsed prior to any additional proceedings in the case.  Moreover, none of the relief obtained in the settlement agreement depended in any respect on Plaintiffs' complaint having been filed in the District of Columbia, as opposed to having been filed in a proper venue.  Plaintiffs assert in conclusory fashion that transfer of this case to Kentucky would have caused "added expense and hardship" to Plaintiffs' counsel.  *See* Opp. at 17.  Even assuming that it would be just to consider alleged hardship that arose from counsel's own mistake in filing, there is no reason to conclude that litigating this case in the State where Plaintiffs' counsel resides would have caused Plaintiffs any material expense or hardship.  Plaintiffs further assert in conclusory fashion that transfer of this case to Kentucky would have caused "unnecessary delay."  *See* Op. at 17.  In fact, if Plaintiffs had stipulated to transfer of this case to a proper venue, resolution of the claims raised could have moved forward without delay.  If transfer had resulted in any delay, it would have been attributable to Plaintiffs failure to file in a proper forum in the first place.[19]

In short, it is not reasonable under the circumstances here for plaintiff's counsel to recover fees for time spent opposing EPA's venue motion.  Allowing recovery for such time would create an incentive for future similarly situated plaintiffs to improperly file claims in D.C.

---

[19] Plaintiffs' assertion (*see* Plfs. Mem. at 44) that they achieved through the settlement agreement "all the relief they requested" in this lawsuit is wrong.  By entering into an out-of-court settlement agreement, Plaintiffs received none of the declaratory relief they sought in their Complaint.  *See* Complaint, Prayer for Relief.  The settlement agreement entered into by Plaintiffs also did not require EPA to "modify, terminate, or revoke" any permit, which was the relief sought in claims two and three of the Complaint.  *See* Plfs' Mem. at 17-18.

because of the relatively high billing rates here, and would further potentially frustrate judicial economy by creating a disincentive for the Government to enter into settlements with public interest litigants, until pending Government motions are ruled upon by the Court.

Accordingly, the 56.8 hours spent opposing transfer should be deducted from Plaintiffs' claims.

## III. PLAINTIFFS SHOULD NOT BE REIMBURSED FOR UNNECESSARY TIME SPENT PREPARING THE INSTANT EXCESSIVE FEE REQUEST

It is also unreasonable under the circumstances here for Plaintiffs to recover the time incurred preparing their 45-page motion and supporting memorandum. All of the Government's objections to Plaintiffs' fee request are well-founded, and Plaintiffs' preparation of a full-length brief addressing the objections raised by the Government to Plaintiffs' fee request was unnecessary. It should further be noted that prior to submission of the instant fee petition, Plaintiffs' counsel had already briefed application of *Davis County* to his practice in two previous cases decided this year in this Court.

Accordingly, the 34.5 hours spent preparing the instant motion and memorandum should be deducted from Plaintiffs' claims.[20]

---

[20] Review of counsel's billing entries reflects that the following time was spent by counsel preparing the instant motion and supporting documentation: all 24 hours of Ashley Wilmes, and the following 10.5 hours of Robert Ukeiley: 1.6 hours on 1/21/08, 2.8 hours on 1/22/08, 3.8 hours on 1/23/08, .2 hours on 2/1/08, 2.1 hours on 2/11/08.

## IV.    SUMMARY

Plaintiffs should be awarded $14,563 in fees and 453.07 in costs.

|          | Adjusted Hours | Adjusted Rate | Total   |
|----------|----------------|---------------|---------|
| Ukeiley  | 42.1           | $225          | $9,473  |
| Baldwin  | 44.9           | $100          | $4,490  |
| Ballo    | 8              | $75           | $600    |
| Wilmes   | 0              | $150          | $0      |
|          |                |               | $14,563 |

## CONCLUSION

For these reasons, Plaintiffs should recover no more than $15,016.07 in costs of litigation, including attorneys' fees, pursuant to section 304(d) of the CAA, 42 U.S.C. § 7604(d).

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources
       Division
U.S. Department of Justice


_____/s/_____
ERIC G. HOSTETLER, Attorney
D.C. Bar No. 445917
Environmental Defense Section
P.O. Box 23986
L'Enfant Plaza Station
Washington, D.C.  20026-3986
(202) 305-2326
E-mail: eric.hostetler@usdoj.gov

<u>Of Counsel</u>
APPLE CHAPMAN
Office of General Counsel
United States Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C.  20460

VERA KORNYLAK
Office of Regional Counsel
United States Environmental Protection Agency
Sam Nunn Atlanta Federal Center
61 Forsyth Street, S.W.
DATED: March 28, 2008        Atlanta, GA 30303-8960