# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BILL MacCLARENCE, P.E.,

    Plaintiff,

    v.                                  CA No. 07-55 (RWR/JMF)

STEPHEN L. JOHNSON, in his official
Capacity as Administrator, United States
Environmental Protection Agency,

    Defendant.

## MEMORANDUM OPINION

This case was referred to me for resolution of <u>Plaintiff's Motion for Award of Attorneys' Fees and Costs, and Memorandum in Support</u> ("Doc. #13"). For the reasons stated below, the motion will be granted.

## BACKGROUND

This action, filed pursuant to the citizen suit provisions of the Clean Air Act, 42 U.S.C. § 7604(d),[1] sought to compel the defendant, the Administrator of the Environmental Protection Agency ("EPA") to grant or deny a petition that had been filed by plaintiff, Bill MacClarence, under Title V of the Clean Air Act, 42 U.S.C. § 7661d(b)(2) within the required sixty days.

After MacClarence filed suit, the EPA advised his counsel that it "intended to issue a response to MacClarence's Title V petition shortly after the time provided by the

---

[1] All references to the United States Code are to the electronic versions that appear in Westlaw or Lexis.

Federal Rules of Civil Procedure for the EPA to answer the complaint itself." Doc. #13 at 8.

MacClarence did not oppose two motions for an enlargement of time within which to answer the complaint that EPA filed and on April 20, 2007, EPA issued the order denying MacClarance's Title V petition. Id.

On May 21, 2007, MacClarence and EPA stipulated to the partial dismissal of the complaint, see Stipulation of Partial Dismissal, leaving only the issue of attorneys' fees.

While the EPA concedes MacClarence's entitlement to fees and costs, it refuses to pay plaintiff's counsel the rates in the Laffey Matrix, published by the United States Attorney's Office and named for the decision in Laffey v. Nw. Airlines, Inc., 572 F. Supp. 354 (D.D.C. 1983), aff'd in part, rev'd in part on other grounds, 746 F.2d 4 (D.C. Cir. 1984), cert. denied, 472 U.S. 1021 (1985).[2] Thus, I must resolve the hourly rate for plaintiff's counsel and the EPA's complaint that the hours spent on the litigation by plaintiff's counsel were excessive.

## DISCUSSION

I.   The Lawyers and Their Rates

Plaintiff was represented by two lawyers, Robert Ukeiley, who lives in Berea, Kentucky, and William M. Eddie, who lives in Portland, Oregon. Ukeiley seeks the Laffey rate of $375 per hour and Eddie $305. Doc. #13 at 25. The EPA insists that they should be paid the rates of their home forums of $200 per hour for Eddie and $250 for Ukeiley.

The difference in result is illustrated in the following chart:

---

[2] The Laffey Matrix is at Doc. #13 at Attachment 4.

| Lawyer | Hours | Laffey rates | Home forum rates | Difference |
|---|---|---|---|---|
| Ukeiley | 22.6 | $8,475.00 (22.6 * $375) | $5,650.00 (22.6 * $250) | $2,825.00 |
| Eddie | 27.9 | $8,509.50 (27.9 * $305) | $5,580.00 (27.9 * $200) | $2,929.50 |

II.   Question Presented

   A.   Ukeiley's Rate

The question presented by this case—whether Ukeiley should be paid the Laffey rates or rates awarded as market rates by district courts presiding over fee shifting litigation in his home state of Kentucky—has been substantially narrowed by a decision by Judge James Robertson of this Court, Rocky Mountain Clean Air Action v. Johnson, Civil Action No. 06-1992 (JR) (D.D.C. Jan. 29, 2008) (hereafter "Rocky Mountain").[3]

That case also involved Ukeiley, who filed an identical action against the EPA and sought Laffey rates for his services. Judge Robertson concluded, however, that paying such rates, as opposed to the hourly rates allowed by the United States District Court for the Eastern District of Kentucky in fee shifting cases, constituted the very windfall prohibited by the court of appeals in Davis County Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. v. EPA, 169 F.3d 758, 760 (D.C. Cir. 1982). Accordingly, Judge Robertson deviated from the traditional forum rule specified in Donnell v. United States, 682 F.2d 240, 251 (D.C. Cir. 1982), and refused to pay counsel the Laffey rates that would have been paid had this case been litigated by a lawyer who had an office in the District of Columbia.

---

[3] Attached hereto as Exhibit 1.

3

Before Judge Robertson issued his decision, plaintiff tried to distinguish this case from Davis County on the grounds that it dealt with a client who had paid counsel Salt Lake City rates but sought D.C. rates in the fee petition, generating a personal windfall, while in this case plaintiff proceeded pro bono and will gain nothing, let alone a windfall, if Laffey rates are paid. Plaintiff's Reply in Support of Motion for Award of Attorneys' Fees and Costs ("Doc. #16") at 3. But, in Davis County, the court of appeals spoke specifically to preventing windfalls to counsel. Davis County, 169 F.3d at 131-32. Moreover, it is unreasonable to suggest that the court of appeals was concerned about windfalls to clients but not windfalls to lawyers when the lawyers get the sole benefit of the award because the plaintiff proceeded pro bono.

I must, however, disagree with Judge Robertson as to his finding that the Laffey rates would be a windfall to Ukeiley. First, the rates allowed by the Eastern District of Kentucky in the cases to which Judge Robertson referred were for a six year period of time from 2001 to 2007. To presume that these same rules would apply in 2008, when there has been no allowance for inflation, would be, at best, only a rough estimate. Second, a review of those cases indicates that they were not environmental cases and there is no information available whatsoever as to whether such cases demanded a premium or a deduction in that judicial district. Thus, the rates derived from those cases may or may not be the actual rates that are to be compared against the Laffey rates.

Additionally, Ukeiley insists that his clients can be subdivided into three categories: 1) pro bono, where he accepts no compensation but hopes to recover fees from the defendant under a fee shifting statute, 2) "low bono," where he accepts limited compensation of $90 an hour and a cap on his fees beyond a certain limit, and 3) paying

4

clients, such as unions, who pay him a rate based on the Laffey matrix. Doc. #13 at 12-13. Indeed, he explains that at one point his client in this case entered into an agreement to pay him the Laffey rate of $375, although Ukeiley ultimately agreed to represent him pro bono in "light of the possibility of recovery under the Clean Air Act's fee shifting provision." Plaintiff's Response to EPA's Notice of Supplemental Authority ("Doc. #19) at 3 & n.1.

Thus, for his paying clients, Ukeiley is paid the Laffey rate and, while the EPA dismiss his paid work for other clients as aberrational, the truth of the matter is that he *is* paid the Laffey rates by the clients who pay him. Counsel's actual billing rate, premised on what he charges his clients and they pay is, of course, the fundamental premise of a reasonable fee under the lodestar analysis. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

Additionally, reliance on a single set of hourly rates with allowance, under Davis County, for the aberrational windfall has much to recommend it. Twenty years ago, dissatisfaction of the bench and bar with court awards of attorneys fees led to the impaneling of a distinguished task force to study the implications and consequences of the Third Circuit Court of Appeals' seminal lodestar decision, Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir. 1973). See Report of the Third Circuit Task Force, Court Awarded Attorney Fees, 108 F.R.D. 237 (1985). The value of having a set rate to compensate attorneys was, in the Task Force's view, so great that it recommended that "the schedule [of attorneys' fees] be uniformly applied to all lawyers and in all cases." Id. at 261. The Task Force further stated the following:

> The Task Force acknowledges that standardized
> rates applicable to all types of cases, even when

5

>broken into categories, will undercompensate certain
>attorneys and overcompensate others. Nonetheless,
>it concludes that the objectivity and efficiency
>that would be achieved by using uniform rates is
>preferable to the current system. This seems
>especially true in light of the fact that the inconsistency
>and unpredictability of present practice undoubtedly
>pose the same risks of under and overcompensation.

Id.

The wisdom of that recommendation is illustrated by this case. The case itself was simple. The EPA failed to do something, plaintiff sued to force it to do it, the EPA did it and the case was dismissed. As the parties have to agree, the amount of time spent on the fee petition dwarfs the amount of time spent on the substance of the case itself.[4] Spending so much time and money on litigating the fee petition part of the case violates the Supreme Court's command in Hensley, 461 U.S. at 424 ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee.").

Finally, while EPA's concern for the public fisc is commendable, in fairness, it has to factor in the time its lawyers, paid by the taxpayers, would not have had to spend had it settled the case for Laffey rates. Speaking of those hard working taxpayers, they also had to pay me and Judge Robertson for writing our opinions.

There is an additional incongruity. The Civil Division of the United States Attorney's Office, which created the Laffey matrix, agrees to pay counsel who prevail in

---

[4] Of the total amount of time spent by plaintiff's counsel on plaintiff's case, 81% of it was spent resolving the issue of fees. The Court arrived at this figure by dividing the amount of fees incurred by plaintiff's attorney for work on the fees issue ($14,869.00) by the total amount of fees incurred ($18,326.00). In determining what work was performed on the fees issue, the Court took the earliest entry in counsel's fee petition that mentioned the word "fees." For attorney Eddie, the earliest entry was on April 16, 2007 for .1 hours. For attorney Ukeiley, attorney Baldwin, and paralegals Perkins and Middleton, the earliest entry was on April 19, 2007, for 0.3 hours expended by Baldwin. Baldwin's first time entry on April 19, 2007, was also included in the Court's calculation.

6

fee shifting cases the <u>Laffey</u> rates and I[5] am not aware of any policy that differentiates between counsel in the District of Columbia and elsewhere. Yet, in this case, EPA takes a different position, meaning that the level of Ukeiley's fees is a function of who represents the government's opponent. In an employment discrimination case against the EPA, where the United States Attorney represents the EPA, counsel's compensation will be greater than where the EPA represents itself in an action challenging EPA enforcement of an environmental law. But, that differentiation is irrational; no one is suggesting that private enforcement of the environmental laws is less important than enforcement of the civil rights laws.

To a magistrate judge who spends so much time settling cases, standardized rates simplify settlement discussions. Indeed, as just explained, the question of the proper hourly rate for counsel never arises in litigation involving the United States and its agencies when the Civil Division of the United States represents them. On the other hand, the District of Columbia, the other large institutional litigant in this Court, may or may not follow the <u>Laffey</u> rates. If it refuses, then the issue of what hourly rate the District will agree to has to be resolved, prolonging the discussions. On more than one occasion, the inability to agree on the rates doomed the settlement, although it might have been otherwise in the parties' best interest to settle.

This is not to say that the <u>Laffey</u> rates are a panacea. The use of the standardized <u>Laffey</u> rates has an obvious trade off. As the Third Circuit Task Force pointed out, standardized hourly rates overcompensate lawyers whose practices are contingent fee based and are therefore compensated at an hourly rate they never charge and none of their

---

[5] Note that I served in that Division for three years and the Civil Division of the United States Attorney's Office represents the government in the vast majority of the cases before me, including the ones referred to me for settlement.

7

clients could pay.  See Task Force Report at 260.  Under Laffey, everyone is paid the same rate as charged by a senior partner in one of the large Washington firms, irrespective of the actual economics of their practice.  The impact that the high Laffey rates are having on the resolution and settlement of fee shifting cases is deleterious to the point of necessitating the convention of another Task Force.  But, in this case, I have found that the Laffey rates are the rates that Ukeiley charges his paying clients and this concern about overcompensation as to those who do not, cannot and never will actually charge paying clients the Laffey rates is not present.

   I will therefore award Ukeiley fees premised on the Laffey rates.

   B.  Eddie's Rate

   The situation as to co-counsel, William M. Eddie, is different.  His hourly billing rate, $250, is less than the $305 Laffey rate he is seeking, meaning that the EPA would pay him $5,580.00 as opposed to $8,509.50, a difference of $2,929.50.  First, I do find that difference to be the kind of windfall that so concerned the court in Davis County.  Instead, the obvious value of having a single rate, except for in the most unusual case, trumps the concern that Eddie's compensation is more than he could command in his home market.

III.  Hours Reasonably Spent

   Ukeiley reduced his fees by 15% but the EPA is not satisfied and demands another 10% discount.  It objects to the 7.9 hours spend by Eddie and the 2.5 hours spent by Ukeiley in drafting the complaint, which the EPA contends is identical to the complaint they filed in Rocky Mountain Clean Air Action, "except for the few allegations that relate directly to the plaintiff and the facility at issue in this case." EPA's Opposition

8

to Motion for Attorney Fees ("Doc. #15") at 18. It then indicates that "other inefficiencies exist in this case that are similar to the inefficiencies that were found to justify an across-the-board reduction in a case that Ukeiley litigated and attaches to his Declaration." Id. (citing Ctr. for Biological Diversity v. Norton, Civil Action No. 04-0156 (JDB) (D.D.C. Jan. 26, 2005)).[6]

First, in the opinion to which the EPA refers, Judge Bates specified the inefficiencies that lead him to reduce the fee requested. Id., slip op. at 3-4. In this case, however, the EPA does not point me to the specific inefficiencies it finds objectionable. Without that information, an across the board percentage reduction for unspecified "inefficiencies" is arbitrary.

Second, I have carefully reviewed the times required to complete various tasks against the docket and pleadings and I cannot find that the hours spent were unreasonable.

Third, it must be recalled that the greater a lawyer's experience, the less time he should spend on familiar tasks. It is likely that an inexperienced lawyer would have spent more time than plaintiffs' counsel did drafting the complaint and getting it in final form to be filed. Speaking absolutely, I cannot say that the total of 9.4 hours on drafting the complaint in this case is unreasonable, even allowing for the similarity of this case with the Rocky Mountain case.

## CONCLUSION

I will therefore allow $18,326.00 in fees and $385.50 in agreed to costs.

An Order and Judgment accompany this Memorandum Opinion.

---

[6] Attached hereto as Exhibit 2.

|  | /S/ |
|---|---|
|  | **JUDGE JOHN M. FACCIOLA** |
| **March 17, 2008** | **UNITED STATES MAGISTRATE JUDGE** |