IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY *et al.*, | ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) Civil Action NO. 06-CV-1350 (GK) ) |
| STEPHEN L. JOHNSON *et al.*, | ) ) |
| Defendants. | ) ) ) |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR ATTORNEYS' FEES AND COSTS**

Pursuant to the citizen suit provision of the Clean Air Act, 42 U.S.C. § 7604(d), Plaintiffs Center for Biological Diversity, Preston Forsythe and Hilary Lambert (collectively "CBD" or "Plaintiffs") requested an award of attorneys' fees and costs for this litigation. On March 28, 2008, Defendants United States Environmental Protection Agency ("EPA") and EPA Administrator Stephen L. Johnson [collectively "EPA"] filed their Opposition To Motion for Attorneys' Fees ("EPA Op."). CBD now offers this reply.

**I.   INTRODUCTION**

In its Opposition, EPA makes arguments that are contrary to the actual language in what it claims is the controlling case, are internally inconsistent, and are inherently unjust. Furthermore, EPA provides no response to several arguments. Ultimately, EPA is trying to convince the Court that it is unreasonable to award fees based on the well-established DOJ Laffey Matrix and CBD's counsel's actual rates.

For example, EPA argues that Davis County Solid Waste Mgmt. v. EPA, 169 F.3d 755, 758 (D.C. Cir. 1999) should control this case but ignores that Davis actually says that its exception to the forum rate rule for reasonable attorneys' fees rates is to prevent a petitioner from being compensated for more than it contracted to pay for legal services. Since CBD's counsel represented them on a *pro bono* basis in this case, Davis is not applicable based on the actual language in the case. Davis also stated that in some cases lawyers should be awarded fees at the rate in the market where they practice. But EPA argues, correctly, in its opposition that CBD's lead counsel hardly ever practices in the Eastern District of Kentucky, which is forum upon which EPA bases its claimed rates. Furthermore, Davis says that limiting lawyers to less than their usual rates would be problematic but that is what EPA is asking the Court to do in this case.

As to internally inconsistent arguments, EPA argues that this case should have found venue in the Western District of Kentucky, which includes Louisville which has higher rates than those requested by CBD. Yet EPA asks the Court to apply rates based on the Eastern District of Kentucky.

As to the arguments that EPA leaves unexplained, one is that EPA is claiming Tim Ballo, a law clerk who had successfully taken the Virginia Bar at the time he worked on this case (but had not yet been sworn in) and performed the work on this case while residing in New York City should be paid Eastern District of Kentucky Rates for a case EPA claims should have been litigated in the Western District of Kentucky. EPA offers no explanation for this position. Similarly, EPA does not explain why a junior attorney, Ashley Wilmes, who performed her work on this case while residing in the Eastern District of Pennsylvania and the District of Colorado should be paid Eastern District of Kentucky rates. As to the issue of the proper venue, EPA has not provided any response to the argument that venue for the unreasonable delay claims,

standing alone, may have been in this Court pursuant to the plain language of the Clean Air Act citizen suit provision if EPA had directed appeals of the substantive decisions to the U.S. Court of Appeals for the District of Columbia Circuit. The Court cannot be expected to divine the basis for EPA's unexplained positions.

## II.    ARGUMENT

### A.    EPA'S DISCUSSION ABOUT THE LEGAL STANDARD FOR THE AWARDING OF FEES IS SOMEWHAT MISLEADING

EPA provides an overview of the legal standards applicable to attorneys' fees requests that is somewhat misleading. For example, EPA begins with a quote out of Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546 (1986). See EPA Op. at 8-9. However, EPA fails to mention that the quote is in the context of a discussion refusing to allow a multiplier to be used to increase the loadstar, that is the reasonable number of hours times a reasonable rate. Delaware Valley, 478 U.S. at 565. As CBD is only asking for the loadstar in this case, the quoted section is not applicable to this case.

EPA goes on to discuss Davis County Solid Waste Management v. EPA, 169 F.3d 755, 758 (D.C. Cir. 1999). As discussed below, EPA's interpretation of Davis is much broader than the actual language in Davis.

EPA next addresses Palmer v. Rice, No. Civ. A. 76-1439 HHK/JMF, 2005 WL 1662130, at * 5,7, 20 (D.D.C. July 11, 2005). EPA Op. at 10. EPA claims that the rate awarded in Palmer was based on the attorney's "home forum rate." Id. However, in Palmer, one attorney, Wagner, was from Massachusetts. Wagner charged the principle law firm in the case $85 for her work on that case and her actual billing rate for clients was $140. Palmer, 2005 WL 1662130, at *5. The court recommended that Wagner be compensated at "her normal market rate," that is $140 per

hour. Id. at *10.  The court did not consider case law discussing what other Massachusetts attorneys have recovered in various cases.  That is what Plaintiffs are seeking in this case; their normal market rate for attorneys who have charged their normal market rates.

EPA also cites to Avera v. Secretary of HHS, 75 Fed. Cl. 400, 405 (Fed. Cl. 2007) but the analysis of the applicability of that case to this case is the same as in Palmer and Davis. EPA Opp. at 4-5, n. 5.  In Avera, the plaintiffs' attorney from Wyoming originally requested $200 per hour.  He explained that "the rates my firm has charged in this case [$200 per hour] are the same as we charge all other clients for the nature of services rendered." Avera, 75 Fed. Cl. at 401.  However, subsequently plaintiffs' attorney revised his request to rates of $574 - $598, based on the adjusted Laffey Matrix, without any claim that the higher rates were what he ordinarily commanded. Id. at 401-402. The court rejected this request and paid the attorney based on what he normally charged, $200 per hour. Id. at 405. That is exactly what Plaintiffs are requesting in this case; to obtain a fee award based on the rate that Mr. Ukeiley normally charges. In any event, Avera is of no moment as the U.S. Court of Federal Claims does not use the "forum rule," while the D.C. Circuit does. Id. at 403.

    **B.**    **EPA IS WRONG THAT THE CLEAN AIR ACT VENUE PROVISION DICTATES THAT THE DOJ LAFFEY MATRIX AND THE LAW OFFICE OF ROBERT UKEILEY'S NORMAL MARKET RATE ARE UNREASONABLE**

EPA argues that because it believes that this Court was not the proper venue for two of the four claims in this case, the rates Plaintiffs are requesting are unreasonable.  EPA Op. at 12-13.  Plaintiffs have already explained why venue was proper in this Court in their Motion.  See Motion at 33-41.  However, Plaintiffs will make a few additional points.

First, EPA's argument is internally inconsistent. EPA actually says that the proper venue for the two claims would have been the Western District of Kentucky and then says if "a suit is not maintainable in the district of filing, the proper forum for purposes of fees and application of the 'forum rule' should be deemed the district in which the case should have been filed," that is the Western District of Kentucky. EPA Op. at 12-13. Yet, EPA is asking the Court to base the hourly rates on the Eastern District of Kentucky. EPA Op. at 18-19. EPA provides no explanation for requesting rates for what it admits is the wrong jurisdiction. The undisputed evidence in this case is that the rates requested for Plaintiffs' counsel are less than rates charged in Louisville, which is in the Western District of Kentucky. For example, Plaintiffs are requesting $290 for the first half of 2006 and $375 for the second half of 2006 for undersigned counsel. The undisputed evidence is that Louisville rates ranged up to $400 for partners in 2006. See Declaration of Robert Ukeiley in Support of Plaintiffs' Motion for Attorneys' Fees and Costs [Dk. # 18-2], Ex. 4, page 12 of 12.[1] Similarly, the undisputed evidence is that associates garnered up to $275 in Louisville in 2006 while Plaintiffs are requesting $205 for an associate for 2006-2007 and $245 for another associate for 2007 – 2008. Id.

Second, EPA has failed to rebut CBD's argument that EPA cannot establish that venue is not proper in this Court for CBD's fourth claim because 42 U.S.C. 7607(b) allows for venue of unreasonable delay claims in this Court when the merits of the decision will ultimately be decided in the D.C. Circuit. CBD put forth this argument on pages 39-40 of its Motion for Fees for the first time. EPA did not respond to this argument in its Opposition to the Fees Motion so the argument should be taken as conceded.

---

[1] The fact that undersigned counsel's rates would be at the upper end of, but still clearly within, the range during the second half of 2006 does not make the rates unreasonable considering the specialized nature of the practice in a complex area of the law.

5

Third, putting aside EPA's unexplained claim of absurdity, EPA has still not provided an analysis of the practical connection between this case and the Western District of Kentucky. See EPA Op. at 14, ftnt. 8. EPA has not explained why it brought its own enforcement action against TVA Paradise in an administrative tribunal in D.C. rather than in the Western District of Kentucky. See In re Tennessee Valley Authority, CAA 2000-04-008, 9 E.A.D. 357, 367 (Sept. 15, 2000), rev'd, Tennessee Valley Authority v. Whitman, 336 F.3d 1236 (11th Cir. 2003). EPA does not even acknowledge that the state of North Carolina is suing TVA Paradise in federal court in North Carolina for excess air pollution. See North Carolina v. TVA, 515 F.3d 344 (4th Cir. 2008). EPA makes no mention that the two EPA lawyers on its opposition brief are from Georgia, the site of EPA Region 4 which regulates Kentucky, and D.C. All of this further supports that there is no logical reason for this case to have been in the Western District of Kentucky.

Fourth, in Polk v. New York State Dep't of Correctional Services, 722 F.2d 23, 25 (2d Cir. 1983), the case was involved the actual transfer from one venue to another venue rather than the mere presence of an undecided motion to transfer. Furthermore, the court ultimately held that it was up to the District Court to decide which forum's rates to use because there was a logical connection between the forum where the case was first filed and the case, that is a pending class action. Id. In addition, in Texas Mun. Power Agency v. EPA, 89 F.3d 858, 867 (D.C. Cir. 1996) the D.C. Circuit held that restrictions on venue in 42 U.S.C. § 7607(b), which contains similar language to 42 U.S.C. § 7604(a), are not jurisdictional. Thus, there is no authority that holds that the Court must base the hourly rates on the forum that a case may be transferred to. There is not even any authority that says a court can use rates from a forum that the case might have been transferred to.

C. **DAVIS IS NOT APPLICABLE TO THIS CASE**

Before turning to Davis, Plaintiffs will address one misconception put forth by EPA. EPA seems to believe we live in a centrally planned economy in which the legal rates charged are based on the costs of delivering those legal services. See EPA Op. at 15. To state the obvious, we live in a market economy, at least with regard to legal services, in which legal rates are based on how much lawyers charge and whether clients are willing to pay that amount. EPA's argument on this point actually invites reversible error as the Supreme Court has held that reducing reasonable rates based on an analysis of the cost of providing those legal services is inappropriate. See Missouri v. Jenkins, 491 U.S. 274, 287 (1989).[2]

Turning to Davis, EPA relies on snippets and generalizations. However, an examination of the actual language in the opinion makes it clear that Davis cannot be applied to this case. In Davis, the D.C. Circuit stated that applying the narrow exception to the forum rate rule:

> would prevent the occasional erratic result where the successful petitioner is vastly overcompensated given the amount he contracted to pay for legal services. In all other cases the D.C. forum rates would apply.

Davis, 169 F.3d at 758 (emphasis added). In this case, it is undisputed that plaintiffs will not be compensated for more than they contracted to pay for legal services because they have not contracted to pay for legal services. Thus, since this case falls into the "all other cases" category, D.C. forum rates apply, according to what the D.C. Circuit actually said.

In Davis, the D.C. Circuit also stated:

---

[2] Although not relevant, EPA's generalization that the cost of living in D.C. is more than the cost of living in Kentucky is not true in many regards in this case. For example, undersigned pays $1,226.91 per month in student loans from attending George Washington University ("GW") law school in D.C. GW did not offer undersigned a rebate when he moved to Kentucky. In additional D.C. is a diverse community. Undersigned's rent while living in Southeast D.C. was less than common rent in Kentucky.

7

> We consider these reasons sufficient to justify awarding fees based on rates charged in the District of Columbia to all lawyers except those few who <u>practice</u> in far less expensive legal markets and perform the bulk of their work on the case at home in those markets.

<u>Davis</u>, 169 F.3d at 759 (emphasis added). In this case, it is undisputed that Plaintiffs' counsel do not practice in the Eastern District of Kentucky federal court. In addition, even EPA concurs that undersigned's practice in the Eastern District of Kentucky is "limited." EPA Op. at 19. Thus, because <u>Davis</u> says the exception applies to lawyers who practice in a far less expensive legal market and the undisputed evidence is Plaintiffs' counsel does not practice in the Eastern District of Kentucky or only practices a "limited" amount, the <u>Davis</u> exception does not apply.

In <u>Davis</u>, the D.C. Circuit also stated:

> Parties should be just as able to obtain such help when fees are based on the jurisdiction in which the <u>clients and the lawyers reside and practice</u> as if those fees are based solely on the judicial forum.

<u>Davis</u>, 169 F.3d at 759 (emphasis added). Here, again, the D.C. Circuit states that the issue is where the lawyers practices, not where they live. Furthermore, the undisputed facts are that lead plaintiff, the Center for Biological Diversity, does not reside in Kentucky and plaintiff Preston Forsythe does not reside in the Eastern District of Kentucky.

Finally, in <u>Davis</u>, the D.C. Circuit also stated:

> While limiting lawyers to less than their <u>usual rates</u> would present problems for private parties seeking help, limiting lawyers to what they normally receive in their home market should not.

<u>Davis</u>, 169 F.3d at 759-760 (emphasis added). It is undisputed that EPA is asking the Court to award a rate that is a fraction of what the Law Office of Robert Ukeiley has charged for 100% of their market rate work. It is disputed whether this market rate work constitutes the "usual rate." However, to accept the approach advocated by EPA and followed in <u>Rocky Mountain Clean Air</u>

8

Action v. Johnson, case no. 06-1092, (D.D.C. Jan. 28, 2008) (J. Robertson) is to effectively penalize lawyers for spending the majority of their time doing *pro bono* work. MacClarence v. Johnson, Case No. 07-755 (M.J. Facciola) (D.D.C. March 17, 2008) rejected this approach although for the simple reason that 100% of undersigned's law firm's market rate is its market rate.

Furthermore, the distinction between Davis and this case makes sense. In Davis, the D.C. Circuit basically found it unreasonable for a Utah client to actually pay Utah rates to lawyers who normally practice in Utah and then have the Utah client recover from the government at much high D.C. rates. That is a completely different situation from this case where lawyers who normally get D.C. rates, mainly practice in D.C., and did not charge their clients anything are asking for D.C. rates.

### D.  EPA HAS NOT EXPLAINED WHY TIM BALLO AND ASHLEY WILMES SHOULD BE PAID EASTERN DISTRICT OF KENTUCKY RATES

It is undisputed that Plaintiffs' counsel Ashley Wilmes and law clerk Tim Ballo did not reside in Kentucky and did not perform their work on this case in Kentucky. EPA has not provided any reason why these two should be paid Eastern District of Kentucky rates and there is no such reason.

### E.  PLAINTIFFS' REQUESTED HOURS ARE REASONABLE

EPA argues that CBD should not recovery for time spent opposing EPA's motion to dismiss or transfer. EPA Op. at 22-24. In support of this argument, EPA cites to a case discussing whether prevailing parties should recover for unsuccessful motions. EPA apparently believes that this rule should be extended to opposition to undecided motions although EPA provides no authority or analysis for this extension. Such an approach would violate the

Supreme Court's admonishment that "request for attorney's fees should not result in a second major litigation," Hensley v. Eckerhart, 461 U.S. 424, 437 (1983), as the court would have to decide all undecided motions before resolving the fee issue. In any event, the facts in this case are that while EPA's motion to dismiss or transfer was pending, EPA settled the case, granting Plaintiffs the relief they sought.[3] The fact is also that TVA Paradise, one of the largest sources of deadly air pollution in the nation, finally has a final Title V permit whereas it did not have one when this case commenced. EPA's speculation as to what would have happened if this case had been dismissed and refilled or transferred to a court in which undersigned counsel is not even admitted to practice in is just that; speculation. There are only two things of which we can be sure. One is that if the case had been dismissed pursuant to EPA's motion the settlement agreement entered into this case would not have been entered into by the parties. Thus, it was not only reasonable but necessary for Plaintiffs to oppose EPA's motion to dismiss or transfer, at least as to the dismissal, to have been able to obtain the relief obtained. The other thing we can be sure of is that if EPA did not file its motion to dismiss or transfer, but rather had simply agreed to the settlement it eventually agreed to, Plaintiffs would not have incurred any billable time opposing EPA's motion. EPA should not be allowed to file what turned out to be a useless motion and then complain about Plaintiffs seeking recovery for opposing the motion that EPA chose to file. In this vane, it must be noted that on October 18, 2005, Plaintiffs mailed a letter to Defendant Stephen L. Johnson stating that Plaintiffs intended to sue Defendants over this matter. The letter stated Plaintiffs and their counsel "would prefer to resolve these matters without the need for litigation. Therefore, we look forward to you contacting us at rukeiley@igc.org to

---

[3] EPA is technically correct that Plaintiffs' complaint sought declaratory relief which they did not obtain in the settlement but this is of no consequence.

resolve this matter." EPA never contacted Plaintiffs counsel to try to resolve the matter. Had the matter been resolved, Plaintiffs would not have had a claim for attorneys' fees. Plaintiffs waited over 180 days before filing suit.[4]

EPA also states the "settlement agreement entered into by Plaintiffs also did not require EPA to 'modify, terminate, or revoke' any permit, which was the relief sought in claims two and three of the Complaint." EPA Op. at 23, ftnt. 19. This statement is technically correct but misleading in its incompleteness. What happened in this case is that after Plaintiffs filed their complaint, EPA explained that the TVA Paradise Title V permit issued by the Kentucky Division of Air Quality that said "FINAL" on it was not actually a final permit but a proposed permit. Thus, EPA did not need to modify, terminate or revoke this permit but rather could skip one step forward towards ultimate resolution by issuing its own Title V permit for TVA Paradise. When EPA issues Title V permits, they are referred to as Part 71 permits, which is referencing 40 C.F.R. Part 71. The settlement agreement did include the following requirement even though this was not requested in the complaint:

> 5. With regard to a Clean Air Act Title V Operating Permit for the TVA Paradise Plant:
> a. EPA shall conclude a completeness determination (*see* 40 CFR § 71.7(a)(4)) within 60 days after receipt of TVA's forthcoming application to EPA for a Title V permit for the Paradise Plant;
> b. EPA shall take final action (*see* 40 CFR 71.7(a)(2)) on TVA's forthcoming Title V permit application within 18 months after receiving a complete application.

---

[4] Unfortunately, this is EPA's pattern in all Title V deadlines suit which undersigned counsel is involved in or aware of. That is, plaintiffs send a notice of intent to sue letter. EPA does not respond to the letter in a substantive way. Plaintiffs file suit. EPA almost always settles. Plaintiffs ask for attorneys' fees and costs and as of late, EPA complains about paying for a reasonable amount of attorneys' fees.

> 6.  The commitments in paragraph 5 shall become null and void in the event that KDAQ (1) submits a new proposed CAA Title V operating permit for the Paradise Plant to EPA pursuant to its state operating permit program (*see* 40 CFR Part 70) that EPA determines adequately addresses the issues raised by EPA in its February 18, 2006, objections to the operating permit proposed by KDAQ on December 7, 2005 and withdrawn by KDAQ on August 18, 2006, and (2) EPA provides Plaintiffs' counsel with written notice that KDAQ has submitted a new proposed CAA Title V operating permit for the TVA Paradise Plant to EPA and that EPA has determined that the new proposed CAA Title V operating permit adequately addresses the issues raised by EPA in its February 18, 2006 objections.

Thus, Plaintiffs actually got more than they asked for in the complaint without having to incur additional billable hours by amending the complaint.

EPA also claims that Plaintiffs should not recover for time spent on the fee Motion, based on the assumption that EPA will prevail on its opposition to the Motion. Plaintiffs have worked to minimize the disputed issues in this motion by voluntarily reducing hours but it is certainly reasonable to litigate the issues in this motion, especially because undersigned counsel has previously prevailed on the Davis issue.

At the same time EPA is criticizing Plaintiffs for spending time on the fee motion, EPA is questioning Plaintiffs use of a "recycled" affidavit from a previous case rather than spending the time to reanalyze billing records. See EPA Op. at 19, ftnt. 13. Thus, contrary to its other arguments, EPA is implying that Plaintiffs' counsel should have spent more time on this fee litigation than they actually did. EPA also fails to note that Plaintiffs did provide the relevant updated information in a footnote in their Motion. See Motion at 21, ftnt. 4.

> F.  **PLAINTIFFS' COUNSEL ARE EXERCISING THEIR BILLING DISCRETION TO REDUCE THEIR CLAIMED HOURS BY THE NUMBER OF HOURS SPENT ON THIS REPLY BRIEF.**

Plaintiffs' counsel are exercising their billing discretion to not claim any billable hours for preparing this reply brief. This additional voluntary reduction in the requested number of

billable hours should further address any concerns the Court may have about the reasonableness of any specific minor time entries.

### III.  CONCLUSION

For the foregoing reasons as well as those in CBD's Motion, CBD respectfully requests that the Court grant their Motion for Fees and Costs in the amount of $49,086.07 in attorneys' fees and costs.

        Respectfully submitted,

        /s/ Robert Ukeiley
        _____
        Robert Ukeiley
        Law Office of Robert Ukeiley
        435R Chestnut Street, Ste. 1
        Berea, KY 40403
        Telephone: (859) 986-5402
        Facsimile: (866) 618-1017
        E-mail: rukeiley@igc.org

        Counsel for Plaintiffs

Dated: April 4, 2008